# Nos. 21-2683 and 21-2700
# CONSOLIDATED CIVIL APPEALS

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| BERNICE CURRY-MALCOLM | ) | On Appeal from the United States District Court for the Western District of New York (ROCHESTER) |
| Plaintiff-Appellant, | ) | |
| v. | ) | WDNY Civil Docket No.: 18-cv-6450 (*Malcolm III*) |
| | ) | Honorable David G. Larimer, J. |
| ROCHESTER CITY SCHOOL DISTRICT, | ) | |
| BARBARA DEANE-WILLIAMS, Superintendent of Schools and Individually and Collectively, | ) | |
| Defendants-Appellees. | ) | U.S.C.A. Civil Docket No.: 21-2683, Lead Docket Number |

| | | |
|---|---|---|
| BERNICE C MALCOLM | ) | On Appeal from the United States District Court for the Western District of New York (ROCHESTER) |
| Plaintiff-Appellant, | ) | |
| | ) | WDNY Civil Docket No.: 17-cv-6878 (*Malcolm I*) |
| | ) | Honorable David G. Larimer, J. |
| ASSOCIATION OF SUPERVISORS AND ADMINISTRATORS OF ROCHESTER ("ASAR"), TIMOTHY CLIBY, President and Individually, and John Rowe, Vice President and Individually, ROCHESTER CITY SCHOOL DISTRICT, BARBARA DEANE-WILLIAMS, Superintendent of Schools and Individually and Collectively, | ) | |
| Defendants-Appellees. | ) | U.S.C.A. Civil Docket No. 21-2700, Consolidated Member |

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF NEW YORK (ROCHESTER)
17-cv-6878, (*Malcolm I*), Lead Docket Number; 18-cv-6450 *(Malcolm III)*, Consolidated Member
(Honorable David G. Larimer, J. )

## SEPARATE APPENDIX FOR PLAINTIFF-APPELLANT BERNICE CURRY-MALCOLM
## VOLUME II OF II (ASA-200- ASA-363)

Mrs. Bernice Curry-Malcolm, *Pro se* Plaintiff-Appellant
6 Gingerwood Way
West Henrietta, New York 14586

# TABLE OF CONTENTS

Page

Table of Contents ------------------------------------------------------------- *i*

U. S. District Court, WDNY (Rochester ) Civil Docket for
(17-cv-6878) ------------------------------------------------------- ASA-1-9

Clerk's Certificate/Index (17-cv-6878) ---------------------------------- ASA-10-28

U. S. District Court, WDNY (Rochester ) Civil Docket for
(18-cv-6450) ------------------------------------------------------- ASA-29-34

Clerk's Certificate/Index (18-cv-6450) ---------------------------------- ASA-35-53

Notice of Appeal (17-cv-6878) Dated October 25, 2021 --------------- ASA- 54-59

Notice of Appeal (18-cv-6450) Dated October 28, 2021----------------- ASA-60-77

Amended Notice of Appeal Dated April 9, 2021 (17-cv-6878,
18-cv-6450 ------------------------------------------------------------- ASA-78-89

Amended Complaint (17-cv-6878 , 18-cv-6450) Dated
March 30, 2021----------------------------------------------------------- ASA-90-221

Second Amended Complaint (17-cv-6878 and 18-cv-6450)
Dated April 26, 2021------------------------------------------------------- ASA-222-299

Verified Affidavit of Bernice Curry-Malcolm Dated
April 26, 2021------------------------------------------------------------- ASA-300-363

*i*

empowered and engaged in the creation of a hostile work environment during the 2016-2017 school year.

509.     Defendant Sanson knew what she was doing was wrong and should have known that what she was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

510.     As an example, but not the sole example of race discrimination, Defendant Sanson was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

511.     Defendant Sanson became Plaintiff's immediate and direct supervisor on February 27, 2017. Defendant Sanson wasted no time in making false claims against the Plaintiff and joined in with Defendant Pauly threatening and hostile actions against the Plaintiff.

512.     Defendant Sanson did not conduct a final performance evaluation on the Plaintiff for the 2016-2017 school year. Defendant Sanson conducted final performance evaluations for other probationary CASE administrators that she supervised for the 2016-2017 school year.

513.     Defendant Sanson added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

514.     **Defendant Jordan** in her official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff. Defendant Jordan was personally involved based on his own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

[111]



515.     Defendant Jordan as Principal or Administrator on Assignment did not discharge her duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Jordan's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred. Defendant Jordan empowered and engaged in the creation of a hostile work environment during the 2016-2017 school year.

516.     Defendant Jordan knew what he was doing was wrong and should have known that what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

517.     Defendant Jordan added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

518.     Defendant Jordan knew full well what she was doing was wrong. Defendant Jordan told Marica Pease ("Pease") that she should remove Plaintiff's name off of documents that Pease had her name on. Defendant Jordan told Pease that Plaintiff made her look bad.

519.     As an example, but not the sole example of race discrimination, Defendant Jordan was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

520.     Defendant Jordan was instrumental in the decision making process to place Kittelberger at North Star.

[112]

ASA-201

521.    **Defendant Dr. Cliby** in his official capacity as a salaried employee for Defendant

RCSD and President of ASAR, Dr. Cliby failed to provide a fair duty of representation to the

Plaintiff.

522.    Defendant Dr. Cliby was a salaried employee of the Rochester City School

District, and as such is a state actor.

523.    As an example, but not the sole example of discrimination and fair to provide

Plaintiff a fair duty of representation, Defendant Dr. Cliby was aware and knew full well that the

Plaintiff's final performance evaluation had been unlawfully changed from highly effective to

developing and officially and personally went along with the lie based on Plaintiff's race and age

and based on her own personal and self-serving interest.

524.    Defendant Dr. Cliby knew full well that the Defendant RCSD was using its

annual fiscal budgetary process to unlawfully to terminate the Plaintiff employment and that the

defendants had entered into a memorandum of understanding to protect the tenured CASEs.

Defendant Dr. Cliby knew full well that the RCSD Defendants and Root had changed Plaintiff's

final performance evaluation from highly effective to developing. He looked the other way and

went along with it.

525.    Defendant Dr. Cliby knew full well that Plaintiff had previously worked for the

Defendant RCSD and that she had RTA experience and should not have been place in Wave III,

i.e., No previous RTA experience.

526.    As an example, but not the sole example of race discrimination, Defendant Dr.

Cliby engaged in and participated in the Defendant RCSD's creation of a hostile work

environment.

ASA-202

527.     Defendant ASAR knew full well knew that on February 6, 2017 the school district

changed Plaintiff's name to Bernice Malcom and placed her address as her social security

number without her knowledge and without her consent and changed her position to that of a

special education teacher under the RTA contract.

528.     On March 22, 2017, Plaintiff learned through the Democrat and Chronicle, a

public newspaper that the Defendant RCSD was eliminating the tenured areas, Bracket IV

probationary CASE positions and that no tenured CASE within the Bracket would be affected.

In example, but not the sole example, later that morning on March 22, 2017, Defendant ASAR

sent out an email with the news explaining the change of events.

529.     Defendant RCSD placed the affected probationary CASEs in Wave I, RTA

Experience to ASAR Experience with no break in service; Wave II, Previous RTA Experience

and Wave III, No previous RTA Experience. Plaintiff was placed in Wave III, even though she

had two (2) years and several months of previous RTA experience with the Defendant RCSD

and had also been granted tenure in another New York school, i.e., Honeoye Falls-Lima Central

School District on September 1, 2004. Both Defendant RCSD and Defendant ASAR was aware

and in full knowledge of the same, including Deane-Williams, Kennedy, Simpson, Dr. Cliby,

Rowe, and the Legal Department, but not limited to.

530.     In example, but not the sole example, with the previous RTA experience, of two

years and counting as a special education teacher with the school district, the granting of tenure

by HF-L after successfully completing a three-year probationary period as a special education

teacher, and the two years of experience as a CASE administrator, Plaintiff was tenured.

531.     As an example, but not the sole example, Defendant RCSD used one standard for

[114]

ASA-203

Plaintiff and another probationary CASEs, including George, male white, age 35, Yajaira Walker ( now "Nyugen"), female white, age 30, Mark Ferraro ("Ferraro"), male white, age 41, Kathleen Foster ("Foster"), female black, age 44, Diana Radley ("Radley"), female white , age 42, but not limited to were all given their tenure status, but the Plaintiff was not even though she too was tenured.

532.    As an example, but not the sole example, the Defendant RCSD terminated the Plaintiff instead of providing the same equal access, opportunities, and standards that it provided to other probationary CASEs that they favored and showed preferential treatment to, including within and/or outside of the protected class. Plaintiff was the oldest. Plaintiff was 58 years of age at the time.

533.    Plaintiff met with Defendant ASAR numerous times throughout the 2015-2016, 2016-2017 school years regarding Defendant RCSD's breach of the employment contract and breach of the CBA.

534.    On April 24, 2017, at 6:24p.m., Plaintiff emailed Dr. Cliby, Rowe and Wagner, subject: Breach of Contract and the Collective Bargaining Agreement stating, "Hi Tim, Please file a grievance on my behalf in regard to the District's breach of my contract and the collective bargaining agreement. Please see me a copy of the grievance once filed".

535.    As an example, but not the sole example, the entire New York State Division of Human Rights Hearings held on November 14, 2018 and November 15, 2018 respectively speaks to the egregious, severe and pervasive conduct that the Defendant RCSD, its officers, employees, supervisors, directors, administrators, managers, and agents, including Defendants Deane-Williams, Simpson, Pauly, Root, Kittelberger, RCSD's Unknown female Attorney, Kennedy, RCSD's Legal Department, and other district officials subjected the Plaintiff to and

[115]

ASA-204

how the defendants with discriminatory intent and motive targeted and harassed the Plaintiff by creating a coalition charged hostile work environment and how Defendant ASAR looked the other way, engaged in and participated in the Defendant RCSD racially discriminatory and retaliatory actions against the Plaintiff.

536. As an example, but not the sole example, Defendant RCSD and Defendant ASAR knew full well there were a significant amount vacancies for the 2017-2018 school year in which Plaintiff was certificated and qualified for, but did not call Plaintiff to any of those positions, but instead moved and transferred employees which were not affected to those position which amounted to at least twenty-eight (28) vacant positions, including to probationary CASE, George as Director of Alternative Special Education Programs and Hart to Assistant Principal, but not limited to.

537. As an example, but not the sole example, Defendant RCSD and Defendant ASAR knew full well that Hart was the less senior probationary CASE.

538. Defendant Dr. Cliby in his official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff. Defendant Dr. Cliby was personally involved based on his own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

539. Defendant Dr. Cliby as ASAR President did not discharge his duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Dr. Cliby's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred. Defendant Dr. Cliby empowered and engaged in the creation of a hostile work environment during the 2015-2016 and 2016-2017 school years.

[116]

ASA-205

540.     Defendant Dr. Cliby knew what he was doing was wrong and should have known that what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

541.     Defendant Dr. Cliby added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

542.     **Defendant Rowe** in his official capacity as a salaried employee for Defendant RCSD and First Vice President of ASAR. Defendant Rowe failed to provide a fair duty of representation to the Plaintiff.

543.     Defendant Rowe was a salaried employee of the Rochester City School District, and as such is a state actor.

544.     As an example, but not the sole example of discrimination and fair to provide Plaintiff a fair duty of representation, Defendant Rowe was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

545.     Defendant Rowe knew full well that Plaintiff had previously worked for the Defendant RCSD and that she had RTA experience and should not have been place in Wave III, i.e., No previous RTA experience.

546.     As an example, but not the sole example of race discrimination, Defendant Rowe engaged in and participated in the Defendant RCSD's creation of a hostile work environment.

547.     Defendant ASAR knew full well knew that on February 6, 2017 the school district

[117]

ASA-206

changed Plaintiff's name to Bernice Malcom and placed her address as her social security number without her knowledge and without her consent and changed her position to that of a special education teacher under the RTA contract.

548.     As an example, but not the sole example, the Defendant RCSD terminated the Plaintiff instead of providing the same equal access, opportunities, and standards that it provided to other probationary CASEs that they favored and showed preferential treatment to, including within and/or outside of the protected class. Plaintiff was the oldest. Plaintiff was 58 years of age at the time.

549.     Plaintiff met with Defendant ASAR numerous times throughout the 2015-2016, 2016-2017 school years regarding Defendant RCSD's breach of the employment contract and breach of the CBA.

550.     On April 24, 2017, at 6:24p.m., Plaintiff emailed Dr. Cliby, Rowe and Wagner, subject: Breach of Contract and the Collective Bargaining Agreement stating, "Hi Tim, Please file a grievance on my behalf in regard to the District's breach of my contract and the collective bargaining agreement. Please see me a copy of the grievance once filed".

551.     As an example, but not the sole example of discrimination and fair to provide Plaintiff a fair duty of representation, Defendant Rowe knew what he was doing was wrong and should have known that what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law. Defendant Rowe was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

[118]

ASA-207

552. As an example, but not the sole example, the entire New York State Division of Human Rights Hearings held on November 14, 2018 and November 15, 2018 respectively speaks to the egregious, severe and pervasive conduct that the Defendant RCSD, its officers, employees, supervisors, directors, administrators, managers, and agents, including Defendants Deane-Williams, Simpson, Pauly, Root, Kittelberger, RCSD's Unknown female Attorney, Kennedy, RCSD's Legal Department, and other district officials subjected the Plaintiff to and how the defendants with discriminatory intent and motive targeted and harassed the Plaintiff by creating a coalition charged hostile work environment and how Defendant ASAR looked the other way, engaged in and participated in the Defendant RCSD racially discriminatory and retaliatory actions against the Plaintiff.

553. Defendant Rowe in his official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff. Defendant Rowe was personally involved based on his own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

554. Defendant Rowe as ASAR First Vice President did not discharge his duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Rowe's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred. Defendant Rowe empowered and engaged in the creation of a hostile work environment during the 2016-2017 school year.

555. Defendant Rowe knew what he was doing was wrong and should have known that what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

[119]

ASA-208

Defendant Rowe added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

556.     By the a above acts, with discriminatory animus and a pretext to discrimination, including the decision to maliciously and intentionally change the Plaintiff's final performance evaluation over-all rating to make it appear as developing instead of highly effective, defendants have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. Section 2000e et seq., by discriminating against Plaintiff based on her color, race, and age, including disparate treatment.

## THIRTHTEENTH CAUSE OF ACTION AGAINST RCSD AND ASAR RETALIATION IN VIOLATION OF TITLE VII AND NYSHRL

557.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

558.     As an example, but not the sole example, Defendant RCSD retaliated and punished Plaintiff for reporting unlawful discrimination or harassment.

559.     By the a above acts, with discriminatory animus and a pretext to discrimination, including the decision to maliciously and intentionally change the Plaintiff's final performance evaluation over-all rating to make it appear as developing instead of highly effective, defendants have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. Section 2000e et seq., by discriminating against Plaintiff based on her color, race, and age, including disparate treatment.

[120]

ASA -209

## FOURTEENTH CAUSE OF ACTION AGAINST RCSD
### WRONGFUL TERMINATION OF JULY 1, 2017

560.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

561.    Plaintiff alleges that the Defendant RCSD wrongfully terminated her employment without good cause and without due process of law in accordance with the collective bargaining Agreement, Article 15 -Discipline and Discharge of Nontenured Certificated Staff.

562.    Plaintiff alleges that she was wrongfully terminated by the Defendants RCSD and that the defendants proffered reason given for terminating the Plaintiff has no basis, was not the actual reason and that the defendant RCSD reason was insufficient to explain their unlawful harassing, discriminatory and retaliatory actions against her.

563.    Plaintiff does not dispute that there is a budgetary process that takes place during a fiducial year and that the RCSD was engaged in that process, however Plaintiff contends and alleges that the Defendant RCSD used the 2017-2018 budgetary process to target her probationary CASE administrator group to target her to wrongfully terminated her employment under the disguise of a lay-off.

564.    Defendant RCSD's reason was false and intentional discrimination was the real reason and but-for cause of the real reason.

565.    Defendant RCSD wrongfully terminated the Plaintiff in retaliation because Plaintiff complained of and opposed the defendants' illegal activities in regard to students with disabilities.

566.    Plaintiff complained of and opposed the Defendant RCSD's unlawful

[121]


ASA-210

discriminatory and retaliatory practices, customs, policies, and procedures. Plaintiff was therefore perceived as a troublemaker throughout her time with the RCSD. Moreover,

567.     Defendant RCSD gave different reasons for the layoff-termination. Defendant RCSD gave different reasons for abruptly removing Plaintiff from her CASE administrator position at North Star. Plaintiff was involuntarily removed from North Star and All City High School as CASE administrator.

568.     Plaintiff alleges that the layoff was staged and orchestrated and empowered by the Defendant RCSD and Defendant ASAR, including Deane-Williams, Simpson, Root, Cliby, Rowe and Kennedy. Plaintiff did not have to be laid-off or terminated.

569.     As an example, but not the sole example of wrongful termination during the aforementioned time period against the Plaintiff had the Defendant RCSD followed the same formula it had followed to remove its white probationary CASE administrators, including Samantha Brody, Colleen Multer, Christine Richter, Rosa Bellone, Megan Bonacci, but not limited to, from the lay-off list, Plaintiff's name would have been removed as of at least June 14, 2017.

570.     Plaintiff's termination was not a direct result of the reorganization of the Specialized Services Department, and neither was it a direct result of budgetary impact, but for the defendants unconstitutional and unlawful discriminatory actions Plaintiff would not have been laid off, would not have endured school years of a hostile work environment and would not have been subjected to the unimaginable disparaging and disparate treatment by the defendants.

571.     As an example, but not the sole example, Defendant RCSD gave Plaintiff several reason for the layoff. First, by Letter dated June 14, 2017, Plaintiff was told, "Due to the budget for the 2017-2018 school year, positions within the CASE Bracket IV tenure area will be

[122]

ASA-211

eliminated from the budget. Based upon the seniority list for your tenure are, you are the least senior and are scheduled to be laid off from your position effective July 1, 2017, due to your certification area. You will be placed on a preferred eligibility list and will be recalled in order of your seniority in your tenure area".

572.     Second, with the termination letter in the same envelope, by Letter dated June 14, 2017, the district offered Plaintiff a probationary appointment in the special education tenure area effective September 5, 2017 with placement on salary step 11: $55,525.00 with a probationary period from September 5, 2017 to September 4, 2021. Plaintiff had until June 20, 2017 at 3:00p.m.,  to accept or decline the TCOSE offer.

573.     Before Plaintiff could accept or decline the offer, Defendant RCSD changed courses withdrew the offer and by email dated June 20, 2017 at 8:43a.m., sent Plaintiff a revised layoff letter that was dated June 19, 2017 from Kennedy. The revised layoff letter did not offer Plaintiff a TCOSE position, but rather stated that the revised letter correctly reflects the position you are laid off from, CASE, and the reason for the layoff. In relevant part, the letter states, "Due to the Special Education reorganization for the 2017-2018 school year, positions within the CASE Bracket IV tenure area will be eliminated from the budget. Based upon your seniority list for your tenure area, you are the least senior and are scheduled to be laid off from your position effective July 1, 2017, due to your certification area. You will be placed on a preferred eligibility list and will be recalled in order of your seniority in your tenure area. ASAR Dr. Cliby was copied on the email sent by Miriam Adams and Anne Brady, HCI Director.

574.     By letter dated June 27, 2017, Plaintiff received another layoff letter from Kennedy via email from Daisy McFarland on June 28, 2017 at 4:26p.m., which states in relevant part, "I have the difficult task of informing you that due to the budget reductions for the 2017-

[123]

ASA-212

2018 school year, positions within the Bracket IV tenure area will be eliminated from the budget.
Based upon the seniority list for your tenure area, you are the least senior and are scheduled to be
laid off from your position effective July 1, 2017. You will be placed on a preferred eligibility
list  and will be recalled in order of your seniority in your tenure area".

575.       By the a above acts, with discriminatory animus and a pretext to discrimination,
including the decision to maliciously and intentionally change the Plaintiff's final performance
evaluation over-all rating to make it appear as developing instead of highly effective, defendants
have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. Section 2000e et
seq., by discriminating against Plaintiff based on her color, race, and age, including disparate
treatment.

### FIFTHTEENTH CAUSE OF ACTION
### RETALIATION, WRONGFUL TERMINATION OF APRIL 23, 2018

576.       Plaintiff repeats and realleges each and every allegation in paragraphs numbered
above in this amended complaint with the same force and effect as if fully set forth herein
and incorporates by reference each and every allegation contained in numbered paragraphs above
in this amended complaint with the same force and effect as if  fully set forth herein.

577.       Plaintiff alleges that the Defendants RCSD wrongfully terminated her
employment without good cause and without due process of law in accordance with the
collective bargaining Agreement, Article 15 -Discipline and Discharge of Nontenured
Certificated Staff.

578.       Plaintiff alleges that she was wrongfully terminated by the Defendants RCSD and
that the defendants proffered reason given for terminating the Plaintiff has no basis, was not the
actual reason and that the defendant RCSD reason was insufficient to explain their unlawful
harassing, discriminatory and retaliatory actions against her.

[124]

ASA-213

579.     Plaintiff alleges that her union did not provide her with a fair duty of
representation. In May 2017, the School Administrators Association of New York State
("SAANYS") assigned Mimi Satter ("Attorney Satter"), Esq., to represent Plaintiff in her union
related matters with the Rochester City School District. Plaintiff and Attorney Satter was sorting
things out and working through Plaintiff's questions and some confusion regarding what she was
being told by ASAR and SAANYS and what the Plaintiff said happened.

580.     In September 2017, Attorney Satter informed the Plaintiff via email that, "I am
advised that I am no longer authorized to provide legal services on your behalf". "Thus I
respectfully withdraw".

581.     Plaintiff learned from Attorney Satter that SAANYS removed her as counsel
stating that Plaintiff was not a unit member, and as such, she was no longer authorized to provide
Plaintiff legal services in her union related matters with the Rochester City School District.

582.     Defendant ASAR treated Plaintiff differently than it did other impacted
probationary CASE administrators. In example, on August 29, 2017, SAANYS by and through
its authorized agent Jennifer Carlson ("Attorney Carlson"), Deputy Counsel, told Johnnayea
Edmond ("Edmond"), Human Rights Specialist II regarding a telephone conference held on July
31, 2017 in relevant part that regarding ASAR's representation of the other impacted
probationary CASE administrators that, "It even accompanied members upon request to the
meetings wherein the salaries and placements in TCOSE positions were discussed, even though
they were not entitled to representation".

583.     Attorney Carlson also stated in relevant part that, "As Dr. Cliby pointed out in the
conference, ASAR had no say in the RCSD's decision to abolish the CASE positions and create
the TCOSE positions within the Rochester Teachers' Association ("RTA"). ASAR's sole

ASA-214

involvement in the matter was to ensure that the seniority lists were accurate for layoff and recall purposed and also to work with the RCSD to minimize the damage of the twenty-two (22) impacted members".

584.     ASAR and SAANYS were aware that the seniority list was not accurate for layoff and recall rights. As an example, but not the sole example, the preferred eligibility and recall list was padded, Plaintiff was not number eleven and the defendants knew it. In example, Stacey Aliasso ("Aliaaso") was not first on the list in order of seniority for recall. Aliasso resigned and even id he had not, she did not have seniority over Plaintiff.

585.     As an example, but not the sole example on October 3, 2017 at 12:20p.m., Plaintiff received an email from Kennedy, "Bernice- Thank you for your patience. Please know that there is a total of 38 CASES. You are number 30 of the 38 CASES. There are currently two people ahead of you on the seniority recall list". ASAR Dr. Cliby and Rowe were copied on the email.

586.     None of the other impacted probationary CASE administrators were placed in TCOSE position, but rather continued to work in their probationary CASE administrator position. The Defendant RCSD claim that it eliminated tenured area, Bracket IV CASE was a lie. By June 14, 2017 and again by August 9, 2017, ASAR and SAANYS were aware that twenty-two (22) CASE members were not impacted and those claimed to be impacted probationary CASE members continued and were retained in their employment as probationary CASE administrators with the Rochester City School District and that the ones that resigned was helped by the school district to become gainfully employed in other neighboring school districts.

ASA-215

To ensure that the Plaintiff was terminated, Defendant RCSD terminated her and placed her on a preferred eligibility list. Attorney Carlson went on to say in relevant part, "Unfortunately, Ms. Malcom is the only remaining CASE without employment".

587.    SAANYS provided no representation regarding Plaintiff's wrongful termination of employment of April 23, 2018 and failed and refused to progress the matter to arbitration.

588.    Plaintiff did not receive any notification that her employment would be terminated at the March 20, 2018 Board Meeting and neither did she receive any notification to the reason why. In November 2018, Defendant RCSD submitted documents to the Division that Plaintiff was terminated because of unsatisfactory performance. Yet during the 2017-2018 school year and by affirmation of Rebecca Kannan ("Attorney Kannan'), Assistant General Counsel for the New York State Teachers' Retirement System dated August 19, 2020, stated in relevant part that, "NYSTRS was advised by the RCSD that during the 2017-2018 school year, petitioner took a paid administrative leave of absence from December 8, 2017 through April 23, 2018, and did not return to her position with the RCSD after the leave of absence".

589.    In her affirmation, Attorney Kannan states that Defendant RCSD advised her that plaintiff was on administrative leave of absence for the period of December 8, 2017 through April 23, 2018 and was terminated on April 23, 2018. Attorney Kannan continues, "As Petitioner did not return to her position within Rochester City Schools following her administrative leave and there was no intention for her to return as it was intended to be a separation from employment, any service credit or salary related to this timeframe is not pensionable".

590.    Neither did SAANYS renew and/or contact Attorney Satter to authorize her to resume representing Plaintiff in her union related matters with the Rochester City School District.

[127]

ASA-216

591.     By the a above acts, with discriminatory animus and a pretext to discrimination, including the decision to maliciously and intentionally change the Plaintiff's final performance evaluation over-all rating to make it appear as developing instead of highly effective, defendants have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. Section 2000e et seq., by discriminating against Plaintiff based on her color, race, and age, including disparate treatment.

592.     Defendants' actions has been continuous and ongoing. Plaintiff has exhausted her administrative remedies and received a right to suit letter from the EEOC on December 4, 2020. The district court dismissed Plaintiff's complaint dated March 3, 2020. The district court labeled this matter as Malcolm IV (20-cv-6537L) and dismissed the matter by Decision and Order dated July 24, 2020. Judgment was entered on July 24, 2020 by the Clerk of the Court. Plaintiff timely appealed on August 18, 2020 and was filed by the Court on August 21, 2020. The matter is now on appeal before the United States Court of Appeals for the Second Circuit and is now docketed as 20-2808. Any subsequent actions or events regarding Plaintiff's unlawful termination or any other subsequent actions by the Defendants against the Plaintiff will now be addressed in Plaintiff's Brief on Appeal as this court does not have jurisdiction and jurisdiction is properly before the United States Court of Appeals for the Second Circuit as pursuant to U.S.C.§1291.

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays for relief and judgment entered in her favor as follows:

a.  That Plaintiff be awarded general and compensatory damages, including prejudgment and post-judgment damages interest in an amount according to proof at trial;

[128]

ASA-217

b.   That Plaintiff be further awarded punitive damages in an amount according to proof at trial;

c.   That Plaintiff be further awarded reasonable attorney's fees and cost of suit;

d.   That Plaintiff further awarded reinstatement to her job with any increase in salary, incentives, benefits;

e.   That Defendants make Plaintiff whole from the unlawful employment practices described above by providing compensation for non-pecuniary losses;

f.   That Plaintiff further be awarded back and front pay;

g.   Grant Plaintiff, preliminary and permanent injunctions, prohibiting the Defendants, their agents, successors, employees, and those acting in concert with them and at their direction from engaging in any of the practices set forth above;

h.   That Plaintiff is further awarded such other relief as the Court deems just and proper.

DATED: March 30, 2021
West Henrietta, New York
Monroe County, New York


RESPECTFULLY SUBMITTED BY:

*Mrs. Bernice Curry-Malcolm*

Bernice Curry-Malcolm, *Pro se*


SWORN TO BEFORE ME
THIS 30th DAY OF MARCH 2021

NOTARY PUBLIC

**REBECCA B. WIESNER**
NOTARY PUBLIC, State of New York
Monroe County, No. 01WI6268295
Commission Expires 9/04/2024

[129]

ASA-218

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERNICE CURRY- MALCOLM | **CERTIFICATE OF SERVICE**<br>**Civ. No.: 17-cv-6878 (Hon. DGL)**<br>**U.S.C.A. Appeal No.: 19-2412cv** |
| Plaintiff, | |
| ASSOCIATION OF SUPERVISORS AND<br>ADMINISTRATORS OF ROCHESTER, ("ASAR")<br>DR. TIMOTHY CLIBY, PRESIDENT and Individually,<br>JOHN ROWE, VICE PRESIDENT and Individually,<br>ROCHESTER CITY SCHOOL DISTRICT,<br>BARBARA DEANE-WILLIAMS, | **Civ. No.: 17-cv-6450 (Hon. DGL)**<br>**U.S.C.A. Appeal No.: 19-2416cv** |

BERNICE CURRY- MALCOLM

    Plaintiff,

ASSOCIATION OF SUPERVISORS AND
ADMINISTRATORS OF ROCHESTER, ("ASAR")
DR. TIMOTHY CLIBY, PRESIDENT and Individually,
JOHN ROWE, VICE PRESIDENT and Individually,
ROCHESTER CITY SCHOOL DISTRICT,
BARBARA DEANE-WILLIAMS,
SUPERINTENDENT OF SCHOOLS and Individually,
SANDRA SIMPSON, CHIEF OF SPECIALIZED
SERVICES AND FORMER INTERIM EXECUTIVE
DIRECTOR OF SPECIALIZED SERVICES and Individually,
MARY PAULY, EXECUTIVE DIRECTOR OF SPECIALIZED
SERVICES and Individually, TERESA ROOT, ZONE DIRECTOR
OF SPECIALIZED SERVICES and Individually, RCSD
UNKNOWN ATTORNEY FOR HUMAN CAPITAL INITIATIVES
("HCI") and individually, KARIANN KITTELBERGER, COORDINATING
ADMINISTRATOR OF SPECIAL EDUCATION and individually,
HARRY KENNEDY, CHIEF OF HUMAN CAPITAL INITIATIVES ("HCI")
and Individually, KELLY SANSON, ZONE DIRECTOR OF
SPECIALIZED SERVICES and Individually, SANDRA JORDAN,
ADMINISTRATOR ON ASSIGNMENT and Individually,

**JURY TRIAL DEMANDED**

    Defendants.

---

**CERTIFICATE OF SERVICE**

    I, Mrs. Bernice Curry-Malcolm, hereby certify under the penalty of perjury that on the

<u>30th</u> day of March 2021, that I handed-delivered the Original and a copy of the Combined

Amended Complaint, together with annexed exhibits upon the Office of the Clerk, United States

District Court, Western District of New York located at United States District Court, 2120 U.S.,

Courthouse, 100 State Street, Rochester, New York 14614 and that I served the same by postal

mail upon the Defendants. The United States Postal Service worker is over the age of 18 years

[130]

ASA-219

and is not a party to these proceedings and that I served by United States Postal Service Priority

COPY TO:

*Via United States Postal Service Priority Mail*

Rochester City School District, Superintendent of Schools
Board of Education
Attorney for Defendants-Respondents' Rochester City School District, et al., Alison K. L.
Moyer, Esq.
Email: alison.moyer@rcsdk12.org
Telephone: (585) 262-8550
131 West Broad Street
Rochester, New York 14614
Telephone (585) 262-8100

School Administrators Association of New York State ("SAANYS")
For Defendants Association of Supervisors and Administrators of Rochester (ASAR), et al.
Attorney for Defendants-Respondents' Association of Supervisors and Administrators of
Rochester ("ASAR"), Arthur Scheuermann, Esq., and Jennifer L. Carlson, Esq., Deputy Counsel
Email: ascheuermann@saanys.org
Email: JCarlson@saanys.org
8 Airport Park Boulevard
Latham, New York 12110
Telephone: (518) 782-0600

Dated: March 30, 2021
West Henrietta, New York
Monroe County, New York

Bernice Curry-Malcolm

*Pro se Plaintiff*

ASA- 220

ASA-221



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BERNICE CURRY- MALCOLM

                    Plaintiff,


ASSOCIATION OF SUPERVISORS AND
ADMINISTRATORS OF ROCHESTER, ("ASAR")
DR. TIMOTHY CLIBY, PRESIDENT and Individually,
JOHN ROWE, VICE PRESIDENT and Individually,

ROCHESTER CITY SCHOOL DISTRICT,
BARBARA DEANE-WILLIAMS,
SUPERINTENDENT OF SCHOOLS and Individually,
SANDRA SIMPSON, CHIEF OF SPECIALIZED
SERVICES AND FORMER INTERIM EXECUTIVE
DIRECTOR OF SPECIALIZED SERVICES and Individually,
MARY PAULY, EXECUTIVE DIRECTOR OF SPECIALIZED
SERVICES and Individually, TERESA ROOT, ZONE DIRECTOR
OF SPECIALIZED SERVICES and Individually,

                    Defendants.

_____

**PLAINITFF'S SECOND
COMBINED VERIFIED
AMENDED COMPLAINT FOR**
Civ. No.: 17-cv-6878
U.S.C.A. Appeal No.: 19-2412cv

**PLAINTIFF'S SECOND
COMBINED VERIFIED
AMENDED COMPLAINT FOR**
Civ. No.: 17-cv-6450
U.S.C.A. Appeal No.: 19-2416cv

**Honorable David G. Larimer**

**JURY TRIAL DEMANDED**

[FILED APR 26 2021 — UNITED STATES DISTRICT COURT, MARY C. LOEWENGUTH, CLERK, WESTERN DISTRICT OF NY]

---

### SECOND COMBINED VERIFIED AMENDED COMPLAINT

### INTRODUCTION/PRELIMINARY STATEMENT

1.      Plaintiff, BERNICE CURRY-MALCOLM (hereinafter, "Plaintiff" or "Plaintiff

Curry- Malcolm"), proceeding *pro se*, submits this her second combined verified amended

complaint to further expand upon and express in details the allegations previously filed in the

original complaints, i.e., 17-cv-6878, 17-cv-6873, and 18-cv-6450, and 20-cv-6537,as well as her

first combined verified amended complaint dated March 30, 2021.

2.      The second combined verified amended complaint does not include documents as

they are already in the record before the court. Plaintiff, Curry-Malcolm objects to the Court's

dismissal of her first combined amended verified complaint, denial of recusal of Honorable

ASA-222

David G. Larimer and the reissuing of a leave-to-file sanction against her. Those matters have been preserved on appeal by and through Plaintiff's Amended Notice of Appeal dated

_____.

3.        Plaintiff will once again comply with the Court's December 30, 2020 Decision and Order (Honorable David G. Larimer) and the Court's Decision and Order dated April 6, 2021 (Honorable David G. Larimer), (17-cv-6878), Docket 41 and (18-cv-6450), Docket No.: 24, by the submission of her second combined verified amended complaint.

4.        Therefore, Plaintiff complaining of Defendants Rochester City School District ("Defendant RCSD" or "Defendants") and Association of Supervisors and Administrators of Rochester ("Defendant ASAR" or "Defendants"), Barbara Deane-Williams ("Deane-Williams"), former Superintendent of Schools, Sandra Simpson ("Simpson"), former Chief of Specialized Services and former Executive Director of Specialized Services, Mary Pauly, former Executive Director of Specialized Services, Teresa Root ("Root"), Zone Director of Specialized Services, Dr. Timothy Cliby ("Dr. Cliby"), ASAR President, and John Rowe ("Rowe"), ASAR First Vice President in her second combined verified amended complaint alleges herein that:

## THE NATURE OF THIS ACTION

5.        This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and 703 et seq., 42 U.S.C. §§1983 and 1981 *et seq.*; and New York State Human Rights Law, Executive Law ("NYSHRL"), N.Y. Exec. Law §§290, *et seq.*; and the Age Discrimination In Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (ADEA), alleging that Plaintiff was intentionally, unlawfully and/or willfully discriminated against in the terms, conditions, and privileges of employment because of her race and age and for retaliation for engaging in a protective activity, and Equal Protection pursuant to 42 U.S.C. §1983 and New

[2]

ASA-223

York State Human Rights Law claims against all defendants, and breach of contract, and in the assertion of any additional claims after the commencement her complaint dated March 3, 2020 against the Rochester City School District and Rochester City School; District Board of Education (20-cv-6537), and subsequent to July 22, 2020.

6.      One or more acts complained of relates back to the original charges of discrimination dated March 16, 2017, March 30, 2017, April 25, 2017, and August 24, 2017.

7.      One or more of the acts complained of relates back to the original internal complaints of discrimination, the original charges of discrimination and/or the original pleadings before the Court, the Division and EEOC, thereby giving Defendants RCSD and ASAR sufficient notice, awareness, and actual knowledge of the nature of Plaintiff's claims.

8.      Defendant RCSD and Defendant ASAR had actual knowledge of Plaintiff's claims.

## JURISDICTION AND VENUE

9.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 28 U.S.C. §1343, 42 U.S.C. §§ 1983 and 1981. This action is authorized, instituted and/or regulated or statured pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified 42 U.S.C. §2000e and 703*et seq.*, ("Title VII"),  the Age Discrimination In Employment Act of 1967, 29 U.S.C. § 621*et seq.* (ADEA); and New York State Human Rights Law, N.Y. Exec. Law 15, §§ 296 et seq., New York State Human Rights Law, N.Y. Exec. Law and 42 U.S.C. Section 1983: Equal Protection, as well as federal and state laws, and constitutional law of the State of New York and the United States Constitution.

10.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to adjudicate Plaintiff's pendent claims under state law.

[3]

ASA-224

11.     Venue in the United States District Court, Western District of New York is proper under 28 U.S.C. § 1391 and each claim for relief and each unlawful employment and labor practice for relief stated herein arises within the United States District Court, Western District of New York, and all parties herein are located within this District.

## ADMINISTRATIVE REMEDIES EXHAUSTION

**Plaintiff's First Internal Complaint**

12.     At all relevant times, Defendant Rochester City School District had an internal filing process for filing of complaints regarding unlawful discrimination, harassment, and retaliation.

13.     At all relevant times, during the 2015-2016 and 2016-2017 school years, as well as the 2017-2018 school year, a complainant could file informally and/or formally (Superintendent's Regulation 0100-R: Reporting Complaints of Discrimination and Harassment dated August 12, 2015).

14.     A complaint did not have to be in writing but was encouraged.

15.     Specifically, the receipt of a complaint of harassment or discrimination, whether through informal or formal complaint procedures were permitted by Defendant RCSD.

16.     Defendant RCSD's District Policy Prohibiting Discrimination or Harassment of Students or Employees dated March 28, 2015 in relevant part states, "Such report shall be directed or forwarded to the District's designated compliance officer(s) through informal and/or formal compliant procedures as developed by the District. Such complaints are recommended to be in writing, although verbal complaints of alleged unlawful discrimination, including harassment, will also be promptly investigated in accordance with the terms of this policy".

17.     Plaintiff filed an internal complaint of discrimination and harassment against her

then immediate and direct supervisor, Teresa Root ("Root"), female white, on December 26, 2016 based on race (Black/African American), color ("Black/African American), age (Plaintiff was fifty-eight (58) years old at the time), sex (female, excludes sexual harassment and sexual violence), and retaliation.

18. Plaintiff's internal complaint also included harassment based on racial profiling/targeting and abuse of power.

19. Unbeknownst to Plaintiff, by memorandum dated January 13, 2017, by and through its authorized agent, Steven Carling ("Attorney Carling"), then Deputy General Counsel within the Department of Law for Defendant Rochester City School District recommended the dismissal of Plaintiff's internal complaint.

20. The memorandum was to Barbara Deane-Williams, then Superintendent of Schools and Karl Kristoff, then General Counsel for the Rochester City School District.

21. On January 17, 2017 by and through it authorized agent, Harry Kennedy ("Kennedy"), Chief of Human Capital Initiatives ("HCI"), the Defendant RCSD dismissed Plaintiff's internal complaint of discrimination and harassment without an adequate, proper, thorough, and competent investigation and closed the matter.

22. Defendant RCSD's Superintendent's Regulation 0100-R states that upon receipt of the complaint, the Chief of HCI or his or her designee will request an investigation by the Office of Safety and Security.

23. Defendant RCSD did not request an investigation by the Office of Safety and Security regarding Plaintiff's first internal complaint of discrimination and harassment against Root.

24. Defendant RCSD dismissed the Plaintiff's first internal complaint of

[5]

ASA-226

discrimination and harassment against Root and did not investigate the complaint and closed the matter.

25.     At all relevant times, Defendant RCSD did not have an appeal process regarding the dismissal of an internal complaint of discrimination or harassment.

26.     Defendant RCSD's Superintendent's Regulation 0100-R regarding Reporting Complaints of Discrimination or Harassment does not prohibit, prevent, or limit an employee, including Plaintiff from seeking and/or taking appropriate legal action in accordance with state and federal law.

**Plaintiff's Second Internal Complaint**

27.     Plaintiff filed a **second** internal complaint of discrimination and harassment against her then immediate and direct supervisor Root, Zone Director for Specialized Services, Sandra Simpson ("Simpson"), female white, then Chief of Specialized Services, and Kari Ann Kittelberger, ("Kittelberger"), female white, tenured Coordinating Administrator of Special Education ("CASE") and Acting Director and CASE of North Star on March 3, 2017 based on race, color, age, and retaliation.

28.     In February 2017, Kittelberger was named the Interim Director of Alternative Special Education Programs at North S .T. A. R., ("North S.T.A.R., or "North Star") and she was also NorthStar's CASE administrator during that time.  North S. T. A. R., the S. T. A. R., stands for Students Together Achieving Results.

29.     Defendant RCSD intentionally placed Kittelberger as the Director of North S .T. A. R., full well knowing that Plaintiff was the CASE for that program and full well knowing that the Plaintiff was more qualified than Kittelberger.

30.     Kittelberger and Root continued their harassing and discriminatory actions against

[6]

ASA-227

the Plaintiff and Simpson simply joined in.

31.     In August 2017, Defendant RCSD assigned Jason George ("George"), younger male white, as the Director of Alternative Special Education Programs at North S .T. A. R.

32.     Both Kittelberger and George were less qualified than the Plaintiff.

33.     Kittelberger and George were favored and handpicked by Jordan, Simpson and Root and was placed in the position without having to make application to the same.

34.     On March 6, 2017, Defendant RCSD forwarded the Plaintiff's second internal complaint regarding Root, Kittelberger and Simpson to Mr. Neil O'Brien ("O'Brien"), who was an internal investigator for the school district within the Office of Safety and Security.

35.     O'Brien contacted the Plaintiff via school district email on March 7, 2017 to set up an interview.

36.     On March 13, 2017, after discovering O'Brien's email, Plaintiff emailed O'Brien back to inform him that she had recently been transferred by Defendant RCSD to new school stating in relevant part, "Hi Mr. O'Brien", "I was recently transferred to a new school, so I am swamped with amends, AR, Reeval and program review. Also, if I recall correctly, the witnesses and others are interviewed first, so with you just getting this assignment, I know you will need time to interview all of them. I looks like I can make some time for you on April 7, 2017 at about 1:00p.m., at a location to be determined. I will let you know the location as soon as reasonable".

37.     Defendant RCSD had involuntarily transferred Plaintiff to Charles Carroll Elementary School # 46 on or about February 27, 2017 in violation of the CBA, Article 22.

38.     Simpson told Plaintiff that she had one day to move and that she needed to get her

[7]

ASA- 228

stuff out of her office by February 28, 2017 and not to report back at North S .T. A. R., which was located at 175 Martin Street where Plaintiff had been the CASE administrator.

39.     Plaintiff was also involuntarily removed from All City High School which was in violation of the CBA, Article 22: Vacancy and Transfer.

40.     Plaintiff continued to try to balance trying to meet with O'Brien and the great needs of students with disabilities at School # 46.

41.     On or about March 1, 2017, Defendant RCSD added two Charter Schools to Plaintiff's new job duties and responsibilities.

42.     The two (2) Charter schools were  University Preparatory Charter School For Young Men ("UPREP") and  Renaissance Academy Charter School  of The Arts ("Renaissance Charter School").

43.     Plaintiff discovered at School # 46 that there were thirty-five (35) or more students with disabilities that did not have their testing accommodations in place for the up-and-coming May 2017 state tests.

44.     Plaintiff discovered that the workload that Defendant RCSD had involuntarily transferred her to was enormous and incomplete.

45.     Plaintiff and her CSE team at North S .T. A. R and All City High School were in good standing and were prepared for the work at hand when returning from Winter Break (Week of February 20, 2017 through February 24, 2017).

46.     This was not the case with School #46.

47.     Plaintiff complained and voiced her concerns regarding the workload and incomplete tasks at #46 School but that fell on deaf ears.

48.     O'Brien wanted Plaintiff to meet on school district properties. Plaintiff

[8]

ASA-229

discussed with O'Brien her concerns under the circumstances.

49.     Plaintiff and O'Brien discussed April 7, 2017. After Plaintiff checked her work schedule she realized that April 5, 2017 worked better for her.

50.     O'Brien and Plaintiff set up an interview for April 5, 2017. The interview was scheduled for 2:00p.m., at the downtown library, which is located on South Avenue downtown Rochester, New York.

51.     On April 5, 2017, Plaintiff went for the scheduled interview to meet with O'Brien.

52.     Plaintiff parked in the Court Street Garage.

53.     Plaintiff entered the library after passing the security guard at the entrance of the library, she did not see O'Brien.

54.     Instead of leaving and knowing that her work schedule was full, Plaintiff waited around for O'Brien because she wanted to get the interview over with and to make sure that O'Brien was not simply running late.

55.     Plaintiff also searched the library for O'Brien, but he was not anywhere to be found. Plaintiff waited some more.

56.     O'Brien never showed for the interview with the Plaintiff regarding her second internal complaint of discrimination against Root, Simpson and Kittelberger.

57.     Later that day, around 2:50p.m., Plaintiff sent O'Brien an email stating, "Hi Mr. O'Brien, I showed, but you were not there."

58.     Plaintiff made a good faith and honest and sincere effort and attempt to meet with O'Brien on April 5, 2017 so that he could interview her regarding her March 3, 2017 internal complaint of discrimination regarding Root, Kittelberger and Simpson.

59.     After some exchanges of emails, Plaintiff and O'Brien tentatively rescheduled

[9]

ASA-230

another time to interview her on April 11, 2017.

60.     Plaintiff was not able to keep the tentatively scheduled appointment because it was a short work-week, and she was amid CSE meetings for annual reviews, initials, re-evaluations, and program reviews for students with disabilities at School # 46 and the two charter schools that Defendant RCSD had abruptly and involuntarily placed her at.

61.     Defendant RCSD uprooted Plaintiff from North S .T. A. R and All City High School where she had been CASE. Plaintiff and her team were up to date on their duties and responsibilities and had already projected the needs of students with disabilities on their workload for those programs when returning from the February 2017 Winter break (February 20, 2017 through February 24, 2017).

62.     O'Brien, and Defendant RCSD were in knowledge of and very aware of the complexity of Plaintiff's new workload and work schedule and understood that any dates agreed upon were tentative and may need to be rescheduled.

63.     O'Brien and Plaintiff agreed to schedule the interview for April 27, 2017 after the Easter break at 3:30p.m. The time worked for both O'Brien and Plaintiff.

64.     On April 26, 2017, at 8:25p.m., Plaintiff sent Lori Baldwin, Director of Safety and Security an email regarding some disturbing events that were directed at her by one of Defendant RCSD employee (s), which were retaliation to her internal complaint against Root, Kittelberger and Simpson.

65.     In that email Plaintiff asked Baldwin whether, "Do you and/or Mr. O'Brien have a copy of the Complaint? It doesn't sound like you do.

66.     On April 26, 2017 at 10:31 p.m., Baldwin responded, "No we do not".

67.     Plaintiff exchanged a few more emails with Baldwin and/or O'Neil for

[10]

ASA-231

clarification purposes.

68.     Defendant RCSD response emails made false claim that Plaintiff did not show for the April 5, 2017 interview. Defendant RCSD lied.

69.     Plaintiff sent an email on April 27, 2017 at 2:44p.m., stating, "Lori, "There is no need to try to strong arm me and issue an ultimatum. The Library video will also show that I was there waiting as well. I am in a CASE meeting at Hart Street. He would need to come over. I am on the 3rd Floor; we can meet on the 4th Floor. I will meet him up there." "Also, Have him to bring a copy of the Complaint to I can ensure that you guys have now being given the Complaint."

70.     Plaintiff and O'Brien met in the school district's public cafeteria space where the cleaning person was in and out cleaning and listening and others were walking through at their leisure and listening.

71.     There was no privacy and no secure atmosphere for confidentiality. Plaintiff was truly uncomfortable and made those concerns known to O'Brien.

72.     For the first time and during the interview appointment, O'Brien informed Plaintiff that the interview would take upwards to six hours or more. It was already 3:30p.m.

73.     Plaintiff informed O'Brien that she had not made any arrangements at home and expressed concerns with being on RCSD campus that late into the night.

74.     O'Brien informed the Plaintiff that he wanted additional information. O'Brien and Plaintiff mutually agreed to reschedule.

75.     O'Brien and Plaintiff rescheduled the next interview for May 15, 2017.

76.     Plaintiff again made another made a good faith and honest and sincere effort and

[11]

ASA-232

attempt to meet with O'Brien on April 27, 2017 so that he could interview her regarding her March 3, 2017, dated March 1, 2017, internal complaint of discrimination regarding Root, Kittelberger and Simpson

77.        Plaintiff tried to get the interview over with because she was continuously in the mist of her newly complex work schedule, duties and job responsibilities.

78.        Plaintiff discussed with O'Brien the possibility of May 4, 2017.

79.        Plaintiff expressed to O'Brien that May 4, 2017 may work, but if not May 15, 2017.

80.        On April 30, 2017, Plaintiff sent O'Brien an email, "Hi Mr. O'Brien, I was hoping the May 4th would work, but this is testing week, so I will see you at the original scheduling date of May 15th at 10a.m."

81.        On May 15, 2017, Plaintiff went to meet with O'Brien.

82.        The meeting place was at College Town, University of Rochester Barnes and Nobles Bookstore which was adjacent to the University of Rochester Barnes and Noble Starbucks Café located in the same building and located on Mount Hope Avenue with the cross street of Elmwood Avenue, Rochester, New York.

83.        Plaintiff arrived possibly ten (10) to fifteen (15) minutes early so that Defendants would not make another false claim as it had on April 5, 2017 by falsely claiming that she was a no show.

84.        Plaintiff parked on Mount Hope Avenue right in front of University of Rochester Barnes and Noble Starbucks Café and across from the then vacant Bruegger's Bagel.

85.        Plaintiff sent O'Brien an email at 10:07a.m., after not seeing him at 10:00a.m., at the scheduled time and place.

ASA -233

86.     Plaintiff then turned off her computer, feed the City of Rochester parking meter and went inside. Plaintiff did not see O'Brien.

87.     Plaintiff, then waited for O'Brien.

88.     Plaintiff also searched the Bookstore for O'Brien. Plaintiff did not see him, so she waited in the Café in plain view.

89.     O'Brien was nowhere to be found by the Plaintiff.

90.     Plaintiff gave O'Brien the benefit of the doubt and again thinking perhaps he was running late, she waited in the adjacent Starbucks Café at one of the tables in plain view of the bookstore, café and street facing Mount Hope Avenue.

91.     Plaintiff waited for about possibly fifty to fifty-five minutes or so for O'Brien.

92.     After O'Brien did not show, Plaintiff left.

93.     Plaintiff later checked her email and saw that O'Brien had emailed her at 10:16a.m., asking, "Are you here?"

94.     Plaintiff also discovered that O'Brien had sent another email at 10:58a.m., "Don't want any misunderstanding, I have been in Barnes and Noble since 10:00a.m. Will you be meeting today?"

95.     Plaintiff did not know that O'Brien had sent her two emails until later that morning around 11:00a.m., or so.

96.     At 11:08a.m., Plaintiff responded to O'Brien email stating, "I had been at Barnes and Noble for a while, but you again were a no show".

97.     At 11:11a.m., O'Brien responded, "Where in the store?"

98.     At 11:23a.m., Plaintiff responded, "There is no misunderstanding. I was at

[13]

ASA-234

Barnes and Noble. The District is simply repeating their behavior and had no intentions of conducting an adequate and proper investigation. This is not the first time that this has happen and the District refused to interview me and to conduct a proper investigation".

99.     At 11:24a.m., Plaintiff wrote, "This was the third time that I made myself available.

100.     Plaintiff did not here from O'Brien after that and had no other contact with him as of 11:24a.m., on May 15, 2017.

101.     Plaintiff made yet another good faith and honest and sincere effort and attempt to meet with O'Brien on May 15, 2017 so that he could interview her regarding her March 1, 2017 internal complaint of discrimination regarding Root, Kittelberger and Simpson.

102.     O'Brien did not show and if he did Plaintiff did not see him.

103.     The City parking meter and the cameras throughout the University of Rochester Starbucks Café and Barnes and Noble Bookstore will confirm that Plaintiff was there waiting for O'Brien.

104.     The City's street cameras will also attest to the fact that the Plaintiff was parked where she said that she was parked between the hours of at least 9:30a.m., or so and at least 11:00a.m., on May 15, 2017.

105.     Plaintiff later learned during the November 15, 2018 Division Hearing during O'Brien sworn testimony and from some documents that the Defendants included in their response which the Plaintiff had never seen or been privy to and/or provided a copy of, that O'Brien stated that on May 15, 2017 at 10:55a.m., that he called Baldwin to advise her of the situation and that Baldwin advised him to leave the location.

106.     Plaintiff also discovered in November 2018 that O'Brien complete his

[14]

ASA-235

investigation on May 24, 2017 and submitted his write-up without adequately, properly, fairly, thoroughly, and competently investigating the matter to Defendant Legal Department and HCI.

107.    Plaintiff was never interviewed by O'Brien and neither did O'Brien communicate to Plaintiff that he completed his investigation.

108.    O'Brien neither Defendant RCSD provide a copy of the investigation findings to the Plaintiff.

109.    Plaintiff was not provided a copy of O'Brien's investigation.

110.    O'Brien retired from the school district as an internal investigator in June 2017.

111.    Since June 2017, O'Brien is employed with the Monroe County District Attorney's Office as an internal investigator.

112.    Plaintiff was never interviewed for the second internal discrimination complaint no matter how many times she made herself available to be interviewed, including up to May 15, 2017.

113.    Unbeknownst to Plaintiff, on May 24, 2017, Defendant RCSD dismissed the second internal complaint of discrimination and harassment against Root, Simpson and Kittelberger.

114.    Plaintiff's second internal complaint was dismissed and closed without an adequate, proper, thorough, and competent investigation.

**Plaintiff's First Charge of Discrimination Against Defendant RCSD**

115.    Plaintiff filed a charge of discrimination on March 16, 2017 with the New York State Division of Human Rights ("the Division"), Case No.: 10186902 with dual filing with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No.:16GB701939 against Defendant RCSD.

[15]

ASA -236

116.    The Charge was filed within 300 days after one or more of the alleged acts of discrimination occurred.

117.    On August 29, 2017, the Division (Julia B. Day, Regional Director) issued a Determination and Order After Investigation finding that the Division had jurisdiction and found probable cause.

118.    The matter was scheduled for a public hearing before the Division's Administrative Law Judge, Michael T. Groben ("ALJ Groben") on November 14, 2018 and November 15, 2018, respectively.

119.    ALJ Groben issued his Recommended Findings of Fact, Opinion and Decision and Order recommending dismissal of the complaint on June 10, 2019.

120.    The Division by and through Commissioner Angela Fernandez ("Commissioner Fernandez") adopted ALJ Groben's Recommended Findings of Fact, Opinion and Decision and Order dated June 10, 2019 and issued a Notice and Final Order dismissing the complaint on October 3, 2019.

121.    Plaintiff received a notice of right to sue Defendant RCSD regarding her March 16, 2017 charge of discrimination from the EEOC (Charge No.: 16G-2017-01939) against Defendant RCSD on December 4, 2019 (Kevin J. Berry, District Director).

**Plaintiff's Second Charge of Discrimination Against Defendants RCSD and ASAR**

122.    Plaintiff filed a charge of discrimination on March 30, 2017 with the New York State Division of Human Rights ("the Division"), Case No.: 10187122 (ASAR) and Case No.: 10187117 (RCSD) with dual filing with the Equal Employment Opportunity Commission ("EEOC"), against Defendants RCSD and ASAR; (Charge No.: 16GB702096) (ASAR) and Charge No.: 16GB702093)(RCSD).

[16]

ASA-237

123.     The Division separated the charges into two separate charges.

124.     The Charge was filed within 300 days after one or more of the alleged acts of discrimination occurred.

125.     On August 29, 2017, the Division (Julia B. Day, Regional Director) issued a Determination and Order After Investigation finding that the Division did not have jurisdiction over Plaintiff's breach improper practice charges and found no probable cause and dismissed the complaint against Defendant ASAR.

126.     Plaintiff received a notice of right to sue Defendant ASAR from the EEOC (Charge No.: 16G-2017-02096) (ASAR) on September 22, 2017 (Kevin J. Berry, District Director).

127.     Regarding Defendant RCSD, on August 29, 2017, the Division (Julia B. Day, Regional Director) issued a Determination and Order After Investigation finding that the Division had jurisdiction and found probable cause.

128.     The matter was scheduled for a public hearing before the Division's Administrative Law Judge, Michael T. Groben ("ALJ Groben") on November 14, 2018 and November 15, 2018, respectively.

129.     ALJ Groben issued his Recommended Findings of Fact, Opinion and Decision and Order recommending dismissal of the complaint on June 10, 2019.

130.     The Division by and through Commissioner Angela Fernandez ("Commissioner Fernandez") adopted ALJ Groben's Recommended Findings of Fact, Opinion and Decision and Order dated June 10, 2019 and issued a Notice and Final Order dismissing the complaint on October 3, 2019.

131.     Plaintiff received a notice of right to sue Defendant RCSD regarding her March

[17]

ASA-238

16, 2017 charge of discrimination from the EEOC (Charge No.: 16G-2017-02093)(RCSD) on

December 4, 2019 (Kevin J. Berry, District Director).

**Plaintiff's Third Charge of Discrimination**

132.     Plaintiff filed a charge of discrimination on April 25, 2017 with the New York

State Division of Human Rights ("the Division"), Case No.: 10187620 with dual filing with the

Equal Employment Opportunity Commission ("EEOC"), Charge No.: 16GB702468 against

Defendant RCSD.

133.     On August 30, 2017, the Division (Julia B. Day, Regional Director) issued a

Determination and Order After Investigation finding that the Division had jurisdiction and found

no probable cause and dismissed the complaint.

134.     Plaintiff received a notice of right to sue Defendant RCSD from the EEOC

(Charge No.: 16G-2017-02468) against Defendant RCSD on September 22, 2017 (Kevin J.

Berry, District Director).

**Plaintiff's Fourth Charge of Discrimination**

135.     Plaintiff filed a charge of discrimination on August 24, 2017 with the New York

State Division of Human Rights ("the Division"), Case No.: 10189668 with dual filing with the

Equal Employment Opportunity Commission ("EEOC"), Charge No.: 16GB704037 against

Defendants RCSD.

136.     On February 14, 2018, the Division (Julia B. Day, Regional Director) issued a

Determination and Order After Investigation finding that the Division had jurisdiction and found

no probable cause and dismissed the complaint.

137.     Plaintiff received a notice of right to sue Defendant RCSD from the EEOC

[18]

A6A-239

(Charge No.: 16G-2017-04037) against Defendants RCSD on March 20, 2018 (Kevin J. Berry, District Director).

138.     More than 240 days to a year prior to the institution of the lawsuits, a charge of discrimination was filed with the Division with dual filing with the EOC alleging violation of Title VII by the Defendants RCSD and ASAR.

**The Parties Collective Bargaining Agreement ("CBA")**

139.     At all relevant times, Plaintiff, Curry-Malcolm had a contractual relationship with the school district and her local labor union as a unit member to the parties' agreement under the terms and conditions of employment under the CBA between Defendant RCSD and Defendant ASAR.

140.     At all relevant times, the CBA that governed during the 2015-2016 and 2016-2017 school years was dated July 1, 2009 through June 30, 2014 with negotiated agreements agreed to between the parties, including and up through April 2016.  On or about April 8, 2016, a successor agreement was reached between the parties. The successor CBA that governed on or about April 8, 2016 was dated July 1, 2014 through June 30, 2018.

141.     At all relevant times, the successor CBA that governed during the 2017-2018 school year and dated July 1, 2014 through June 30, 2018 with negotiated agreements agreed to between the parties

142.     To date, no successor agreement has been reached according to the ASAR website and the School Administrators Association of New York State SAANYS"), Deputy Counsel, Jennifer Carlson, Esq.

143.     The governing CBA after April 2016 that now governs is dated July 1, 2014

[19]

ASA-240

through June 30, 2018 with negotiations being agreed to by the parties in between a successor agreement, including changing the name of CASE, tenured area Bracket IV to Associate Director of Special Education, tenured area, Bracket III, i.e., the same benefits of that of an Assistant Principal with better benefits and incentives, including salary increases and vacation time, but not limited to.

144.    At all relevant times, Defendant ASAR has been duly recognized by the Rochester City School District to represent both certificated and civil service administrative and supervisory titles and operates pursuant to a CBA with the District.

145.    At all relevant times, Defendant ASAR has been recognized as the sole and exclusive bargaining unit representing both certificated and civil service administrative and supervisory titles and operates pursuant to a CBA with the District.

146.    At all relevant times, Plaintiff, Curry-Malcolm was a permanently certificated administrator and unit member of Defendant ASAR.

147.    Plaintiff met with Defendant ASAR numerous times throughout the 2015-2016, 2016-2017 school years regarding Defendant RCSD's breach of the employment contract and breach of the CBA.

148.    Plaintiff met with Defendant ASAR from July 2016 through December 2016, and during the 2016-2017 school year. At no time during those meetings did Defendant ASAR inform Plaintiff that she could file her own grievance and at no time was Plaintiff informed regarding a grievance form and/or provided a grievance form to file a grievance from anyone.

149.    On April 24, 2017, at 6:24p.m., Plaintiff emailed Dr. Cliby, Rowe and Wagner,

ASA-241

subject: Breach of Contract and the Collective Bargaining Agreement stating, "Hi Tim, Please file a grievance on my behalf in regard to the District's breach of my contract and the collective bargaining agreement. Please see me a copy of the grievance once filed".

150.    Plaintiff was not aware or in knowledge of any formal grievance form of Defendant RCSD or Defendant ASAR and no such grievance form was ever shared with  the

151.    Plaintiff by the Defendant RCSD Superintendent of School or any of her designees or any ASAR representative and/or designee.

152.    Neither was there any such formal grievance form that an employee, including Plaintiff where an employee, including on Defendant RCSD and/or Defendant ASAR's websites to date and/or during the relevant period.

153.    Neither did Deane-Williams, Dr. Cliby, Rowe, Harry Kennedy ("Kennedy"), Defendant RCSD's Chief of Human Capital Initiatives ("HCI") and/or his designee, and/or anyone else provide any grievance form at any time to the Plaintiff.

154.    It has been the past practice of the Defendant RCSD and Defendant ASAR to allow district employees to use informal or unofficial methods to file a grievance or grievances, including utilizing district email and/or via telephone conversations.

155.    It has been past practice of the Defendant RCSD and Defendant ASAR to file a grievance or grievances for a unit member without the unit member completing and/or filling out any type of grievance form, i.e., the ghost grievance form that was supposed to have existed that did not during the relevant period.

156.    If the Defendants had a grievance form, they did not at any time provide one to the Plaintiff and neither did either of them inform the Plaintiff that one existed or where she could obtain a copy. Defendant ASAR provided Plaintiff no training on the CBA.

ASA - 242

157.     Defendants were inconsistent with the filing of a grievance process, applying adopted district employment practices, policies, procedures, and customs.

158.     Defendants set one standard for the Plaintiff and another for other members and/or non-minority employees of the school district and association in the process of filing of a grievance and/or grievances and in the administering of the terms, conditions, and privileges of employment.

159.     Plaintiff made numerous attempts to file a grievance and/or made numerous requests that Defendant ASAR file a grievance on her behalf and/or on the behalf of the association.

160.     Defendant ASAR refused and failed to file a grievance on Plaintiff's behalf and/or on behalf of the association and continued to allow the Defendant Rochester City School District to breach the parties CBA.

161.     Plaintiff has exhausted her administrative remedies. All conditions precedent to the institution of lawsuit (s) has/have been fulfilled and the lawsuits have been filed within ninety (90) days of receiving such right to sue letters from the EEOC.

## PARTIES

162.     Plaintiff, BERNICE CURRY-MALCOLM hereinafter "Plaintiff" or " Plaintiff, Curry-Malcolm" is a sixty-two year old Black/African American married female and citizen of the United States of America and member of the Baptist faith.

163.     Plaintiff, BERNICE CURRY-MALCOLM is a married female Black/African American citizen of the United States and resident of New York, Monroe County, Henrietta, New York.

164.     Plaintiff, BERNICE CURRY-MALCOLM is a Black/African American

[22]

ASA-243

married female individual and member of a protected class.

165.     Plaintiff, BERNICE CURRY-MALCOLM is a veteran educator with more than twenty-six years of educational experience which includes more than nineteen (19) years of experience in working with students with disabilities in the field of special education as a special education teacher and/or administrator.

166.     Defendant Rochester City School District is a municipal corporation existing under and conducting and engaging in and effecting commerce and doing business by virtue of the laws of the State of New York, County of Monroe and is located at 131 West Broad Street, Rochester, New York 14614.

28.     Defendant RCSD, is empowered to sue and be sued, and is a public educational institution and public school district in the City of Rochester, County of Monroe; State of New York who employ and continues to employ over and above more than five hundred (500) employees.

167.     As an employer and public educational organization, Defendant RCSD is subject to the jurisdiction of the New York State Human Rights Law ("NYSHRL" or "the Division"), Executive Law §290 *et seq.*; and the United States Equal Employment Opportunity Commission ("the EEOC") regarding unlawful discrimination.

168.     As an employer, Defendant RCSD is subject to the jurisdiction of the Division and EEOC under and by virtue of state and federal unlawful employment practices, as well as unlawful discrimination, harassment and retaliation under New York State Human Rights Law pursuant to New York State Human Rights Law, Executive Law §290 *et seq.*, §§ 296 (1)(a), (1)(c), (1)(h), 6 and 7, and by Title VII of the Civil Rights Act of 1964, amended, codified 42 U.S.C. Sections 2000e and 703 *et seq.* ("Title VII") and unlawful age discrimination under the

ASA- 244

Age Discrimination and Employment Act of 1967 ("ADEA"), and 42 U.S.C. §§1983 and 1981 *et seq.*

169.     Defendant Barbara Deane-Williams ("Deane-Williams") was a high ranking salaried official who was appointed on July 18, 2016 by the Defendant Rochester City School District Board of Education as Superintendent of Schools within a supervisory role with decision making powers within the RCSD public educational organization and, as such, was responsible for the operation of the District.

170.     At all relevant times, Defendant Deane-Williams was employed by the Rochester City School District as Superintendent of Schools and serves at the pleasure of the Rochester City School District Board of Education ("RCSD BOE").

171.     Defendant Deane-Williams, female white, is sued here both in her personal and official capacities.

172.     Defendant Sandra Simpson ("Simpson") was a high ranking salaried official as Chief of Specialized Services and former Executive Director of Specialized Services within a supervisory role with decision making powers within the RCSD public educational organization and, as such, was responsible for the operation of the Department of Specialized Services of the District.

173.     At all relevant times, Defendant Simpson was employed by the Rochester City School District as Chief of Specialized Services and/or former Executive Director of Specialized Services and serves at the pleasure of the Superintendent of Schools and the Rochester City School District Board of Education.

174.     Defendant Simpson, female white, is sued here both in her personal and official capacities.

ASA - 245

175.     Defendant Mary Pauly ("Pauly") was a high ranking salaried official and appointed by the Rochester City School District on May 15, 2017 as Executive Director of Specialized Services within a supervisory role with decision making powers within the RCSD public educational organization and, as such, was responsible for the operation of the Department of Specialized Services of the District.

176.     At all relevant times, Defendant Pauly was employed by the Rochester City School District as Executive Director of Specialized Services and serves at the pleasure of the Superintendent of Schools and the Rochester City School District Board of Education.

177.     Defendant Pauly, female white, is sued here both in her personal and official capacities.

178.     Defendant Teresa Root ("Root") was a high ranking salaried official within Central Office as Zone Director of Specialized Services in a supervisory role with decision making powers within the RCSD public educational organization.

179.     Root was responsible for the operation of the Department of Specialized Services in the areas of Central Services, Behavioral Specialist (s), Bilingual Evaluation Team, MATCH Team, Long-Term Suspension Manifestation Determinations, probationary and/or tenured CASE administrators on her caseload, as well as monitoring activities regarding NYSED Enforcement Action, NYSED Compliance Assurance Plans and State Complaints of the District, but not limited to.

180.     At all relevant times, Defendant Root was employed by the Rochester City School District as Central Office Committee on Special Education ("CSE") and Central Services Zone Director of Specialized Services and serves at the pleasure of the Superintendent of Schools and the Rochester City School District Board of Education.

ASA-246

181.     At all relevant times, during the 2015-2016 school year, Defendant Root was Plaintiff, Curry-Malcolm's immediate and direct supervisor.

182.     At all relevant times, during the 2016-2017 school year, Defendant Root was Plaintiff's direct, immediate, and indirect supervisor based on her supervisory job duties, responsibilities, and operations as a Central Office Zone Director within the Department of Specialized Services.

183.     Defendant Root, female white, is sued here both in her personal and official capacities.

184.     Defendant Association of Supervisors and Administrators of Rochester ("Defendant ASAR") is an unincorporated association and local labor organization/union, the affiliate of School Administrators Association of New York State ("SAANYS").

185.     Defendant ASAR by and through SAANYS is empowered to sue and be sued, and existing under and conducting and engaging in commerce and doing business by virtue of the laws of the State of New York, County of Monroe, and which represents administrators and supervisors employed by Rochester City School District (" Defendant RCSD").

186.     ASAR is the sole and exclusive bargaining unit between the Rochester City School District and unit members and is located at 25 Washington Street, Rochester, New York 14614.

187.     As a labor organization, whose union representatives consists of administrative personnel employing more than four (4) persons and are salaried administrative employees of the Defendant RCSD who employs more than five hundred (500) employees, Defendant ASAR is subject to the jurisdiction of the Division and EEOC regarding unlawful discrimination.

188.     As a labor union and/or labor organization, Defendant ASAR is subject to the

ASA - 247

jurisdiction of the New York State Human Rights Law ("NYSHRL" or "the Division"), Executive Law §290 et seq.; and the United States Equal Employment Opportunity Commission ("the EEOC") under and by virtue of state and federal unlawful employment practices.

189.     As a local labor organization, Defendant ASAR in subject to the jurisdiction of the New York State Human Rights Law pursuant to New York State Human Rights Law, Executive Law §290 et seq., §§ 296 (1)(a), (1)(c), (1)(h), 6 and 7, and by Title VII of the Civil Rights Act of 1964, amended, codified 42 U.S.C. Sections 2000e and 703 et seq. ("Title VII") and unlawful age discrimination under the Age Discrimination and Employment Act of 1967 ("ADEA"), and 42 U.S.C. §§1983 and 1981 et seq., under and by virtue of the state is a "person" within the meaning of 42 U.S.C. §1983 and NYSDHRL §292, *et seq*.

190.     At all relevant times, Defendant ASAR was a local labor union of Defendant Rochester City School District administrative personnel.

191.     Timothy Cliby and John Rowe are salaried employees within RCSD public educational organization.

192.     At all relevant times, Plaintiff was a fulltime regular "active" district employee and unit member within the local labor union organization, Defendant ASAR.

193.     At all relevant times, Root was in a supervisory role within Defendant RCSD and was a unit member within the local labor union organization, Defendant ASAR.

194.     At all relevant times, Defendant Dr. Timothy Cliby ("Dr. Cliby") has served as ASAR's duly elected President with decision making powers and is a salaried employee of the Defendant RCSD but is on leave from his position in the District to serve exclusively as an ASAR officer serving at the pleasure of the Superintendent of Schools.

195.     Defendant Dr. Cliby's salary is paid by the Defendant RCSD.

[27]

ASA-248

196.     Defendant Dr. Cliby, male white, is sued here both in his personal and official capacities.

197.     At all relevant times, Defendant John Rowe ("Rowe") has served as ASAR's duly elected Vice President with decision making powers and is a salaried employee of the RCSD and is on leave from his position as Executive Director of Teaching and Learning to serve exclusively as an ASAR officer serving at the pleasure of the Superintendent of Schools.

198.     Defendant Rowe's salary is paid by the Defendant Rochester City School District.

199.     Defendant Rowe, male white, is sued here both in his personal and official capacities.

200.     At all relevant times, Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of the United States, and the State of New York, and under the authority of their respective positions or offices with decision making powers, and as such as salaried employees of the Defendant RCSD empowered by Defendant RCSD and Defendant ASAR.

## STATEMENT OF FACTS

201.     Plaintiff commenced several discrimination cases against her former employer, Rochester City School District based on race, color, age, and/or and sex (female, excludes sexual harassment and sexual violence)/gender (female) in the Court on December 19, 2017 (17-cv-6873DGL), complaint dismissed with prejudice, June 18, 2018 (18-cv-6450DGL), complaint dismissed with prejudice, and March 3, 2020, i.e., July 22, 2020 (20-cv-6537DGL), complaint dismissed.

202.     Plaintiff commenced a discrimination lawsuit against her local labor union,

ASA-249

Association of Supervisors and Administrators of Rochester ("ASAR") and former employer, Rochester City School District based on race, color, age, and sex (female, excludes sexual harassment and sexual violence)/gender (female) in this Court on December 20, 2017 (17-cv-6878DGL), complaint dismissed with prejudice, and leave-to-file sanction imposed and entered.

203.    Since the complaints filed, Plaintiff has been subjected to a continued pattern and practice of discrimination and retaliation by Defendant RCSD for complaining of and opposing discrimination, including during the 2017-2018 school year and beyond.

204.    One or more of the acts complained of, including the ones that are complained of subsequently to the filing of charges of discrimination and the filing of her original pleadings before this Court relates back to the original charges of discrimination and original pleadings in Plaintiff's lawsuits.

205.    Plaintiff has been denied her rights pursuant to the Collective Bargaining Agreement ("CBA") and Education Law to due process of law and equal protection.

206.    Defendant RCSD had no legitimate reason for the actions it took since race and age was the "but for" reason for Plaintiff termination.

207.    Any reason (s) proffered by Defendant RCSD is pre-textual as a matter of law.

208.    Plaintiff, Curry-Malcolm holds a Certificate of Advanced Study Degree in Educational Administration from State University of New York ("SUNY") College at Brockport with permanent certification within the area of School District Administrator obtained in 2007.

209.    Plaintiff, Curry-Malcolm has earned nine (9) hours toward a doctoral degree in Educational Leadership with a concentration in Special Education from University of Rochester, Margaret Warner Graduate School of Education and Human Development, those 9 hours were obtained in fall of 2008 through summer of 2009.

ASA-250

210.     Plaintiff, Curry-Malcolm holds New York permanent public school teacher certifications in good standing within the areas of Business and Distributive Education and Special Education obtained in 1998.

211.     At all relevant times, Plaintiff, Curry-Malcolm was a certificated administrator and a permanently certified administrator in good standing with the State of New York, Department of Education.

212.     Plaintiff, Curry-Malcolm holds a Bachelor of Business Administration Degree within area of General Business, a Bachelor of Science Degree in Education, and a Master of Education Degree within the area of Special Education, all from Delta State University ("Delta State") obtained from 1984 through 1992.

213.     Plaintiff, Curry-Malcolm hold certifications in good standing within the areas of Business Education (7-12), Educational Handicapped (K-12) and Career Level Administrator in the State of Mississippi.

214.     Plaintiff, Curry-Malcolm entered an employment contractual agreement with the Defendant Rochester City School District on August 21, 2015 holding the position of a Coordinating Administrator of Special Education ("CASE").

215.     Plaintiff's placement within Defendant RCSD's public educational organization was that of a Central Office Committee on Special Education ("CSE") CASE administrator. Plaintiff was a CSE chairperson.

216.     On August 27, 2015, at its regularly scheduled board meeting, the Rochester City School District Board of Education ("RCSD BOE") appointed Plaintiff, Curry-Malcolm to the position of CASE as a regular fulltime 'active" employee.

217.     Plaintiff's first day of work within the Defendant RCSD's public

ASA -251

educational organization in her newly hired position as a CASE, tenured area, Bracket IV was August 30, 2015.

218.　　Plaintiff, Curry-Malcolm was previously employed and had a contractual relationship with the public education organization Defendant RCSD from August 31, 1998 through September/October 2000, i.e., July 1, 1998 through June 30, 1999 school year, July 1, 1999 through June 30, 2000 school year, and July 1, 2000 through September/October 2000 of the July 1, 2000 through June 30, 2001 school year, as a fulltime regular "active" special education teacher.

219.　　Plaintiff, Curry-Malcolm worked as a special education teacher within the school district's Senior High Alternative Program of Education ("SHAPE") holding the district's position and title of consultant special education teacher.

220.　　On August 31, 1998, Plaintiff, Curry-Malcolm entered a contractual relationship with the Rochester City School District and was a unit member of the Rochester Teachers Association ("RTA"), local labor union, the affiliate of the New York State United Teachers' Union ("NYSUT").

221.　　Plaintiff, Curry-Malcolm did not at any time work for Defendants Rochester City School District as self-employed, an itinerant teacher and/or third-party contractor/administrator.

222.　　Plaintiff worked as a special education teacher within the Defendant RCSD public educational organization from August 31, 1998 through September/October 2000.

223.　　Plaintiff did not at any time work for the Honeoye Falls-Lima Central School District ("HF-L") as self-employed, an itinerant teacher and /or third-party contractor/administrator.

ASA -252

224.     Plaintiff, Curry-Malcolm was not at any time employed by the Defendant Rochester City School District from approximately 1998 to 2004 as an itinerant teacher.

225.     Plaintiff, Curry-Malcolm was employed as a fulltime regular "active" employee with HF-L beginning on January 8, 2001 through June 2008 holding the title of special education teacher in the tenured area of Special Subject Tenure Area Gen Spec Ed.

226.     Plaintiff Curry-Malcolm was granted tenure by HF-L on or about September 1, 2004 after completing a successful three-year probationary period as a full-time regular "active" employee.

227.     At all relevant times, Plaintiff, Curry-Malcolm was a full time regular "active" employee within the Defendant RCSD public educational organization holding the probationary title of Coordinating Administrator of Special Education ("CASE"), tenured area Bracket IV.

228.     At all relevant times, Plaintiff, Curry-Malcolm was under a contractual relationship formed with the school district on August 21, 2015 and the contractual relationship formed as a unit member to the parties Collective Bargaining Agreement ("CBA") between Defendant Rochester City School District and Defendant Association of Supervisors and Administrators of Rochester ("Defendant ASAR").

229.     At all relevant times, in compliance with the terms and conditions of her employment and the terms and conditions of the CBA, Plaintiff, Curry-Malcolm was owed a care of standard of duty and was entitled to a good faith, fair, adequate, equal, timely, and competent duty of fair representation by Defendant ASAR.

230.     At all relevant times, Defendant RCSD and Defendant ASAR owed Plaintiff a special duty to protect her from unlawful discrimination, harassment, and retaliation.

231.     Plaintiff job duties and responsibilities, included, but were not limited to,

[32]

ASA- 253

providing Committee on Special Education ("CSE") service to students with disabilities. Plaintiff was the Central Office CASE CSE Chairperson for nine (9) school district programs.

232.    As the CSE chairperson, Plaintiff did not make decisions independently or in isolation. The CSE committee consisted of a group of professionals and professional experts in their own rights.

233.    CSE decision are made as a team, but the RCSD Defendant did have a habit of deviating from that of the Committee, including Deane-Williams.

234.    There were times after the CSE committee meeting in which the Plaintiff was chairperson that Root, Kittelberger, and Deane-Williams or the district would unilaterally change the decision from the one that was made by the members of the CSE committee to their own.

235.    The CSE team could include, but not limited to, the parent (s) of students with disabilities, students with disabilities where applicable depending on age, an advocate (s) for students with disabilities, school nurse (s) and/or medical professional (s), including a doctor where applicable, lawyer (s) where applicable, teacher (s), psychologist (s), behavioral specialist(s), occupational therapist (s), physical therapist (s), audiologist (s), program and/or school administrator (s), and guidance counselor(s).

236.    Plaintiff as CSE chairperson and the CSE committee decisions were made based on the individualized needs and individualized educational program needs of the student with disabilities.

237.    During the 2015-2016 school year, Plaintiff was responsible for nine (9) school district school programs. Those school programs included Youth and Justice's New Beginning, Water Tower, Northaven, Monroe County Correctional Facility, Monroe County Detention

ASA-254

Center, Strong Behavioral Health, and Monroe County Jail programs, as well as North Star and LyncX Academy.

238.    Plaintiff was also responsible for the supervision and performance evaluations of teachers and school psychologists within the programs that she served, scheduling CSE meetings for students with disabilities, home visits, annual reviews, re-evaluations, program reviews, initials, placement, providing professional development to training Youth and Justice, North Star and LyncX Academy teaching staff, and a host of other related duties and responsibilities regarding CSE.

239.    Plaintiff was the only CASE with nine (9) programs. All other CASE administrators were assigned one, two or three schools and/or programs during the 2015-2016 school year.

240.    During the 2016-2017 school year, the RCSD Defendant involuntarily transferred the Plaintiff in February 2017.

241.    During the 2016-2017 school year, Plaintiff had three different direct and immediate Supervisors, including Marica Pease ("Pease"), Director of Alternative Special Education Programs at NorthStar(August 2016 through November 2016); Joseph Capezzuto ("Capezzuto"), Zone Director of Specialized Services (November 2016 through February 17,2017), and Kelly Sanson ("Sanson"), Zone Director (February 27, 2017 through early June 2017.

242.    By June early June 2017, Plaintiff did not have a direct or immediate supervisor to report to.

243.    Plaintiff was not evaluated during the 2016-2017 school year.

244.    The Defendant RCSD did not provide Plaintiff with another immediate and direct

ASA-255

supervisor after removing Sanson without the Plaintiff knowledge.

245.     Sanson did not let the Plaintiff know that she was no longer her immediate and direct supervisor and neither did she tell Plaintiff that she was moved to an Assistant Principal position. Sanson neither Defendant RCSD conducted a final performance evaluation of the Plaintiff for the 2016-2017 school year.

246.     Other impacted probationary CASE administrators received a final performance evaluation for the 2016-2017 school year so that they would not lose any tenure credits, and/or benefits.

247.     Plaintiff made inquiry regarding the 2016-2017 final performance evaluation process but did not receive an answer from the school district or Sanson or ASAR.

248.     At all relevant times, prior to the Defendants discriminating against Plaintiff, she always performed her job duties satisfactorily and enjoyed praises and positive work performance comments from the teachers, staff, students, parents, and administrators that she worked with, including her mentor Laney Johnson ("Johnson"), Assistant Principal of School #15.

249.     At the beginning Root and Kittelberger were supported of Plaintiff, but that changed and both Root and Kittelberger began this relentless unwarranted attack on Plaintiff based on her color, race, age, and sex/gender.

250.     During the 2015-2016 school year, Plaintiff informed the RCSD Defendant and Defendant ASAR of Root's harassing and discriminatory attacks against her.

251.     On May 1, 2016, Plaintiff sent Christopher Suriano ("Suriano"), then Executive Director of Specialized Services an email and copied it to Root regarding Root's false, harassing, and discriminatory attacks against her.

[35]

252.     Root was furious and displeased with the Plaintiff for contacting Suriano.

253.     Suriano tried to protect the Plaintiff from Root and the Defendant RCSD.

254.     Suriano left the district on or about September 20, 2016.

255.     Suriano told the Plaintiff that HCI would take over her concerns regarding Root.

256.     Defendant RCSD discriminated against Plaintiff for complaining of and opposing Root's harassing and discriminatory actions against her, on July 27, 2016 Root rated Plaintiff as "developing" on her final performance evaluation to get back at her and to protect Kittelberger, a younger female white, who did not complete all her work.

257.     Plaintiff complained during the 2016-2017 school year that her final performance evaluation was not correct and that it was a ruse. Plaintiff would not find out until 2021 that Root first rated her as highly effective and not developing.

258.     Root, Defendant RCSD and Defendant ASAR were aware and in full knowledge that a 56 final performance evaluation rating score was highly effective and not developing.

259.     Root, Defendants RCSD and ASAR worked together and agreed to cover Root, RCSD and ASAR.

260.     Root and the defendants deviated from the policies, practices, customs, and procedures of the district and union which required that to give any administrator an ineffective or developing rating, the supervisor would need to inform that administrator before April 1, of a corresponding year.

261.     Root did not inform Plaintiff of a developing rating by April 1, 2016.

262.     Plaintiff did not find out until July 27, 2016 during the final performance evaluation meeting with Root that she had a developing final performance evaluation rating.

263.     ASAR did not attend the meeting even though Plaintiff made request that they do

[36]

so.

264.    Plaintiff spoke with Rowe regarding the situation and her concerns regarding Root. Rowe told Plaintiff to go along to see what happens and then let him know afterwards.

265.    As directed by Rowe, after the meeting with Root, Plaintiff informed Defendant ASAR regarding what transpired during the meeting, but that did not resolve or remedy anything.

266.    The meeting with Root was horrible. Root appeared to try to provoke the Plaintiff.

267.    Root got out of her chair from behind her desk, came up to where the Plaintiff was sitting and stood within close proximity making gestures which suggested anger and intimidation towards Plaintiff.

268.    During the 2015-2016 school year, Plaintiff informed Root and Capezzuto regarding Kariann Kittelberger's ("Kittelberger") ongoing hostility and discriminatory attacks against her.

269.    By December 2016, Defendant RCSD and Defendant ASAR knew of the harassing and discriminatory unwelcomed, unwanted, and unwarranted attacks by Root and Kittelberger against the Plaintiff.

270.    Instead of bringing speedy remedy to the situation, Defendant RCSD and Defendant ASAR extended the harassing and discriminatory actions into the 2016-2017 school year without any resolution.

271.    After Plaintiff first complained of and opposed Defendant RCSD's unlawful employment practices and discrimination, she was subjected to an unfavorable performance evaluation in July 2016.

272.    After Plaintiff filed her first internal complaint of discrimination on or about

ASA-258

December 26, 2016, she was subjected to a coalition charged hostile work environment and was subjected to a pattern and practice of unlawful discrimination and retaliation against her up to including her termination on or about June 30, 2017.

273.     After Plaintiff filed her first internal complaint of discrimination in December 2016, on or about February 6, 2017, unbeknownst to Plaintiff, Defendant RCSD changed her name on its Staffing Form/Recommendation for Employment to Bernice Malcom and placed her address as her social security number.

274.     Unbeknownst to Plaintiff, Defendant RCSD placed Plaintiff in the job title of a special education teacher and changed her status as a rehire with placement under the RTA contract in the position of special education teacher.

275.     Defendants RCSD demoted Plaintiff.

276.     On February 27, 2017, Plaintiff was involuntary transferred from North Star and All City High School and demoted in her supervisory roles and responsibilities.

277.     After Plaintiff filed her second internal complaint of discrimination on or about March 3, 2017, she was retaliated against and subjected to a hostile work environment, disparate treatment and continued discrimination and retaliation.

278.     Plaintiff filed a charge of discrimination with the Division with dual filing with the EEOC on March 16, 2017.

279.     After the filing of Plaintiff's March 16, 2017 discrimination charge, on March 22, 2017, Deane-Williams, and Defendant RCSD targeted the probationary CASE administrator employee group in which Plaintiff was a probationary CASE administrator for layoff.

280.     After Plaintiff filed a charge of discrimination with the Division on or about March 16, 2017, she was terminated on June 30, 2017.

ASA-259

281.    Plaintiff was terminated for the pre-textual reason of the 2017-2018 budget.

282.    Defendant RCSD gave plaintiff another pre-textual reason of restructuring of special education.

283.    Defendant RCSD gave plaintiff another pre-textual reason of her being the least senior in her tenured area of CASE.

284.    The pretext was evident, and the reason (s) proffered by Defendant RCSD is pretextual as a matter of law.

285.    Plaintiff was the only impacted probationary CASE administrator that was terminated on June 30, 2017.

286.    Plaintiff was the oldest impacted probationary CASE administrator that was terminated on June 30, 2017.

287.    Plaintiff was the only impacted probationary CASE administrator who lost her job on June 30, 2017.

288.    Plaintiff was the only impacted probationary CASE administrator placed on the Preferred Eligibility List. ("PEL").

289.    All other impacted probationary CASE administrators either remained in employment as probationary CASE administrators or were freely transferred without application to higher-level administrative positions, including Assistant Principals or Directors within Defendant RCSD  public educational organization or resigned.

290.    None of the tenured CASE administrators were impacted by the 2017-2018 budgetary layoff.

291.    Thirty-eight (38) CASE administrators were not impacted by the 2017-2018 budgetary layoff.

ASA-260

292.     Twenty-two (22) probationary CASE administrators were not impacted by the 2017-2018 budgetary layoff.

293.     Plaintiff was not number thirty (30) of the probationary CASE administrators impacted by the 2017-2018 budgetary layoff.

294.     Plaintiff was not number eleven (11) of the probationary CASE administrators impacted by the 2017-2018 budgetary layoff.

295.     But for Defendant RCSD's deviation from its policies and procedures and past practices, including following of the same process used to removed impacted probationary CASE administrators' name from the list, Plaintiff would not have been impacted by the 2017-2018 layoff.

296.     After Plaintiff filed a charge of discrimination complaint with the Division with dual filing with the EEOC on or about April 25, 2017, the Defendant RCSD continued its pattern and practice of discrimination and retaliation against Plaintiff up to including refusing and failure to conduct a final performance evaluation for the 2016-2017 school year.

297.     In retaliation, Defendant RCSD stop paying Plaintiff's union dues.

298.     After Plaintiff filed a charge of discrimination complaint with the Division with dual filing with the EEOC on or about August 24, 2017, the Defendant RCSD continued its pattern and practice of discrimination and retaliation against the Plaintiff up to including after termination of her employment by intentionally moving Plaintiff further down the PEL and by making her number thirty (30) of thirty-eight (38) CASE administrators for the purpose of recall.

299.     Between July 1, 2017 and November 19, 2017, Defendant RCSD did not recall Plaintiff to any vacancies in which she was qualified and certificated.

300.     Between July 1, 2017 and November 19, 2017, Defendant RCSD did not freely

[40]


ASA-261

analysis

transfer, move, promote, and/or recall Plaintiff to any positions in which she was qualified and certificated for.

301.     Defendant RCSD wanted Plaintiff to make application for a position, but did not require the same of other similarly situated employees and/or employees.

302.     Defendant RCSD did not require that other impacted probationary CASE administrators or employees make application to positions in which they were freely transferred and/or promoted to.

303.     Defendant RCSD did not promote Plaintiff.

304.     Defendant RCSD transferred, moved, and/or promoted other employees to positions in which they were neither qualified and/or neither certificated for.

305.     After Plaintiff filed her charges of discrimination with the Division with dual filing with the EEOC, Defendant RCSD continued in its discrimination and retaliation against the Plaintiff up to providing refusing and failing to pay Plaintiff's retirement loan at the same time that it paid other similarly situated employees' retirement loan.

306.     Defendant RCSD did not pay Plaintiff's retirement loan even though the school district withheld the money from her salary.

307.     Defendant RCSD informed the New York State Teachers' Retirement System that Plaintiff changed her name.

308.     The New York State Teachers' Retirement System informed Plaintiff by letter dated April 12, 2017, that Defendant RCSD had informed the System that Plaintiff has changed her name.

309.     After Plaintiff filed her discrimination complaint with the Court, the Defendant

[41]

ASA-262

RCSD continued in its pattern and practice of discrimination and retaliation against her up to including, but not limited to her wrongful termination on or about April 23, 2018.

310.   After Plaintiff filed her discrimination with the Court, up to including post-employment retaliation, Defendant RCSD in retaliation caused Plaintiff service credits, benefits, and salary toward her pension, up to including the 2017-2018 school year.

311.   Plaintiff did not at any time apply for and/or make application for retirement.

312.   Plaintiff is an active member of the New York State Teachers' Retirement System and has been from September 1997 to present.

313.   One or more of the acts subsequently complained of after Plaintiff filed her discrimination complaints with the Court, Defendant RCSD continued in its pattern and practice of discrimination and retaliation against her up to including providing false information to the New York State Teachers' Retirement System during the 2016-2017 and 2017-2018 school years. See, Monroe County Clerk's Index No.: 2019-4349.

314.   Defendants deprived Plaintiff of her constitutional rights while acting under color of law.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:**
**LEAVE TO AMEND:**
**CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII")**
**42 U.S.C. §2000E, ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT**
**RACE DISCRIMINATION**

315.   Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.



316.     Defendant RCSD discriminated and retaliated against Plaintiff based on her race (Black/African American) and color (Black/African American) in violation of her rights to make an enforce employment contracts that are equal to contracts that Defendant RCSD grants to white employees, in violation of 42 U.S.C. §1981.

317.     Defendant have engaged in intentional racial discrimination in the terms, conditions and privileges of the Plaintiff's employment, including, but mot limited to, Plaintiff's compensation, opportunity for promotion, opportunity for obtaining a lateral position, termination, retirement benefits and hiring.

318.     Defendant conduct, as described herein was malicious and oppressive, and done with conscious disregard of Plaintiff's rights. The acts were performed with the knowledge of an employer's economic power over its employees.

319.     Defendants ratified the unlawful conduct of its employees in this action. Consequently, Plaintiff is entitled to exemplary damages from all Defendants.

320.     The employment practices of defendant in enforcing its policies in a disparate fashion, as described herein are not based upon a reasonable factor other than race and are in fact the "but for" reason for the actions taken herein.

321.     Defendant RCSD terminated Plaintiff on account of her race (Black/African American), color (Black/African American), age (58 years old when she filed her first charge of discrimination), and sex /gender (female),  subjecting her to working in a work environment that was hostile to her on the basis of her race, color, sex/gender, and/or age, and has retaliated against her including up to post-employment retaliation for complaining of discrimination and opposing discrimination in violation of Title VII and the New York State Human Rights Law.

322.     As a direct and proximate result of Defendant' willful, knowing, and intentional

[43]

ASA-264

discrimination against her, Plaintiff suffered and continue to suffer a loss of earnings and other

employment benefits and job opportunities. Plaintiff is thereby entitled to general and

compensatory damages in amounts to be proven at trial.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:
LEAVE TO AMEND:
CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")
29 U.S.C. §621 AGAINST ROCHESTER CITY SCHOOL DISTRICT
AGE DISCRIMINATION**

323.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if fully

set forth herein.

324.     Defendant RCSD discriminated against Plaintiff because of her age in willful

violation of the ADEA by subjecting her to materially adverse employment conditions as a result

of her age.

325.     The employment practices of Defendant RCSD described herein discriminates

against older employees such as the Plaintiff and favors younger and/or white employees. The

employment practices so described are not based upon a reasonable factor other tan age and in

fact the "but-for" reason for the actions taken herein.

326.     Defendant RCSD has purposely engaged in age discriminatory practices with the

full knowledge that in doing so it was discriminating against its older employees, in particular,

the Plaintiff, without regard for the rights of those employees under the ADEA.

327.     Defendant RCSD terminated Plaintiff on account of her age, and thereby violated

her rights to equal employment opportunity as protected by the ADEA.

[44]

ASA-265

328.    As a direct and proximate result of Defendant' willful, knowing, and intentional

discrimination against her, Plaintiff is thereby entitled to liquidated damages and attorney fees

under the ADEA even as a *pro se* litigant who represents self.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:**
**LEAVE TO AMEND:**
**CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW,**
**EXECUTIVE LAW §290 ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT**
<u>**RACE DISCRIMINATION**</u>

329.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if fully

set forth herein.

330.    Defendant RCSD through its highest ranking agent, Superintendent Deane-

Williams, engaged in a pattern of unremedied discrimination on the basis of Plaintiff's race

(Black/African American), in violation of New York State Human Rights Law, Executive

Sections 290, *et seq.*

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:**
**LEAVE TO AMEND:**
**CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII")**
**42 U.S.C. §2000E, ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT**
<u>**RETALIATION**</u>

331.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if fully

set forth herein.

ASA-266

332.    Plaintiff engaged in the good faith protected activity of opposing discrimination. Defendant RCSD had knowledge of Plaintiff protected activity.

333.    Defendant RCSD's conduct constitutes an adverse employment action which would dissuade a reasonable person in the Plaintiff's position from making a complaint of discrimination.

334.    The adverse employment actions were caused by Plaintiff's protected activity.

335.    The stated reason for Defendant RCSD's conduct were not the true reasons but instead, were pretext to hide its retaliatory animus.

336.    As a direct and proximate cause of Defendant RCSD's unlawful retaliation, Plaintiff has sustained and will continued to sustain, from monetary damages and other compensable damages.

**AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:**
**LEAVE TO AMEND:**
**CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")**
**29 U.S.C. §621, AGAINST THE ROCHESTER CITY SCHOOL DISTRICT**
**RETALIATION**

337.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

338.    Defendant Rochester City School District discriminated and retaliated against Plaintiff because of her age in willful violation of the ADEA by subjecting Plaintiff to materially adverse employment conditions as a result of her age.

339.    Defendant Rochester City School District retaliated against Plaintiff because she

[46]

ASA-267

previously opposed discrimination by the Defendant in during the 2015-2016, and 2016-2017, school years. Defendant Rochester City School District retaliated against Plaintiff by wrongfully terminating Plaintiff's employment, under the guise of a "layoff" in June 2017.

340. Defendant Rochester City School District retaliated against Plaintiff because she previously opposed discrimination by the Defendant in during the 2016-2017 and 2017-2018 school years. Defendant Rochester City School District retaliated against Plaintiff by wrongfully terminating Plaintiff's employment, under the guise of "unsatisfactory performance" in April 2018.

341. Defendants deprived Plaintiff of her constitutional rights while acting under color of law.

342. As a direct and proximate result of Defendants' unlawful and willful age discrimination and retaliation against Plaintiff, the Defendants' disparate treatment of Plaintiff because of her age, Plaintiff has sustained damages in an amount to be determined at trail, including, but not limited to, lost salary and wages, fringe benefits, and other forms of compensation, as well as loss of career opportunity, advancement, lost retirement benefits, and retirement seniority, and other respects, all in amounts yet to be determined.

### AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:
### LEAVE TO AMEND:
### CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW,
### EXECUTIVE LAW §290 ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT
### RETALIATION

343. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in

[47]

ASA-268

numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

344.    Defendant RCSD engaged in a pattern of illegal retaliation in violation of New York State Human Rights Law ("NYSHRL") Executive Sections 290, *et seq*.

345.    Plaintiff engaged in a protected activity when she in good faith informed her employer that she was subject to discrimination based on her race, color, age and sex/gender by its employees, officers, supervisors, and/or agents, but not limited to.

346.    Defendants willfully, knowingly and intentionally discriminated against Plaintiff and terminated her employment in retaliation to Plaintiff's continued and expressed concerns about being unfairly given a developing rating on her July 2016 final performance evaluation.

347.    Defendant conduct, as described herein was malicious and oppressive, and done with conscious disregard of Plaintiff's rights. The acts were performed with the knowledge of an employer's economic power over its employees

348.    As a direct and proximate result of Defendant' willful, knowing, and intentional discrimination against her, Plaintiff suffered and continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020: LEAVE TO AMEND: CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") 42 U.S.C. §2000E, ET SEQ., AGAINST ASAR
### RACE DISCRIMINATION

349.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in

[48]



ASA -269

numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

350.     Defendant ASAR's refusal to provide representation to Plaintiff as a union member was because of her race (Black/African American).

351.     Defendant ASAR conduct was intentional discrimination.

352.     Defendant ASAR failed and refused to provide Plaintiff a fair duty of representation because of her race (Black/African American).

353.     Plaintiff was an administrator and Black/African American female unit member of ASAR.

354.     Defendant ASAR discriminated against Plaintiff because of her race (Black/African American)

355.     Plaintiff made numerous requests that Defendant ASAR file a grievance and/or grievances on her behalf and/or on behalf of the association.

356.     Defendant ASAR refused and failed to file a grievance on Plaintiff's behalf and/or on the behalf of the association in the same manner that it did and/or would have done for non-minority members.

357.     Defendant ASAR showed disparate and more favorable treatment to similarly situated unit members that were not in the protected group, including, but not limited to Jason George, male, white, age 35; Rosa Bellone, female, white, age 37, Yajaira Walker (now Yajaira Nguyen), female, white, age 30.

358.     Plaintiff made grievance (s) as required under her employment contract and exhausted her administrative remedies.

359.     Defendants deprived Plaintiff of her constitutional rights while acting under color

[49]

ASA-270

of law and discriminated against her with malice or reckless indifference to her federally

protected rights.

### AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020: LEAVE TO AMEND: CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") 29 U.S.C. §621  AGAINST ASAR AGE DISCRIMINATION

360.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if fully

set forth herein.

361.     Defendant ASAR discriminated against Plaintiff because of her age.

362.     Defendant ASAR allowed the Defendant RCSD to discriminate against Plaintiff

because of her age.

363.     Defendant ASAR allowed Defendant RCSD to terminate Plaintiff on account of

her race and age.

### AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020: LEAVE TO AMEND: CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §290 ET SEQ., AGAINST ASAR RACE DISCRIMINATION

364.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if fully

set forth herein.

365.    Defendant ASAR directly participated in the discrimination giving rise to the

discrimination claims arising from the Defendant Rochester City School District's discrimination

and retaliation against Plaintiff.

366.    Defendant ASAR conduct was intentional discrimination.

## AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020:
## LEAVE TO AMEND:
## CLAIMS UNDER U.S.C. §1983 AGAINST ALL DEFENDANTS
## EQUAL PROTECTION

367.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if fully

set forth herein.

368.    Defendant RCSD deprived Plaintiff of her constitutional rights while acting under

color of law.

369.    Defendant ASAR deprived Plaintiff of her constitutional rights while acting under

color of law.

370.    The challenged acts complained of were performed pursuant to Defendant

RCSD's policy or custom.

371.    Defendant RCSD had a policy or custom of discriminating against members of a

protected class in violation of Sections 1981 and 1983.

372.    Defendants were personally involved in the challenged acts complained of.

**Defendant Deane-Williams**

373.    In February 2107, Capezzuto told the Plaintiff that "The Superintendent was

[51]



playing a game". Capezzuto also told Plaintiff that a high-ranking official gave Root directives to change her final performance evaluation.

374.    Upon information and belief, Plaintiff believes that Defendant Deane-Williams was that higher ranking official who empowered Root and gave order to Root to change Plaintiff's July 2016 final performance evaluation.

375.    Defendant Deane-Williams knew that Root had rated Plaintiff as highly effective.

376.    Defendant Deane-Williams knew that the Defendant RCSD had changed the Plaintiff's name in February 2017.

377.    Defendant Deane-Williams knew that Plaintiff was not affected as a probationary CASE administrator regarding the 2017-2018 budgetary process.

378.    Defendant Deane-Williams, Defendant RCSD and Defendant ASAR targeted the probationary CASE employee group in which the Plaintiff was an employee and did not target any other employee group whether tenured and/or probationary for layoff.

379.    Defendant Deane-Williams, Defendant RCSD and Defendant ASAR entered a memorandum of understanding to protect the tenured CASEs in tenured area, Bracket IV. Defendant Deane-Williams, Defendant RCSD and Defendant ASAR, during that agreement continue to pay tenured CASE administrators although tenured area Bracket IV employees were paid under tenured area Bracket III (Assistant Principals) with all the benefits, bells and whistles and paid the probationary CASEs under the teacher contract.

380.    Defendant Deane-Williams, Simpson, Pauly, Kennedy, Cliby, Rowe, Defendant RCSD and Defendant ASAR with their decision making powers caused a negative and adverse impact on Plaintiff's employment and contributed to her termination.

381.    Defendants allowed and permitted probationary CASEs to continue to work

[52]

ASA-273

during Summer Learning (July 1, 2017 through August 2017) as probationary CASEs, including Bonnie Ellis ("Ellis"), female white age 45, Samantha Brody ("Brody"), female white age 45, Rosa Bellone ("Bellone"), female white, age 37, Melinda Hyde ("Hyde"), Lakisha Wilson, female black age 35, Davina McLean-Randal, female black, age 36, Kristal Shambo (now "Haines"), female white, age 37, Yajaira Nguyen ("Nguyen"), female white, age 30, and Jason George ("George"), male white, age 35, Marissa Nicholson ("Nicholson"), female white, age 40, but not limited to.

382.    Defendant Deane-Williams knew what she was doing was wrong and should have known that what she was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

383.    Defendant Deane-Williams was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie that she helped to create, promote and advance based on Plaintiff's race and age and based on her own personal and self-serving interest as Superintendent of Schools.

384.    Defendant RCSD empowered and gave Root the resource and tools that she needed to unlawfully change Plaintiff's final performance evaluation from highly effective to developing and forced the Plaintiff into a rebuttal process that she did not have to be subjected to and in turn also created unconscionable and intolerable hostile work environment in the process.

385.    Defendant Deane-Williams added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on Plaintiff's color, race and age.

386.    Defendant Deane-Williams was instrumental in the decision making process to

[53]



place Kittelberger at North Star.

387.    **Defendant Simpson** in her official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff. Simpson was personally involved based on her own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

388.    Defendant Simpson as the Chief of Specialized Services and former Executive Director of Specialized Services did not discharge her duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Simpson's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

389.    Defendant Simpson empowered and engaged in the creation of a hostile work environment during the 2016-2017 school years.

390.    Defendant Simpson knew what she was doing was wrong and should have known that what she was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

391.    The RCSD Defendant rewarded Simpson by promoting her from Interim Executive Director of Specialized Services to Chief of Specialized Services.

392.    On February 27, 2017, Defendant Simpson told Plaintiff that she was removed as North Star's CASE because she did not do well there, and she was not successful.

393.    Defendant Simpson through her decision making powers caused a negative and adverse impact on Plaintiff's employment and contributed to her termination

394.    Defendant Simpson and Defendant RCSD gave numerous reasons why Plaintiff

ASA-275

was removed from North Star, (1) she was not successful and did not do well (Simpson); (2) "the new head of Special Education, Sandra Simpson, determined Ms. Malcolm's services were best utilized in another area"(Attorney Crane); (3) "Sandy Simpson has informed me that due to the recent loss of a special education coordinator at School No. 46 and the urgent need for assistance with the 4-go-5 evaluations at Central Office, that you were transferred from North Star to assist in these capacities" (Kennedy"); and (4) as referenced herein regarding Simpson email to the Principal of School No. 46.

395.　Ellis was the CASE administrator at No. 46 School. Plaintiff did not work with 4-go-5 evaluations. Root replaced her and chose Stephanie Thomas, tenured CASE, younger female white, to work with 4-go-5 evaluations.

396.　Defendant RCSD also gave numerous reasons why Plaintiff was laid off or terminated, (1) due to budget reductions for the 2017-2018 school year (Kennedy); (2) due to special education reorganization (Kennedy); (3) she was the least senior in tenure area, Bracket IV (Kennedy), and (4) unsatisfactory job performance (in school district submission during November 2018 Division Hearing).

397.　Defendant Simpson added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on Plaintiff's color, race and age.

398.　Defendant Simpson was instrumental in the decision making process to place Kittelberger at North Star.

399.　**Defendant Pauly** in her official capacity intentionally and deliberately engaged in

and participated in the violation of the statutory and constitutional rights of the Plaintiff. Pauly was personally involved based on her own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

400.     Defendant Pauly as Executive Director of Specialized Services did not discharge her duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Pauly's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

401.     Defendant Pauly empowered and engaged in the creation of a hostile work environment during the 2016-2017 school years.

402.     Defendant Pauly in her racial discrimination and personal attacks against Plaintiff became officially and personally involved by and through her decision making to assist in the termination of Plaintiff employment.

403.     In May 2017, Pauly sent Plaintiff an email for a staff meeting. When Plaintiff arrived at the meeting it was not a staff meeting, but rather a disciplinary meeting. Sanson joined Pauly.

404.     When Plaintiff asked that her union be present, Pauly refused and continued to make false allegations against the Plaintiff and threatened to put a counseling memorandum in her file.

405.     Defendant Pauly did not waste anytime joining in and adding to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on Plaintiff's color, race, and age.

406.     **Defendant Root** in her official capacity intentionally and deliberately engaged in

and participated in the violation of the statutory and constitutional rights of the Plaintiff. Root was personally involved based on her own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

407.    Defendant Root as Zone Director of Specialized Services did not discharge her duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Root's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

408.    Defendant Root empowered and engaged in the creation of a hostile work environment during the 2015-2016 and 2016-2017 school years.

409.    Defendant Root in her racial discrimination and personal attacks against Plaintiff became officially and personally involved by and through her decision making to assist in the termination of Plaintiff employment.

410.    In July 2016, Defendant Root deliberately changed Plaintiff's final performance evaluation from highly effective to developing.

411.    In May 2017, Defendant Root did not choose any person of color to serve on the 2017-2018 interviewing committee, including Plaintiff even though Plaintiff informed Root in an April 30, 2017 email that she was interested. Root chose all female whites or all male whites to serve on the committee.

412.    Defendant Root added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on Plaintiff's color, race, and age.

413.    Defendant Root was instrumental in the decision making process to place Kittelberger at North Star.

[57]



414.    **Defendant Dr. Cliby** in his official capacity as a salaried employee for Defendant RCSD and President of ASAR, Dr. Cliby failed to provide a fair duty of representation to the Plaintiff.

415.    Defendant Dr. Cliby was a salaried employee of the Rochester City School District, and as such is a state actor.

416.    Defendant Dr. Cliby was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

417.    Defendant Dr. Cliby knew full well that the Defendant RCSD was using its annual fiscal budgetary process to unlawfully to terminate the Plaintiff employment and that the defendants had entered into a memorandum of understanding to protect the tenured CASEs.

418.    Defendant Dr. Cliby knew full well that the RCSD Defendants and Root had changed Plaintiff's final performance evaluation from highly effective to developing. He looked the other way and went along with it.

419.    Defendant Dr. Cliby knew full well that Plaintiff had previously worked for the Defendant RCSD and that she had RTA experience and should not have been place in Wave III, i.e., No previous RTA experience.

420.    Defendant Dr. Cliby engaged in and participated in the Defendant RCSD's creation of a hostile work environment.

421.    Defendant ASAR knew full well knew that on February 6, 2017 the school district

[58]

ASA-279

changed Plaintiff's name to Bernice Malcom and placed her address as her social security number without her knowledge and without her consent and changed her position to that of a special education teacher under the RTA contract.

422. On March 22, 2017, Plaintiff learned through the Democrat and Chronicle, a public newspaper that the Defendant RCSD was eliminating the tenured areas, Bracket IV probationary CASE positions and that no tenured CASE within the Bracket would be affected.

423. March 22, 2017, Defendant ASAR sent out an email with the news explaining the change of events.

424. Defendant RCSD placed the affected probationary CASEs in Wave I, RTA Experience to ASAR Experience with no break in service; Wave II, Previous RTA Experience and Wave III, No previous RTA Experience.

425. Plaintiff was placed in Wave III, even though she had two (2) years and several months of previous RTA experience with the Defendant RCSD and had also been granted tenure in another New York school, i.e., Honeoye Falls-Lima Central School District on September 1, 2004.

426. Both Defendant RCSD and Defendant ASAR was aware and in full knowledge of the same, including Deane-Williams, Kennedy, Simpson, Dr. Cliby, Rowe, and the Legal Department, but not limited to.

427. Defendants knew with the previous RTA experience, of two years and counting as a special education teacher with the school district, the granting of tenure by HF-L after successfully completing a three-year probationary period as a special education teacher, and the two years of experience as a CASE administrator, Plaintiff was tenured.

428. Defendant RCSD used one standard for Plaintiff and another probationary

[59]

ASA-280

CASEs, including George, male white, age 35, Yajaira Walker ( now "Nyugen"), female white, age 30, Mark Ferraro ("Ferraro"), male white, age 41, Kathleen Foster ("Foster"), female black, age 44, Diana Radley ("Radley"), female white , age 42, but not limited to were all given their tenure status, but the Plaintiff was not even though she too was tenured.

429.     Defendant RCSD terminated the Plaintiff instead of providing the same equal access, opportunities, and standards that it provided to other probationary CASEs that they favored and showed preferential treatment to, including within and/or outside of the protected class. Plaintiff was the oldest. Plaintiff was 58 years of age at the time.

430.     Plaintiff met with Defendant ASAR numerous times throughout the 2015-2016, 2016-2017 school years regarding Defendant RCSD's breach of the employment contract and breach of the CBA.

431.     On April 24, 2017, at 6:24p.m., Plaintiff emailed Dr. Cliby, Rowe and Wagner, subject: Breach of Contract and the Collective Bargaining Agreement stating, "Hi Tim, Please file a grievance on my behalf in regard to the District's breach of my contract and the collective bargaining agreement. Please see me a copy of the grievance once filed".

432.     The entire New York State Division of Human Rights Hearings held on November 14, 2018 and November 15, 2018 respectively speaks to the egregious, severe and pervasive conduct that the Defendant RCSD, its officers, employees, supervisors, directors, administrators, managers, and agents, including Defendants Deane-Williams, Simpson, Pauly, Root, Kittelberger, RCSD's Unknown female Attorney, Kennedy, RCSD's Legal Department, and other district officials subjected the Plaintiff to and how the defendants with discriminatory intent and motive targeted and harassed the Plaintiff by creating a coalition charged hostile work

ASA -281

environment and how Defendant ASAR looked the other way, engaged in and participated in the Defendant RCSD racially discriminatory and retaliatory actions against the Plaintiff.

433.    Defendant RCSD and Defendant ASAR knew full well there were a significant amount vacancies for the 2017-2018 school year in which Plaintiff was certificated and qualified for, but did not call Plaintiff to any of those positions, but instead moved and transferred employees which were not affected to those position which amounted to at least twenty-eight (28) vacant positions, including to probationary CASE, George as Director of Alternative Special Education Programs and Hart to Assistant Principal, but not limited to.

434.    Defendant RCSD and Defendant ASAR knew full well that Hart was the less senior probationary CASE.

435.    Defendant Dr. Cliby in his official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff.

436.    Defendant Dr. Cliby was personally involved based on his own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

437.    Defendant Dr. Cliby as ASAR President did not discharge his duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Dr. Cliby's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

438.    Defendant Dr. Cliby empowered and engaged in the creation of a hostile work environment during the 2015-2016 and 2016-2017 school years.

439.    Defendant Dr. Cliby knew what he was doing was wrong and should have known

ASA-282

that what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

440.     Defendant Dr. Cliby added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

441.     **Defendant Rowe** in his official capacity as a salaried employee for Defendant RCSD and First Vice President of ASAR. Defendant Rowe failed to provide a fair duty of representation to the Plaintiff.

442.     Defendant Rowe was a salaried employee of the Rochester City School District, and as such is a state actor.

443.     Defendant Rowe was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

444.     Defendant Rowe knew full well that Plaintiff had previously worked for the Defendant RCSD and that she had RTA experience and should not have been place in Wave III, i.e., No previous RTA experience.

445.     Defendant Rowe engaged in and participated in the Defendant RCSD's creation of a hostile work environment.

446.     Defendant ASAR knew full well knew that on February 6, 2017 the school district changed Plaintiff's name to Bernice Malcom and placed her address as her social security number without her knowledge and without her consent and changed her position to that of a special education teacher under the RTA contract.

ASA-283

447.     On April 24, 2017, at 6:24p.m., Plaintiff emailed Dr. Cliby, Rowe and Wagner, subject: Breach of Contract and the Collective Bargaining Agreement stating, "Hi Tim, Please file a grievance on my behalf in regard to the District's breach of my contract and the collective bargaining agreement. Please see me a copy of the grievance once filed".

448.     Defendant Rowe knew what he was doing was wrong and should have known that what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

449.     Defendant Rowe was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

450.     Defendant Rowe in his official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff.

451.     Defendant Rowe was personally involved based on his own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

452.     Defendant Rowe as ASAR First Vice President did not discharge his duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Rowe's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

453.     Defendant Rowe empowered and engaged in the creation of a hostile work environment during the 2016-2017 school year.

454.     Defendant Rowe knew what he was doing was wrong and should have known that

[63]

ASA-284

what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

455.     Defendant Rowe added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

456.     By the a above acts, with discriminatory animus and a pretext to discrimination, including the decision to maliciously and intentionally change the Plaintiff's final performance evaluation over-all rating to make it appear as developing instead of highly effective, defendants have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. Section 2000e et seq., by discriminating against Plaintiff based on her color, race, and age, including disparate treatment.

## AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020: LEAVE TO AMEND: CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §290 ET SEQ., AGAINST ALL DEFENDANTS EQUAL PROTECTION

457.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein in paragraphs numbered 367-456 regarding each and all defendants, including Deane-Williams, Simpson, Pauly, Root, Dr. Cliby and Rowe.

458.     Defendants deprived Plaintiff of her constitutional rights while acting under color of law.

## AS AND FOR THE COURT'S DECISION AND ORDER DATED DECEMBER 30, 2020: LEAVE TO AMEND:

[64]

ASA-285

## PERVIOUSLY/SUBSEQUENT TO JULY 22, 2020 (I Through VII)

459. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

460. Plaintiff should be allowed to amend the caption to add various defendants who engaged in and individually and personally participated in the discrimination, including up to Kari Ann Kittelberger, Kelly Sanson, Harry Kennedy, Sandra Jordan and the Unknown human resource (i.e., HCI) attorney that assisted Root in completing a false internal complaint od discrimination against her.

461. The Defendants conduct has been a continued course of discriminatory conduct, including up to one or more of the acts complained of relates back to the Plaintiff's internal complaints of discrimination, charges of discrimination filed by Plaintiff before the Division and EEOC, claims alleged in complaints before this court.

462. Defendants' conduct represents a continuing policy of discrimination.

463. Defendants engaged in and participated in an ongoing and continuous pattern and practice of unlawful discriminatory and retaliatory employment practices relating to the terms, conditions, and privileges of her employment because of her race, color, age, and sex/gender, and that one or more of those discriminatory and retaliatory actions relates back to Plaintiff's original complaint.

464. Defendants engaged in and participated in an ongoing and continuous pattern and

[65]

ASA-286

practice of unlawful discriminatory and retaliatory employment practices relating to the terms, conditions, and privileges of her employment because of her race, color, age, and sex/gender, and that her original pleading gave the defendants full and fair notice of the nature of the claims and that the defendants were aware and in knowledge of the nature of any additional claims, including, but not limited to those as subsequent to July 22, 2020.

465.     Plaintiff claims that in retaliation to her engaging in a protective activity and/or complaining of and opposing discrimination that Defendant RCSD retaliated against her post-employment based on her race and age by causing her loss of service credits, pension, and wages.

## I.     CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLEVII") 42 U.S.C. §2000E, ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT
### RACE DISCRIMINATION

466.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

467.     Defendant RCSD discriminated and retaliated against Plaintiff based on her race (Black/African American) and color (Black/African American) in violation of her rights to make an enforce employment contracts that are equal to contracts that Defendant RCSD grants to white employees, in violation of 42 U.S.C. §1981.

## II.     CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") 29 U.S.C. §621 AGAINST ROCHESTER CITY SCHOOL DISTRICT
### AGE DISCRIMINATION

[66]

ASA-287

468. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

469. Defendant RCSD discriminated against Plaintiff because of her age in willful violation of the ADEA by subjecting her to materially adverse employment conditions as a result of her age.

### III. CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §290 ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT RACE DISCRIMINATION

470. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

471. Defendant RCSD through its highest ranking agent, Superintendent Deane-Williams, engaged in a pattern of unremedied discrimination on the basis of Plaintiff's race (Black/African American), in violation of New York State Human Rights Law, Executive Sections 290, *et seq.*

472. After the filing of the Administrative complaints and after the filing of pleadings in this Court, Defendant RCSD terminated Plaintiff on account of her age in April 2018.

### IV. CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") 42 U.S.C. §2000E, ET SEQ., AGAINST

[67]



ASA - 288

## ROCHESTER CITY SCHOOL DISTRICT
## <u>RETALIATION</u>

473.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered

above in this her second combined verified amended complaint with the same force and effect as

if fully set forth herein and incorporates by reference each and every allegation contained in

numbered paragraphs above in this amended complaint with the same force and effect as if fully

set forth herein.

474.     Defendant RCSD's actions relates back to one or more of the acts complained of

in Plaintiff's charges of discrimination complaint before the Division and EEOC dated March 16,

2017, March 30, 2017, April 25, 2017, and August 25, 2017, and after Plaintiff filed her

discrimination complaints with the Court in federal actions 17-cv-6873, 17-cv-6878, 18-cv-6450

and 20-cv-6537.

475.     After Plaintiff filed her discrimination complaints and after Plaintiff filed her

discrimination complaints with the Court, Defendant RCSD continued in its pattern and practice

of discrimination against Plaintiff up to including retaliating against her.

476.     Defendant RCSD's conduct relates back to one or more of the acts complained of

in Plaintiff's charges of discrimination complaint before the Division and EEOC dated March 16,

2017, March 30, 2017, April 25, 2017, and August 25, 2017, and after Plaintiff filed her

discrimination complaints with the Court in federal actions 17-cv-6873, 17-cv-6878, 18-cv-6450

and 20-cv-6537.

477.     Defendant RCSD retaliated against Plaintiff for filing discrimination complaints

against the school district.

478.     After the filing of Plaintiff's Administrative charges and after Plaintiff's

[68]



commencement of pleadings against the Defendant Rochester City School District in this Court, the Defendant Rochester City School District continued to engage in a continued pattern and practice of discrimination and retaliation including up to providing false information to the NYSTRS that she was placed on paid administrative leave on December 8, 2017, Defendant RCSD paid her from December 8, 2017 through April 23, 2018, she did not return to work after her paid leave was over and it was no need for her to return because the school district looked at the paid leave as separation from employment (excerpts from the Affirmation of Attorney Rebecca Kannan, Associate Deputy Counsel for the New York State Teachers' Retirement System dated August 19, 2020).

## V. CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") 29 U.S.C. §621, AGAINST ROCHESTER CITY SCHOOL DISTRICT
### RETALIATION

479.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

480.     After the filing of her administrative complaints of discrimination and after the filings of pleadings in this Court, in retaliation, Defendant RCSD continued in a pattern and practice of age discrimination against the Plaintiff.

## VI. CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §290 ET SEQ., AGAINST ROCHESTER CITY SCHOOL DISTRICT
### RETALIATION

481.     Plaintiff repeats and realleges each and every allegation in paragraphs numbered

ASA-290

Case 21-2683, Document 56, 05/26/2022, 3324949, Page94 of 169

above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

482.    In retaliation, Defendant RCSD claimed to have paid the Plaintiff from February 2018 through April 23, 2018.

483.    In retaliation, Defendant RCSD claimed to have placed the Plaintiff on paid administrative leave from December 7, 2017 through April 23, 2018.

484.    In retaliation, Defendant RCSD claimed that the Plaintiff refused to return to work after the paid administrative leave and was terminated because of it.

485.    In retaliation, Defendant RCSD claimed that there was no need for the Plaintiff to return to work after the paid leave because the school district looked at it as a separation from employment.

486.    In June 2019, in retaliation, Defendant RCSD caused the NYSTRS to take away Plaintiff's service credits, salary and benefits from July 1, 1999 through June 30, 2000 (NYSTRS took away 3 months), July 1, 2017 through June 30, 2018 (NYSTRS took away the entire year).

487.    In retaliation, the Honeoye Falls-Lima Central School District caused the NYSTRS to take away Plaintiff's service credits from June 30, 2005 through July 1, 2006 (NYSTRS took away 1 month); June 30, 2006 through July 1, 2007 (NYSTRS took away 2 months); June 30, 2007 through July 1, 2008 (NYSTRS took away the entire year).

VII.          **BREACH OF CONTRACT**

488.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered

[70]

ASA - 291

above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

489.　Defendant RCSD breached the employment contract.

## VIII.　CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") 42 U.S.C. §2000E, ET SEQ., AGAINST ASAR RACE DISCRIMINATION

490.　Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

491.　Defendant ASAR refused to progress Plaintiff's grievances to arbitration because of her race.

## IX.　CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") 29 U.S.C. §621　AGAINST ASAR AGE DISCRIMINATION

492.　Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

493.　Defendant ASAR refused to progress Plaintiff's grievances to arbitration because

[71]

ASA-292

of her age.

### X.  CLAIMS UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §290 ET SEQ., AGAINST ASAR RACE DISCRIMINATION

494.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

495.    After Plaintiff filed her discrimination complaints and after Plaintiff filed her discrimination complaints with the Court, ASAR continued in its pattern and practice of discrimination against Plaintiff up to including retaliating against her.

496.    Defendant ASAR refused to pursue Plaintiff's grievances regarding her salary, demotion, and termination during the 2017-2018 school year to arbitration as it did or would have done for non-minority unit members.

497.    Defendant ASAR retaliated against Plaintiff for complaining of and opposing discrimination and for filing a discrimination complaint against the union.

### XI.  CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") 42 U.S.C. §2000E, ET SEQ., AGAINST ASAR RETALIATION

498.    Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this her second combined verified amended complaint with the same force and effect as if fully set forth herein and incorporates by reference each and every allegation contained in numbered paragraphs above in this amended complaint with the same force and effect as if fully set forth herein.

ASA-293

499.     Defendant ASAR's actions relates back to one or more of the acts complained of in Plaintiff's charges of discrimination complaint before the Division and EEOC dated March 16, 2017, March 30, 2017, April 25, 2017, and August 25, 2017, and after Plaintiff filed her discrimination complaints with the Court in federal actions 17-cv-6873, 17-cv-6878, 18-cv-6450 and 20-cv-6537.

500.     Defendant ASAR retaliated against Plaintiff for complaining of and opposing discrimination and for filing a discrimination complaint against the union.

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff prays for relief and judgment entered in her favor as follows:

a.  A declaratory judgment finding that: (a) Defendant Rochester City School District and Defendant ASAR discriminated against Plaintiff on the basis of her race, color, age, and/sex/gender, subjected her to a hostile work environment and disparate treatment; and retaliated against her in violation of Title VII, NYSHRL, ADEA, Section 1981, Section 1983 and Equal Protection and Retaliation;

b.  An injunction requiring the Rochester City School District to cease its pattern and practice of unlawful discrimination against Plaintiff and other similarly situated employees because of race, color, age, and sex/gender, and as such subjecting them to working in a hostile working environment, and for retaliation against Plaintiff and other similarly situated employees who complain of discrimination and retaliation;

c.  An order requiring Defendant Rochester City School District to reinstate Plaintiff's employment and place her in the position of CASE administrator as a Central Office Committee on Special Education ("CSE") Chairperson, tenured

[73]

ASA-294

area Bracket IV, CASE which is now titled Associate Director of Special Education, tenured area, Bracket III, Assistant Principal as the tenured employee that she is;

d.  An order requiring Defendant RCSD to pay Plaintiff all the back pay, wages, benefits, and pensions that Plaintiff lost as a result of the Defendant RCSD's discrimination and retaliation in failing to promote Plaintiff, and in terminating Plaintiff, together with prejudgment interest;

e.  An order requiring Defendant RCSD to pay Plaintiff front pay together with benefits and pensions;

f.  An order requiring Defendant RCSD to make Plaintiff whole as to any increased income taxes for which Plaintiff will be liable as a result of receiving pay covering several years in one year;

g.  An order requiring Defendant RCSD to pay Plaintiff the cost of this litigation, including any and all out-of-pocket costs over the years of the cost of this litigation;

h.  An order requiring Defendant RCSD and Defendant ASAR to pay Plaintiff individually civil fines and penalties up to $300,000 for committing an act of discrimination and retaliation pursuant to the EEOC;

i.  An order requiring Defendant RCSD to pay Plaintiff individually civil fines and penalties up to $100,000 for committing acts of willful, wanton, or malicious discrimination and retaliation against Plaintiff pursuant to the NYS HRL;

[74]

ASA-295

j. An order requiring Defendant RCSD to pay Plaintiff individually civil fines and penalties up to $50, 000 for committing acts of retaliation for willful, wanton or malicious retaliation;

k. An order Defendant ASAR to pay Plaintiff individually fines and penalties up to $300,000 for willful, wanton or malicious retaliation pursuant to the EEOC;

l. An order requiring Defendant ASAR to pay Plaintiff individually civil fines and penalties up to $50, 000 for committing acts of retaliation for willful, wanton or malicious retaliation;

m. An order that Plaintiff be awarded general and compensatory damages, including prejudgment and post-judgment damages interest in an amount according to proof at trial;

n. That Plaintiff be further awarded punitive damages in an amount according to proof at trial;

o. That Plaintiff be further awarded reasonable attorney's fees and cost of suit;

p. That Plaintiff further awarded reinstatement to her job with any increase in salary, incentives, and benefits;

q. That Defendants make Plaintiff whole from the unlawful employment practices described above by providing compensation for non-pecuniary losses;

r. An order requiring and granting preliminary and permanent injunctions, prohibiting the Defendants, their officers, employees, agents, successors, and other persons in their employment and in concerted effort with the defendants and those acting in concert with them and at their direction from engaging in any of the practices set forth above to implement an affirmative action program and

[75]

ASA-296

training program to stop the deprivation of constitutional rights of individuals similarly situated to the plaintiff;

s.   That this Court grant such other and further relief as the Court deems just and proper.

DATED: April 26, 2021
        West Henrietta, New York
        Monroe County, New York

## VERIFICATION

STATE OF NEW YORK        )

COUNTY OF MONROE        ) ss:

BERNICE CURRY-MALCOLM, maiden name Bernice Curry, being duly sworn, and says that I am the *pro se* Plaintiff in the above entitled captioned action and under penalty of perjury, I declare that I have read the foregoing Second Combined Verified Amended Complaint and that the facts stated in it are true, except as to matters therein stated to be alleged on information and belief and as to those matters, I believe to be true.

*Mrs. Bernice Curry Malcolm*

Bernice Curry-Malcolm - Plaintiff, *Pro se*
6 Gingerwood Way
West Henrietta, New York 14586-9448

STATE OF NEW YORK        )

COUNTY OF MONROE        ) ss:

This 26th day of April 2021, before me, the subscriber, personally appeared Bernice Curry-Malcolm to me known and known to me to be the same person described in and who executed the within instrument, and she duly acknowledged to me that she executed the same.

_____
Notary Public

REBECCA B. WIESNER
NOTARY PUBLIC, State of New York
Monroe County, No. 01WI6288295
Commission Expires 9/04/2024

[76]

ASA-297

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BERNICE CURRY- MALCOLM                           **CERTIFICATE OF SERVICE**
                                                 **Civ. No.: 17-cv-6878 (Hon. DGL)**
                    Plaintiff,                   **U.S.C.A. Appeal No.: 19-2412cv**

ASSOCIATION OF SUPERVISORS AND
ADMINISTRATORS OF ROCHESTER, ("ASAR")            **Civ. No.: 17-cv-6450 (Hon. DGL)**
DR. TIMOTHY CLIBY, PRESIDENT and Individually,   **U.S.C.A. Appeal No.: 19-2416cv**
JOHN ROWE, VICE PRESIDENT and Individually,
ROCHESTER CITY SCHOOL DISTRICT,
BARBARA DEANE-WILLIAMS,                          **JURY TRIAL DEMANDED**
SUPERINTENDENT OF SCHOOLS and Individually,
SANDRA SIMPSON, CHIEF OF SPECIALIZED
SERVICES AND FORMER INTERIM EXECUTIVE
DIRECTOR OF SPECIALIZED SERVICES and Individually,
MARY PAULY, EXECUTIVE DIRECTOR OF SPECIALIZED
SERVICES and Individually, TERESA ROOT, ZONE DIRECTOR
OF SPECIALIZED SERVICES and Individually,

                    Defendants.
_____

**CERTIFICATE OF SERVICE**

I, Mrs. Bernice Curry-Malcolm, hereby certify under the penalty of perjury that on the

26th day of April 2021, that I handed-delivered the Original and a copy of the Second Combined

Verified Amended Complaint, dated April 26, 2021 together with Plaintiff, Bernice Curry-

Malcolm Verified Affidavit dated April 26, 2021 upon the Office of the Clerk, United States

District Court, Western District of New York located at United States District Court, 2120 U.S.,

Courthouse, 100 State Street, Rochester, New York 14614 and that I served the same by postal

mail upon the Defendants. The United States Postal Service worker is over the age of 18 years

and is not a party to these proceedings and that I served by United States Postal Service Priority

COPY TO:

ASA-298

*Via United States Postal Service Priority Mail*

Rochester City School District, Superintendent of Schools
Board of Education
Attorney for Defendants-Respondents' Rochester City School District, et al., Alison K. L.
Moyer, Esq.
Email: alison.moyer@rcsdk12.org
Telephone: (585) 262-8550
131 West Broad Street
Rochester, New York 14614
Telephone (585) 262-8100

School Administrators Association of New York State ("SAANYS")
For Defendants Association of Supervisors and Administrators of Rochester (ASAR), et al.
Attorney for Defendants-Respondents' Association of Supervisors and Administrators of
Rochester ("ASAR"), Arthur Scheuermann, Esq., and Jennifer L. Carlson, Esq., Deputy Counsel
Email: ascheuermann@saanys.org
Email: JCarlson@saanys.org
8 Airport Park Boulevard
Latham, New York 12110
Telephone: (518) 782-0600


Dated: April 26, 2021
West Henrietta, New York
Monroe County, New York

Bernice Curry-Malcolm, *Pro se Plaintiff*
6 Gingerwood Way
West Henrietta, New York 14586

ASA-299

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



**ORIGINAL**

FILED
APR 26 2021
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

VERIFIED AFFIDAVIT OF
BERNICE CURRY-MALCOLM

———————————————

BERNICE CURRY- MALCOLM

                Plaintiff,

ASSOCIATION OF SUPERVISORS AND
ADMINISTRATORS OF ROCHESTER, ("ASAR")
DR. TIMOTHY CLIBY, PRESIDENT and Individually,
JOHN ROWE, VICE PRESIDENT and Individually,
ROCHESTER CITY SCHOOL DISTRICT,
BARBARA DEANE-WILLIAMS,
SUPERINTENDENT OF SCHOOLS and Individually,
SANDRA SIMPSON, CHIEF OF SPECIALIZED
SERVICES AND FORMER INTERIM EXECUTIVE
DIRECTOR OF SPECIALIZED SERVICES and Individually,
MARY PAULY, EXECUTIVE DIRECTOR OF SPECIALIZED
SERVICES and Individually, TERESA ROOT, ZONE DIRECTOR
OF SPECIALIZED SERVICES and Individually,

                Defendants.

———————————————

Civ. No.: 17-cv-6878 (Hon. DGL)
U.S.C.A. Appeal No.: 19-2412cv

Civ. No.: 17-cv-6450 (Hon. DGL)
U.S.C.A. Appeal No.: 19-2416cv

Honorable David G. Larimer, J.

**JURY TRIAL DEMANDED**

———————————————

**VERIFIED AFFIDAVIT FOR *PRO SE* PLAINTIFF BERNICE CURRY-MALCOLM**

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF MONROE   )

**BERNICE CURRY-MALCOLM**, being duly sworn, deposes and says:

    1.      I submit this affidavit in support of this my Second Combined Verified Amended

Complaint in the above-captioned combined actions.

    2.      I am the *pro se* Plaintiff in the above-captioned combined matter.

    3.      I am not represented by counsel and proceed in these matters as a common

layperson *pro se* litigant.

    4.      My maiden, name is Bernice Curry.

ASA-300

5.     I am married and have been Since 1997.

6.     I am a resident of New York State. My husband and I reside at 6 Gingerwood Way, West Henrietta, New York, Monroe County.

7.     I am a Black/African American married woman of the Baptist faith.

8.     I was fifty-eight (58) years old when I filed my first charge of discrimination in March 2017 against the Rochester City School District and my local labor union, the Association of Supervisors and Administrators of Rochester ("ASAR").

9.     I am a sixty-two (62) years old Black/African American female and a citizen of the United States of America and a member of a protected class.

10.     My purpose in submitting this Affidavit is to set forth, based on personal and first-hand knowledge and experiences, the facts and information surrounding the circumstances in the above-captioned actions of the combined cases and to set the record straight and to try to once again comply with the Court's Order dated December 30, 2020.

11.     The second combined verified amended complaint serves as the affidavit of the facts constituting the claims set forth in the complaint (s) and/or pleadings against the defendants.

12.     I make this affidavit based upon my personal and first-hand knowledge. That personal and first-hand knowledge is based upon material facts and circumstances, discussions with defendants, their officers, employees, supervisors and/or agents, as well as ASAR representatives and SAANYS representatives, and others.

13.     My personal knowledge is based on my own personal and first-hand experiences as contained in written correspondences, pleadings, and through conversations, direct and indirect observations, face-to-face in-person interactions, and written, oral and/or telephonic



contacts with the defendants, their officers, employees, supervisors, representatives and/or agents and others.

14. My personal and first-hand knowledge is based in good faith and honesty in believing that I was being discriminated against, and on facts stated to be true, and except as to the matters therein stated as to be alleged on information and belief, and as to those matters, I believe to be true.

15. My personal and first-hand knowledge is based on review of files and documents maintained by the Rochester City School District in the normal course of the school district's day-to-day business operations.

16. My personal and first-hand knowledge is based on files and documents that are maintained by the Rochester City School District in the normal course of the school district's day-to-day business operations.

17. I am an "active" member of the New York State Teachers' Retirement System ("NYSTRS") and has been since September 1, 1997.

18. I am not employed. I do not work from home. I do not own a business. I am not self-employed.

19. I did not at any time make application to the NYSTRS for the purpose of retirement.

20. I am not retired.

21. I am not employed.

22. I did not at any time worked for the Honeoye Falls-Lima Central School District and/or the Rochester City School District as an itinerant teacher, third-party contractor of any sort and/or a contract administrator of any sort, and/or as self-employed.

[3]


ASA- 302

23.     I did not at any time work for the Rochester City School District as itinerant teacher from approximately 1998 through 2004 in any capacity.

24.     I was not temporarily employed with the Rochester City School District from September 2003 through December 8, 2004 because of a redesign with a termination date of December 8, 2004.

25.     I did not work for the Rochester City School District part-time from July 1, 2017 through October 1, 2017 with a termination date of October 1, 2017.

26.     The Rochester City School District terminated my employment as of June 30, 2017 with an effective date of July 1, 2017.

27.     I was not at any time on paid leave for health reasons from December 7, 2017 through January 4, 2018 while employed with the Rochester City School District.

28.     I do not know what the school district is talking about regarding its Work Summary submission before the Division in November 2018.

29.     I was not at any time on leave for health reasons from December 7, 2017 through December 20, 2017 while employed with the Rochester City School District.

30.     I do not know anything regarding the Rochester City School District's claim that the district placed me on paid administrative leave from December 7, 2017 through April 23, 2018.

31.     I received no notification from the Rochester City School District that the district placed me on paid administrative leave from December 7, 2017 through April 23, 2018.

32.     I did not receive at any time any notification from the Rochester City School District that the district expected me to return from the paid administrative leave that it had placed me on by April 23, 2018.

[4]


ASA-303

33. I did not at any time receive any notification from the Rochester City School District that I did not have to return from paid administrative leave because the school district considered the paid administrative leave as a separation from employment.

34. The Rochester City School District did not at any time pay me from February 2018 through April 2018.

35. The Rochester City School District did not at any time notify me that my employment would be terminated for unsatisfactory performance on April 23, 2018.

36. I was not an "at will" employee.

37. I did not at any time receive notice that the Rochester City School District recommended terminating my employment at its March 20, 2018 Board of Education Meeting.

38.

39. I had a contractual relationship with the Honeoye Falls-Lima Central School District from January 2001 through June 30, 2008.

40. I was the only Black/African American tenured female employee and unit member within the Honeoye Falls-Lima Central School District.

41. I was the only tenured Black/African American unit member of the local labor union, Honeoye Falls-Lima Education Association ("HFLEA"), an affiliate of New York State United Teachers ("NYSUT").

42. I was employed as a full-time regular "active" employee with the Honeoye Falls-Lima Central School District from January 8, 2001 through June 30, 2008 holding the school district title and position of a special education teacher.

43. After the successful completion of a three-year probationary period as a special

ASA-304

education teacher for the Honeoye Falls-Lima Central School District, I was granted tenure by the school district on or about September 1, 2004.

44.     I did not work for the Rochester City School District in 2004.

45.     I previously worked in a contract relationship within the Rochester City School District from August 31, 1998 through September 22, 2000.

46.     I begin working for the Rochester City School District as a special education teacher on or about August 31, 1998 and not on November 30, 1998.

47.     I have no idea why in November 2018, the Rochester City School District through its documentary submission to the Division backed dated my employment start date by three (3) months from August 31, 1998 to November 30, 1998. This was the first time that I discovered that.

48.     I held the school district position and title of consultant special education teacher within the school district's Senior High Alternative Program of Education ("SHAPE").

49.     I was a full-time regular "active" employee within the school district and a unit member  under the Rochester Teacher Association ("RTA") contract.

50.     I was not an at-will employee or at-will probationary employee within the Rochester City School District public educational organization, who could be discharged with or without cause without due process in accordance with the CBA, including, but not limited to Article 5: Salary and/or Education Law Section 3020-a, Education Law Section 2510, Education Law Section 3031, Education Law Section 3013.

51.     The Rochester City School District did not provide me with any notice of the

[6]

ASA-305

District's intentions to recommend termination of my employment at its March 20, 2018 Board of Education Meeting in violation of Education Law Section 3031 and in violation of the CBA, Article 15.

52.    On March 20, 2018, by Board Resolution No. 2017-2018: 649, the school district terminated me without notice and without good cause and without due process of law in violation of the CBA.

53.    There was a binding employment contract, and we were bound by the employment contract entered into on or about August 21, 2015. The Rochester Board of Education ratified the employment contract on August 27, 2015.

54.    The Collective Bargaining Agreement ("CBA") between the Rochester City School District and ASAR was a binding contractual agreement which I was a unit member covered by said CBA.

55.    The CBA that governed during the 2015-2016 school year was dated July 1, 2009 through June 30, 2014 without no successor agreement until April 8, 2016 as agreements were made in between a successor agreement.

56.    Through ASAR's website and the information provided by Attorney Carlson, SAANYS' Deputy counsel, the current CBA that governs is dated July 1, 2014 through June 30, 2018 and no successor agreement has been reached.

57.    I entered into a contractual relationship with the Rochester City School District on or about August 21, 2015 as a probationary Coordinating Administrator of Special Education ("CASE"), tenure area, Bracket IV as a twelve month employee.

58.    I was a full-time regular "active" employee within the school district and a unit

[7]


ASA-306

member under the Association of Supervisors and Administrators of Rochester ("ASAR")
contract.

59.     The Rochester City School District Board of Education voted to ratified my
employment as a CASE on August 27, 2015.

60.     My first day of work for the Rochester City School District as a Central Office
Committee on Special Education ("CSE") Chairperson was August 30, 2015.

61.     I am a veteran educator with over twenty-six (26) years of experience.

62.     I hold a Certificate of Advanced Study Degree in Educational Administration
from State University of New York ("SUNY") College at Brockport with permanent certification
within the area of School District Administrator obtained in 2007.

63.     I earned nine (9) hours toward a doctoral degree in Educational Leadership with a
concentration in Special Education from University of Rochester, Margaret Warner Graduate
School of Education and Human Development, those 9 hours were obtained in fall of 2008
through summer of 2009.

64.     I hold New York permanent public school teacher certifications in good standing
within the areas of Business and Distributive Education and Special Education obtained in 1998.

65.     I hold a Bachelor of Business Administration Degree within the area of General
Business, a Bachelor of Science Degree in Education, and a Master of Education Degree within
the area of Special Education, all from Delta State University ("Delta State") obtained from 1984
through 1992.

66.     I hold certifications in good standing within the areas of Business Education (7-
12), Educational Handicapped (K-12) and Career Level Administrator in the State of Mississippi.

67.     I first went to work for the Rochester City School District as a special education


ASA - 307

teacher in August 1998.

68.     In August 2015, I was newly hired holding the school district's title in the position of Coordinating Administrator of Special Education ("CASE"). I was the Central Office Committee on Special Education ("CSE") Chairperson.

69.     I engaged in protective activity when I in good faith informed my former employer the Rochester City School District that I was subject to discrimination based on race (Black/African American), color (Black/African American), sex (female, excludes sexual harassment and sexual violence), gender (female), and age (at the time I was fifty-eight years old).

**History of Litigation**

70.     I begin my educational tenure in 1978 as a teachers' assistance. I found from that experience that my passion and God gift was in the field of education and in particular the education of our youth.

71.     I loved being a teachers' assistance so much that I followed up with that by going to college and expanding my educational credentials and qualifications by earning numerous of college degrees in the field of education.

72.     Nineteen-seventy-eight (1978), was over forty-three (43) years ago since I was a teachers' assistance for a school district, including over thirty (30) years of having never commenced any litigation against any of my employers in any court whether state or federal, including up to any filing of discrimination.

73.     The first discrimination complaint/lawsuit that I ever filed in court was in 2008 against the Honeoye Falls-Lima Central School District.

74.     Commencing a lawsuit against the Honeoye Falls-Lima Central School District

[9]


ASA- 308

was not an easy decision. I struggled over whether to complain of and opposed the discrimination that I was subjected to because I was the only Black/African American woman within the employment of an all-white school district and because I was the only Black/African American woman as a member of the local labor union, the Honeoye Falls-Lima Education Association (HFLEA).

75.     Commencing a lawsuit against the Rochester City School District was not an easy decision. I again struggled over whether to complain of and opposed the discrimination that I was once again being subjected to. Challenging your wrongdoers is never a easy decision as is here.

76.     Respectfully and in good faith and honesty and with good intentions, the history of litigation has only been as long as the history of the discrimination that I unfortunately have been subjected to.

77.     All the lawsuits that I commenced as *pro se* I brought in good faith and in honestly believing that I was being discriminated and retaliated against for engaging in a protected activity and opposing discrimination.

78.     When I filed my lawsuits in good faith and honesty, I was naïve, and I thought that the truth actually mattered even though for me the jury is still out on whether justice actually matters.

79.     I naïvely commenced my lawsuits thinking that I would be treated equally whether I was an unrepresented *pro se* or was represented by counsel.

80.     I equally thought that I would have equal access to a fundamental right and that

ASA -309

the truth mattered and in good faith and honesty felt that I was wronged and discriminated against, so in good faith and honesty, I simply accessed the tools and avenues in place to exercise my civil and fundamental rights not believing that I would be punished for doing so.

81.     I am not a vexatious litigant. I should never have been unfairly labeled as one. I have not at any time filed a lawsuit with willful intent or to harass. Discrimination is real. I filed my complaints in good faith believing that they were with merit and believing that I have a good faith expectation of winning, and I still believe that had Agola continued as my attorney that the outcome would have been different.

82.     I also in good faith and honesty believe that had my union (s) stood up for me and provided me with a fair duty of representation that all of this would have not occurred and that I would still be enjoying educating our youth, including up to as a superintendent of schools.

83.     I remember during the 2006-2007, Dan Hartley, the local high school union representative of the Honeoye Falls-Lima Educational Association saying to me that if this is done right, it won't go any further than this.

84.     I remember, one of the NYSUT supervisors and/or directors saying that if it could be proven what the Honeoye Falls-Lima School District was doing to me that it could constitute a hate crime. I remember afterwards the campaign to disprove my claims began full force and my union turned against me for that all-white school district.

85.     Fast forwarding to 2017, John Rowe, ASAR First Vice President said to me a similar kind of thing full well knowing that what was happening to me was wrong, as did Dan Hartley.

86.     The school districts, including up to the Rochester City School District continued

[11]



in its pattern and practice of continuous and ongoing discrimination and retaliation against me over years, including up to post-employment.

87.     I have been discovering since the commencement of filing my pleadings and/or complaints that these school districts have been discriminating and retaliating unbeknownst to me against me for years. I did not know and could not have known. The evidence of bad faith and improper motivation were within the exclusive possession of the school districts and/or labor unions, including up to the Rochester City School District and ASAR.

88.     Restricting access to the courts is unconstitutional and in violation of my first amendment rights and the right of access to the courts is a fundamental right that is protected by the United States Constitution and those rights are afforded under the First, Fifth and Fourteenth Amendments.

89.     I was not given notice or an opportunity to be heard prior the prefiling injunction was imposed and entered regarding the Honeoye Falls-Lima Central School District.

90.     I was not given notice or an opportunity to be heard prior to the prefiling injunction was imposed and entered regarding the Rochester City School District.

91.     For the Court to try to go back now to try to repeat an action that has already been taken against me would amount to double jeopardy and would only further deprive me of my fundamental constitutional rights to access the court as is here.

92.     The Court would also deprive me of my fundamental rights in the prior proceedings against the Honeoye Falls-Lima Central School District and my local labor union, the HFLEA because I was never given the opportunity to be heard prior to the prefiling sanctions

ASA-311

being imposed and entered in those proceedings, but rather the Court sanctioned me, denied my motions to amend my complaints and dismissed them with prejudice.

93.     As is here with the Rochester City, my complaints against the Honeoye Falls-Lima School were also dismissed with prejudice and this Court imposed a leave-to-file sanction against me without providing me with the opportunity to be heard. I was never given an opportunity to argue against the sanction and the matter was never set for a henring.

94.     Further and specifically, I have no intentions of filing any other lawsuits. I have already encountered enough hell by these school districts over the last twelve or more years and I do not intend to ever put myself and my family in this position.

95.     I do not understand why it seems to be okay for these school districts to abuse me and why am I wrong because I spoke out against discrimination and why it seems to be wrong for me to stand up for myself against abuse, harassment, discrimination, and retaliation.

96.     These school district have attacked for no good reason and/or cause my good name, moral character, integrity, honor, professional reputation, and livelihood, which has been irreparably harmed. For years I have had to defend my good name from the lies that have been told about me.

97.     These school district have through their own self-serving interest have rendered me unemployable with their bad faith, willful and intentional lies, and disparagement against me.

98.     Prior to filing a prefiling sanction and/or leave-to-file sanction against me, the Court did not consider an alternative and/or less restrictive option.

99.     Further and specifically, the prefiling restrictions did not extend to any state court proceedings, state appellate court proceedings, petition for writ of certiorari, appeals and/or agency proceedings, including up to the proceedings before the Division and/or EEOC.

[13]


ASA-312

100.     The leave-to-file injunction of September 14, 2010, federal action 08-cv-6577 regarding , the Honeoye Falls-Lima Central School District and my local labor union, the Honeoye Falls-Lima Education Association states in relevant part that the " Plaintiff is therefore permanently enjoined from commencing any further *pro se* actions in federal court against the District, the Board of Education, or any District employees which arises out of her employment with the District, without prior leave of court".

101.     The leave-to-file sanction regarding the Honeoye Falls-Lima Central School District states in relevant part, "However, nothing in this order shall be construed as having any effect on Malcolm's ability to initiate or continue actions in state court and/or appeals before the United States Courts of Appeals, or her power to prosecute or defend any other action that is presently pending, brought by her in any federal court prior to the date of entry of this Decision and Order, including but not limited to the related matter of Malcolm v. Bd. of Educ. of the Honeoye Falls-Lima Central Sch. Dist. et al., 08-CV-6551 (W.D.N.Y. 2008).

102.     I had only commenced as *pro se*, one lawsuit in state court against the Honeoye Falls-Lima School District prior to the prefiling injunction being entered.  See, *Malcolm v. Honeoye Falls-Lima Sch. Dist.*, 2008-16610 (N.Y. Sup. Ct. Monroe County 2008) (action alleging breach of the Settlement Agreement by the District, dismissed by grant of defendants' motion for summary judgment on March 12, 2010, on the grounds that plaintiff's claims lacked evidentiary support).

103.     The leave-to-file injunction of July 11, 2019, federal action 17-cv-6878 regarding the Association of Supervisors and Administrators of Rochester and the Rochester City School District states in relevant part that, "Plaintiff is therefore permanently enjoined from commencing any further *pro se* actions in federal court against the RCSD, any RCSD employees

[14]

ASA- 313

which arises out of her employment with the RCSD, the ASAR, or any ASAR representatives or members which arises out of her employment with the RCSD without prior leave of court".

104.    The leave -to file sanction regarding ASAR and the Rochester City School District further states in relevant part, "However, nothing in this order shall be construed as having any effect on Malcolm's ability to initiate or continue actions in state court and/or appeals before the United States Courts of Appeals, or her power to prosecute or defend any other action that is presently pending, brought by her in any federal court prior to the date of entry of this Decision and Order, including but not limited to the related matter of Malcolm v. Rochester City Sch. Dist., 17–CV–6873 (W.D.N.Y.2017) or *Malcolm v. Rochester City Sch. Dist.*, 18-CV-6450 (W.D.N.Y. 2018)".

105.    I did not commence any lawsuits for the sake of commencing a lawsuit. I do not like lawsuits and equally detest them now because in good faith and honesty, I feel based on my experiences over the years of being subjected to discrimination that even though there are fundamental rights afforded me by the state and federal laws in place that prohibits discrimination, including up to the fundamental rights afforded in the constitution, that does not necessarily mean that the administration of those laws is meet with just administration of the same.

106.    As *pro se*, in 2008, I had only filed one lawsuit against my then local labor union.

107.    The lawsuit against ASAR in 2017 was only the second lawsuit that I have ever filed against my local labor union.

108.    I am not now and never was an abusive and/or vexatious *pro se* but was labeled

[15]

ASA-314

as one by the Court prior to be given a chance and the opportunity to be heard prior to the decision and order being entered in these actions.

109.    In good faith and honesty, I believe that this Court's leave-to-file and/or prefiling sanctions against me were inappropriate and that the Court erred by not considering less restrictive sanctions and by not giving me and opportunity to oppose the sanctions and/or to be heard. See, *Malcolm v. Ass'n of Supervisors & Adm'rs of Rochester*, 2020 U.S. App. LEXIS 32404 at *8 (citing Moates v. Barkley, 147 F.3d 207, 209 (2nd Cir 1998).[2] See also *Viola v. United States*, 481 Fed. Appx, 30, 31 (2nd Cir. 2012)(unpublished opinion).

**Honeoye Falls-Lima Central School District**

110.    I engaged in protective activity when I in good faith informed my former employer the Honeoye Falls-Lima Central School District that I was subject to discrimination based on race (Black/African American), color (Black/African American), sex (female, excludes sexual harassment and sexual violence), gender (female), and age (over the years of forty years old).

111.    In good faith and honesty, and with good intentions, the history of litigation has only been as long as the history of the discrimination and only against the employers whom I felt engaged in a level of discrimination to such a degree that was so demoralizing, perverse, and relentless, and with such depraved indifference against me for opposing discrimination.

112.    In good faith and honesty, I believe the Honeoye Falls-Lima Central School District to be an employer who engaged in and participated in discrimination against me.

113.    The lawsuits were brought in good faith and in honestly believing that I was

ASA-315

being discriminated against and for retaliation for engaging in a protected right or activity and for breach of the settlement agreement that this court bounded us to even though I timely revoke it within the seven days revocation period.

114.    The Honeoye Falls-Lima Central School District intentionally, willfully, wantonly, and with malice subjected me to discrimination because I in good faith opposed discrimination.

115.    The district court unfairly imposed a leave-to-file sanction on me regarding the Honeoye Falls-Lima Central School District without providing me with an opportunity to be heard and by denying my motions to amend my complaints and dismissed my federal complaints with prejudice.

116.    The district court did not impose a leave-to-file sanction against me regarding the Honeoye Falls-Lima School District until September 14, 2010 in federal action no.: 08-cv-6577 and this was only after my then attorney Christina A. Agola ("Agola") withdrew as counsel and disparaged and discredited me. See, *Malcolm v. Bd. of Educ. the Honeoye Falls-Lima Central Sch. Dist., et al.*, 08-cv-6577 (W.D.N.Y. 2008) (complaint dismissed with prejudice).

117.    Prior to that 08-cv-6577 had been referred to a Magistrate Judge. After Agola withdrew as counsel, the district court reversed its standing referring the case to a Magistrate Judge and in less than three months after Agola's withdrawal as counsel, the district court issued a prefiling sanction against me without providing me the opportunity to be heard and dismissed several of my complaints with prejudice without allowing me the opportunity to amend.

118.    I had only commenced as *pro se* filed two lawsuits against the Honeoye Falls-Lima Central School District, (08-cv-6300 on July 7, 2008) and (08-cv-6577 on December 22, 2008). See, Malcolm v. *Honeoye Falls-Lima Central Sch. Dist., et al.*, 08-cv-6300

[17]



(W.D.N.Y. 2008) (complaint dismissed with prejudice) and *Malcolm v. Bd. of Educ. the Honeoye Falls-Lima Central Sch. Dist., et al.*, 08-cv-6577 (W.D.N.Y. 2008) (complaint dismissed with prejudice).

119.　　Both Complaints we dismissed with prejudice and without an opportunity to be heard prior to the leave-to-file sanction being entered against me.

120.　　Federal action no.: 08-cv-6551 was not commenced against the Honeoye Falls-Lima Central School District. See, *Malcolm v. Honeoye Falls-Lima Education Association et al.*, 08-cv-6551 (W.D.N.Y. 2008) (complaint dismissed).

121.　　On December 5, 2008 federal action 08-cv-6551 was commenced by me as *prose* against my then local labor union, the Honeoye Falls-Lima Education Association ("HFLEA") and New York State United Teachers ('NYSUT). See, *Malcolm v. Honeoye Falls-Lima Education Association et al.*, 08-cv-6551 (W.D.N.Y. 2008) (complaint dismissed).

122.　　This was the **first** and **only** lawsuit that I filed against the HFLEA and NYSUT union as *pro se* or represented.

123.　　On August 19, 2009, federal action no: 09-cv-6421 was commenced on my behalf by my then attorney, Christina A. Agola, PLLC, Counselors at Law. See, *Malcolm v. Honeoye Falls-Lima Central Sch. Dist., et al.*, 09-cv-6421 (W.D.N.Y.) (Complaint dismissed with prejudice.

124.　　I retained Agola on or about March 9, 2009 to represent me in federal actions 08-cv-6300, 08-cv-6577, 08-cv-6551 and 09-cv-6421.  Agola was my attorney from March 9, 2009 to June 25, 2010.

125.　　After Agola withdrew as counsel on or about June 25, 2010, I was left without representation and had no choice but to take over as *pro se*.

[18]



126.     In good faith and honesty, I retained lawyers in the past but found that they did not have my self-interest at heart and did not provide me with the standard and care that was owe to me as a client, but just took my money in excess of about $27,000.00 with Brown Hutchinson accounting for a retainer of $10,000 up front and then an additional $11,000.00 from my HFL salary because the school district wrote the check to Brown Hutchinson without my knowledge and consent, and Agola accounting for a retainer of $3,500.00, and Van White accounting for $2,500.00 to $4,000.00.

127.     I commenced federal action no.: 11-cv-6509 on or about October 14, 2011 against the Honeoye Falls Central School District because of their continued pattern and practice of discrimination and retaliation and for the gross material breach of the settlement agreement that this Court bound the parties to even though I had within the time limit and terms and conditions of the settlement agreement timely revoked the settlement agreement.

128.     One or more of the acts complained of relates back to my original charges of discrimination and my original pleadings and based on the settlement agreement which was a breach of contract claim. I sought relief again in mc-06010, but it was not covered into a civil action number and was dismissed by Decision and Order dated October 3, 2017 (DGL).

129.     The Honeoye Falls-Lima Central School District grossly and materially breached the settlement agreement and has continued to provide false information, including up to the New York State Teachers' Retirement System, including and up to 2020.

130.     I did not at any time receive a lump sum payment of $56,030.00 from the Honeoye Falls-Lima Central School District for the 2005-2006 school year.

131.     I did not at any time receive a lump sum payment of $57,026.00 from the Honeoye Falls-Lima Central School District for the 2006-2007 school year.

[19]

ASA-318

132.     I did not at any time receive in excess of $128, 000 during the 2006-2007 school year from the Honeoye Falls-Lima Central School District in a lump sum or via any other method.

133.     I did not at any time received a lump sum payment of $97,427.28 from the Honeoye Falls-Lima Central School District during the 2007-2008 school year.

134.     The Honeoye Falls-Lima Central School District did not pay me $75,019.69 for the 2007 tax year.

135.     The Honeoye Falls-Lima Central School District did not pay me all this money. I do not know where or whom the money went to, I just know it did not go to me.

136.     In 2018-2019, the Honeoye Falls-Lima Central School District told the New York State Teachers' Retirement System that the district gave Brown and Hutchinson, my then attorneys for about a month at best in excess of $65,000 to hold in escrow for me. I do not know anything about this. I asked Brown Hutchinson about it and got no response.

137. .     It is my good faith belief and opinion that deals were made without my knowledge and consent and that the Honeoye Falls-Lima Central School District hide money, including up to withholding money or deductions from my salary and not sending to the intended recipients and including not paying into my social security which includes the remarks "non-covered" earnings for 2000-2001 and 2005 through 2008.

138.     The Social Security Administration explained it to me by stating that my employer had not deducted any social security taxes from my payroll for those years. My employer for those years were the Rochester City School District and the Honeoye Falls-Lima Central School District.

139.     The Court's leave-to-file sanction imposed against me regarding the Honeoye

ASA-319

Falls-Lima Central School District was improper in light of the United States Court of Appeals ruling in *Malcolm v. Ass'n of Supervisors & Adm'rs of Rochester*, 2020 U.S. App LEXIS 32404 at *8 (citing Moates v. Barkley, 147 F.3d 207, 209 (2nd Cir. 1998) because I had only commenced two lawsuits on my own as *pro se* against the Honeoye Falls-Lima Central School District prior to this Court imposing a leave-to-file sanction against me.

140. To reinstate a leave-to-file sanction without providing me with the opportunity to be heard and to amend my complaints against the Honeoye Falls-Lima Central School District, the Honeoye Falls-Lima Education Association and the New York State United Teachers Union would be in contradiction to the Court of Appeal ruling referenced above.

141. It is my good faith and honest position, that now in order for the Court to truly access and/or determine whether such sanctions were appropriate, this Court would need to allow me the opportunity to amend my complaints against the Honeoye Falls-Lima Central School District, the Honeoye Falls-Lima Education Association and the New York State United Teachers Union and give me an opportunity to be heard in those matters in which the Court dismissed with prejudice without providing me with the opportunity to be heard and then entered a leave-to-file sanction against me.

**Rochester City School District**

142. I entered an employment contractual agreement with the Defendant Rochester City School District on August 21, 2015 holding the position of a Coordinating Administrator of Special Education ("CASE"). My placement within the school district's public educational organization was that of a Central Office Committee on Special Education ("CSE") CASE administrator. I was a CSE chairperson.

143. On August 27, 2015, at its regularly scheduled board meeting, the Rochester City

ASA-320

School District Board of Education ("RCSD BOE") approved and ratified the contractual appointment, and I was appointed to the position of CASE as a regular fulltime 'active" employee. My first day of work in her newly hired position was  August 30, 2015.

144.    Shortly after that appointment, I began to experience disparate treatment. Being a new employee, I stayed silent and did not complain or oppose for fear of losing my job.

145.    The disparate treatment continued and later turned into discrimination. In good faith and honesty believing that I was subject to discrimination, I filed several complaints of discrimination in a good faith effort to try to deter the school district's discriminatory and retaliatory behavior against me.

146.    I remember being told by Root that a white female colleague can do whatever she wanted to and that she could go over to the corner and smoke a cigar if she wanted to, but I had to do whatever I was told, including up to doing all of this younger, white female's work.

147.    I remember when Root maliciously and intentionally changed my leave sheet to falsely stating that my sister had passed just so that it would coincide with a date that she claimed to have meet with me regarding work performance.

148.    I remember what I felt when I discovered from the school district's submission of evidence during the November 2018 Hearings before the Division that the school district had changed my name on or about February 6, 2017 without my knowledge and without my consent, and how that lie has impacted and continues to impact my life.

149.    I knew in good faith and honesty that the Rochester City School District final performance evaluation was in discrimination and I said that in my complaints of discrimination, including up to my original pleadings in my complaints. One of more of the acts complained of relates back to the original discrimination complaints and/or pleadings.

[22]

ASA-321

I knew in good faith and honesty that the Rochester City School District was using the 2017-2018 budgetary process to get rid of me and I said that in my complaints of discrimination, including up to my original pleadings in my complaints. One of more of the acts complained of relates back to the original discrimination complaints and/or pleadings.

150.    I remember discovering for the first time, in November 2018, during Root testimony when she testified that a school district attorney from human resource helped her to complete an internal complaint of discrimination and harassment against me.

151.    Root testified, "Yes, I-I was advised through HCI that if your aren't happy with this, You are permitted to – I mean you can always file a complaint. Which I did".

152.    Root continued her testimony by testifying, "I received a notice, I've submitted it. I spoke to the lawyer at HR she helped me complete it".

153.    Upon information and belief, that lawyer was Fatima Reid.

154.    I remember sitting there in front of the administrative law judge during the November 2018 Hearings before the Division how the school district was willing to deepen a lie that I had accused someone of sexual harassment and tried to enter its newly sexual harassment policy into evidence.

155.    I did not at any time accuse anyone of sexual harassment while employed with the Rochester City School District. Other districts have told that same lie.

156.    The Rochester City School District would have been successful at entering that lie, but my reaction of hearing such a lie for the first time and my reaction of horror and pain to such a treacherous lie caused the administrative law judge to act against it.

157.    I remember discovering for the first time at the Hearings in November 2018 that

[23]

ASA- 322

the Rochester City School District in its submission to the Division that the district continued to

show me as employed as of July 1, 2017 through October 2017 after being terminated on or

about June 30, 2017.

158.    This Court was not there and has no personal reference and/or experience of what

that school district put me through and is still putting me through.

159.    In good faith and honesty and with good intentions, the history of litigation has

only been as long as the history of the discrimination and only against the employers whom I felt

engaged in discrimination against me for opposing discrimination.

160.    In good faith and honesty, I believe the Rochester City School District to be an

employer who engages in and/or engaged in and participated in discrimination against me,

including up to 2021.

161.    Upon information and belief, I am not the only employee who have filed more

than one lawsuit as a *pro se* against the Rochester City School District before this Court.

162.    Upon information and belief, none of those filers or their lawsuits were labeled

vexatious and/or were sanctioned by the Court.

163.    The discrimination against me by the Rochester City School District was

embarrassing, humiliating, degrading, offensive, belittling, stigmatizing, unwanted, and

intolerable, and has caused irreparable harm to my character, professional reputation, good name,

honor, and professional career, including up to the impact of rendering me unemployable.

164.    Filing discrimination charges against the school district did not and has not

worked or deterred its behavior of discrimination and retaliation against me because since the

filing of my March 3, 2020 (July 22, 2020) complaint against the school district, the school

district has continued in a pattern and practice of discrimination and retaliation against me,

ASA-323

including up to providing false information to the New York State Teachers' Retirement System ("NYSTRS") to cause NYSTRS to wrongfully reduce my retirement pension, reduce my service credit and benefits and to cause a reduction in my reported salary and/or wages for pension purposes.

**Good Faith Objective Expectation of Prevailing**

165.    I have a good faith objective of prevailing because the material facts and merit of my claims against the Rochester City School District speaks volume of the school district's acts of discrimination and retaliation against me, and even now.

166.    This court recognized in federal action 17-cv-6878 that the defendants should be sanctioned but failed to do such and instead improperly sanctioned me.

167.    I do not have a bad faith motive for pursuing the litigation.  My pursuit of the lawsuits were not willful filings. For me, staying silent about discrimination is not an option and for me to say something about it that means that I felt that it had become inconceivable.

168.    I did not bring my lawsuits to harass. I brought them in good faith because I honestly believe that I was being discriminated against for opposing discrimination.
In good faith, I believe that the Rochester City School District has a continued pattern and practice of discriminating and retaliating against me, including up to present day.

169.    I have an objective good faith expectation of prevailing on the merits because the Rochester City School District is an employer who knowingly, willfully, intentionally, and wantonly discriminates against its employees, including up to me, and thereafter.

170.    I am not the first employee that has worked or is working for the Rochester City School District that has commenced a civil lawsuit against the school district based on discrimination or retaliation.

ASA-324

171.    In good faith, I believe I have a good faith objective of prevailing based on merits,

as wells the following material facts, but not limited to:

a. First and foremost, the Court <u>must</u> take the allegations asserted within my complaint as true and accord me the benefit of every possible favorable inference, a cause of action exists.

b. The Rochester City School District and ASAR willfully and intentionally discriminated against me based on my race (Back/African American), color (Black/African American), sex(female, and excludes sexual harassment and sexual violence)/gender (female), and age (over 40 years old).

c. The Rochester City School District and ASAR knew what they were doing, and they knew it was wrong, but they just did not care that they were depriving me of my civil and constitutional rights.

d. The Rochester City School District and ASAR's evidence of bad faith and improper motivation were within their exclusive possession and is exclusively still in their possession.

e. Facts were unavailable to me and still are.

f. I did not know and could not have known the dept of the willful unlawful actions against me.

g. The Rochester City School District and ASAR's wrongful actions were arbitrary, capricious, and done in bad faith with no good faith intentions.

h. Rochester City School District purposefully targeted me, and fabricated reasons to pursue me, including up to changing my final performance evaluation from highly effective to developing, thereby creating a coalition changed hostile work environment.

i. Rochester City School District purposefully targeted me, and fabricated reasons to pursue me, including up to providing false information to the New York State Teachers' Retirement System which impacted my wages, pension, and service credit.

j. Rochester City School District's actions against me were willful and malicious.

[26]

ASA-325

k. Rochester City School District took tangible adverse employment actions against me, including up to termination of my employment.

l. Defendants' actions were self-serving.

172.    Rochester City School District's Unknown Human Resource Attorney was a salaried attorney in the Defendant RCSD's Human Capital Initiatives ("HCI")/Legal Department. Here HCI is interchangeable used as human resource department. The race of this unknown female attorney is unknown to me

173.    On November 15, 2018, Root testified during the Division Hearing that a female attorney within the RCSD Defendant's HCI department help her to fill out and complete her harassment and discrimination complaint against me.

174.    Root testified, Yes, I – I was advised through HCI that if you aren't happy with this, You are permitted to – I mean you can always file a complaint. Which I did".

175.    In relevant part, Root continues and testifies, "I received a notice, I've submitted it. I spoke to the lawyer at HR she helped me complete it".   Root was referring to the December 26, 2016 internal complaint of discrimination that the Plaintiff had filed against her.

176.    Defendant RCSD and this unknown named female lawyer that Root speaks of empowered Root to file a false complaint of discrimination against the Plaintiff and the changed the date and time of Root filing for the purpose of the Division Hearing to December 22, 2016.

177.    Root did not file her internal complaint of discrimination until December 29, 2016 at 8:35a.m., three (3) days after the Plaintiff had filed her complaint. This is confirmed by Root's own testimony, in relevant part, "I received a notice, I submitted it. I spoke to the lawyer at HR she helped me complete it.

178.    This Unknown female Attorney through her decision making powers

[27]

ASA-326

Case 21-2683, Document 56, 05/26/2022, 3324949, Page130 of 169

negatively impacted Plaintiff employment and through her official capacity and personal involvement and contributed to Plaintiff's termination and to a false internal complaint of harassment and discrimination against Plaintiff based on her color, race, and age.

179.   Kittelberger in her racial discrimination and personal attacks against me became officially and personally involved by and through her decision making to assist in the termination of Plaintiff employment because she was empowered by Deane-Williams, Root, Simpson and Pauly in her position as a tenured CASE administrator.

180.   Kittelberger as a tenured CASE administrator and acting Director of Alternative Special Education Programs at North Star was empowered by Defendant RCSD to assist in the creation of a hostile work environment and to racially discriminate against Plaintiff.

181.   Kittelberger became personally involved and she was nasty, rude and hostile towards me. Kittelberger's attitude became to intense and hostile that Plaintiff made a request for the Defendant RCSD to intervene.

182.   In April 2016, Kittelberger blurted out during a meeting with Root and Capezzuto in attendance that yes, she was hostile towards the Plaintiff. Kittelberger was loud and angry.

183.   Kittelberger added to the creation of a hostile work environment, including having been empowered by those in supervisory roles with decision powers that caused a negative and adverse impact on Plaintiff's employment and contributed to her termination based on her color race and age.

184.   Harry Kennedy in his official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff. Kennedy was personally involved based on his own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

[28]

ASA-327

185.    Kennedy as the Chief of Human Capital Initiative and as designated district representative or agent that was charged with ensuring the prohibition of unlawful harassment and discrimination, did not discharge his duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Kennedy's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

186.    Kennedy empowered and engaged in the creation of a hostile work environment during the 2016-2017 school year.

187.    Kennedy knew what he was doing was wrong and should have known that what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

188.    Kennedy added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

189.    Kennedy was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on his own personal and self-serving interest.

190.    Sanson in her official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff.

191.    Sanson was personally involved based on her own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

192.    Sanson as Zone Director of Specialized Services did not discharge her

[29]



duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Sanson's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

193.    Sanson empowered and engaged in the creation of a hostile work environment during the 2016-2017 school year.

194.    Defendant Sanson knew what she was doing was wrong and should have known that what she was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

195.    Sanson was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

196.    Sanson became Plaintiff's immediate and direct supervisor on February 27, 2017. Defendant Sanson wasted no time in making false claims against the Plaintiff and joined in with Defendant Pauly threatening and hostile actions against the Plaintiff.

197.    Sanson did not conduct a final performance evaluation on the Plaintiff for the 2016-2017 school year. Defendant Sanson conducted final performance evaluations for other probationary CASE administrators that she supervised for the 2016-2017 school year.

198.    Sanson added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

199.    Jordan in her official capacity intentionally and deliberately engaged in and participated in the violation of the statutory and constitutional rights of the Plaintiff.

ASA-329

200.     Jordan was personally involved based on his own self-serving interest in the violations of Plaintiff's civil and human rights and acted under the color of state law.

201.     Jordan as Principal or Administrator on Assignment did not discharge her duties in any way to provide Plaintiff the special duty owed to her under anti-discrimination laws and neither anti-retaliation statues, but for Jordan's engagement and participation based on Plaintiff's color, race, and age a different outcome would have occurred.

202.     Jordan empowered and engaged in the creation of a hostile work environment during the 2016-2017 school year.

203.     Jordan knew what he was doing was wrong and should have known that what he was doing was wrong and in violation of Plaintiff's statutory and constitutional civil rights and equal protection under the law.

204.     Jordan added to the creation of a hostile work environment, including decision making powers that negatively and adversely impacted Plaintiff's employment and contributed to her termination based on her color, race and age.

205.     Jordan knew full well what she was doing was wrong. Defendant Jordan told Marica Pease ("Pease") that she should remove Plaintiff's name off of documents that Pease had her name on. Defendant Jordan told Pease that Plaintiff made her look bad.

206.     Jordan was aware and knew full well that the Plaintiff's final performance evaluation had been unlawfully changed from highly effective to developing and officially and personally went along with the lie based on Plaintiff's race and age and based on her own personal and self-serving interest.

207.     Jordan was instrumental in the decision making process to place Kittelberger at North Star.

[31]


ASA-330

Case 21-2683, Document 56, 05/26/2022, 3324949, Page134 of 169

208.     Brody, female white, confronted Plaintiff, female black, and got all up in her face in a confrontational and hostile manner following her around and pursuing her by trying to provoke a response from the Plaintiff by saying to her the she had a serious problem and by continuing to make those types of unwanted, offensive, and hostile allegations based on how Brody thought that the Plaintiff would respond being a black woman.

209.     Plaintiff contends that Brody felt that she had some insight into her ethnicity based on Brody making the comment to her that she was a "sister too" because she was raising several of our black youth.

210.     In February 2017, Plaintiff was demoted, involuntarily transferred, and stripped of her supervisory duties in the monitoring and evaluation of teachers and school psychologists. Plaintiff was not allowed to evaluate any teachers and/or psychologists during the 2016-2017 school year as she had done in the past during the 2015-2016 school year.

211.     The RCSD Defendant knew of her interest and refused to interview her for the position of the Director Alternative Education Programs for North Star and instead place a younger, female white, with less experience than Plaintiff in the position and later placed a younger, male white, with less experience in the position without application to the same. These younger white employees were handpicked and given needed staff and resources to do the job.

212.     Defendant RCSD has a history and custom of hiring more whites than blacks in their teaching and/or supervisory roles and promotes more whites than blacks in positions of leadership. Over 80% of the CASE administrators are white and are tenured more than blacks.

213.     Defendant RCSD used its budgetary process to get rid of the black plaintiff and to

ASA-331

promote younger whites to higher ranking supervisory positions and/or positions of leadership and then rewarded those that assisted in its unlawful harassing, discriminatory and retaliatory actions by negotiating with the Defendant ASAR for better benefits, including salary increases, promotion to higher tenured brackets with title changes, vacation time, and incentives, but not limited to.

214.    The CASE administrator Bracket IV was never eliminated from the 2017-2018 budget, and neither could it because none of the tenured CASEs were impacted and for the entire bracket to be eliminated everyone in Bracket IV would have been had to have been laid off and not just the probationary CASE administrators. Neither was the Bracket IV or Bracket IV CASE administrators was eliminated from the budget for the 2017-2018, 2018-2019 school years.

215.    The CASE title received a name change to Associate Director of Special Education, Bracket III, Assistant Principal as part of the negotiations with the current CBA with the effective date of July 1, 2014 through June 30, 2018 and continues to be in full force, or until a subsequent Agreement is reached by the parties.

216.    During the 2016-2017, 2017-2018, 2018-2019 school years, Defendant RCSD rewarded the probationary CASE administrators that the district favored and showed preferential treatment to by the granting of tenure, changing some younger white CASE administrators' tenure dates by an entire year, i.e., from four years to three years so they were not impacted by the layoff, including, but not limited to Samantha Brody ("Brody"), and Megan Bonacci ("Bonacci"), and/or extending their probationary periods by a year inf they were found to be ineffective and/or developing, but not limited to.

217.    Defendant RCD had policies and customs discriminating against members of a protected class, including blacks and students with disabilities.

ASA-332

Plaintiff complained to Root and other higher ranking officials about the school district's practices regarding students with disabilities.

218.    On March 24, 2017, shortly after Plaintiff was assigned Renaissance Charter School of the Arts ("Renaissance Charter School"), an agent with Defendant RCSD; Dr. Donna Marie Cozine ("Dr. Cozine"), Director/Principal, sent Defendant RCSD a request to have the Plaintiff's CSE meetings audio recorded. The Charter School did not waste time in joining the Defendant RCSD against the Plaintiff. Defendant RCSD and Renaissance Charter School joined together to record the CSE meetings in which the Plaintiff was the chairperson.

219.    Plaintiff would not learn of this until April 2017 from Susan Lococo ("Lococo"), Director of Special Services at Renaissance Charter School that Dr. Cozine had never requested that CSE meetings be audio recorded prior to Plaintiff being assigned to the Charter School as the CSE chairperson.

220.    On May 16, 2017at 2:32p.m., Plaintiff received an email from Lococo which states, "Bernice, We have made very effort to comply with all the directives from the RCSD Legal Department, as well as RCSD Zone Directors. If you have further questions or concerns, please confer with your supervisors". Sue.

221.    Sanson informed the Plaintiff that Defendant RCSD and Renaissance Charter School would be audio recording CSE meetings of students with disabilities in which she was the chairperson. Other CSE chairpersons were not being subjected to this kind of adverse employment action.

222.    Plaintiff does not dispute that there is a budgetary process that takes place during a fiducial year and that the RCSD was engaged in that process, however Plaintiff contends and alleges that the Defendant RCSD used the 2017-2018 budgetary process to target her

[34]

ASA-333

probationary CASE administrator group to target her to wrongfully terminated her employment under the disguise of a lay-off.

223.     Defendant RCSD's reason was false and intentional discrimination was the real reason and but-for cause of the real reason.

224.     Defendant RCSD wrongfully terminated the Plaintiff in retaliation because Plaintiff complained of and opposed the defendants' illegal activities in regard to students with disabilities.

225.     Plaintiff complained of and opposed the Defendant RCSD's unlawful discriminatory and retaliatory practices, customs, policies, and procedures. Plaintiff was therefore perceived as a troublemaker throughout her time with the RCSD. Moreover,

226.     Defendant RCSD gave different reasons for the layoff-termination.

227.     Defendant RCSD gave different reasons for abruptly removing Plaintiff from her CASE administrator position at North Star. Plaintiff was involuntarily removed from North Star and All City High School as CASE administrator.

228.     Plaintiff alleges that the layoff was staged and orchestrated and empowered by the Defendant RCSD and Defendant ASAR, including Deane-Williams, Simpson, Root, Cliby, Rowe and Kennedy. Plaintiff did not have to be laid-off or terminated.

229.     Had the Defendant RCSD followed the same formula it had followed to remove its white probationary CASE administrators, including Samantha Brody, Colleen Multer, Christine Richter, Rosa Bellone, Megan Bonacci, but not limited to, from the lay-off list, Plaintiff's name would have been removed as of at least June 14, 2017.

230.     Plaintiff's termination was not a direct result of the reorganization of the

ASA-334

Specialized Services Department, and neither was it a direct result of budgetary impact, but for the defendants unconstitutional and unlawful discriminatory actions Plaintiff would not have been laid off, would not have endured school years of a hostile work environment and would not have been subjected to the unimaginable disparaging and disparate treatment by the defendants.

231.    Defendant RCSD gave Plaintiff several reason for the layoff. First, by Letter dated June 14, 2017, Plaintiff was told, "Due to the budget for the 2017-2018 school year, positions within the CASE Bracket IV tenure area will be eliminated from the budget. Based upon the seniority list for your tenure are, you are the least senior and are scheduled to be laid off from your position effective July 1, 2017, due to your certification area. You will be placed on a preferred eligibility list and will be recalled in order of your seniority in your tenure area".

232.    The termination letter in the same envelope, by Letter dated June 14, 2017, the district offered Plaintiff a probationary appointment in the special education tenure area effective September 5, 2017 with placement on salary step 11: $55,525.00 with a probationary period from September 5, 2017 to September 4, 2021. Plaintiff had until June 20, 2017 at 3:00p.m., to accept or decline the TCOSE offer.

233.    Before Plaintiff could accept or decline the offer, Defendant RCSD changed courses withdrew the offer and by email dated June 20, 2017 at 8:43a.m., sent Plaintiff a revised layoff letter that was dated June 19, 2017 from Kennedy.

234.    The revised layoff letter did not offer Plaintiff a TCOSE position, but rather stated that the revised letter correctly reflects the position you are laid off from, CASE, and the reason for the layoff. In relevant part, the letter states, "Due to the Special Education reorganization for the 2017-2018 school year, positions within the CASE Bracket IV tenure area will be eliminated from the budget. Based upon your seniority list for your tenure area, you are the least senior and

[36]

ASA-335

are scheduled to be laid off from your position effective July 1, 2017, due to your certification area. You will be placed on a preferred eligibility list and will be recalled in order of your seniority in your tenure area. ASAR Dr. Cliby was copied on the email sent by Miriam Adams and Anne Brady, HCI Director.

235.     By letter dated June 27, 2017, Plaintiff received another layoff letter from Kennedy via email from Daisy McFarland on June 28, 2017 at 4:26p.m., which states in relevant part, "I have the difficult task of informing you that due to the budget reductions for the 2017-2018 school year, positions within the Bracket IV tenure area will be eliminated from the budget. Based upon the seniority list for your tenure area, you are the least senior and are scheduled to be laid off from your position effective July 1, 2017. You will be placed on a preferred eligibility list and will be recalled in order of your seniority in your tenure area".

236.     Defendants RCSD wrongfully terminated my employment without good cause and without due process of law in accordance with the collective bargaining Agreement, Article 15 -Discipline and Discharge of Nontenured Certificated Staff.

237.     Defendants RCSD proffered reason given for terminating the Plaintiff has no basis, was not the actual reason and that the defendant RCSD reason was insufficient to explain their unlawful harassing, discriminatory and retaliatory actions against her.

238.     Plaintiff alleges that her union did not provide her with a fair duty of representation. In May 2017, the School Administrators Association of New York State ("SAANYS") assigned Mimi Satter ("Attorney Satter"), Esq., to represent Plaintiff in her union related matters with the Rochester City School District. Plaintiff and Attorney Satter was sorting things out and working through Plaintiff's questions and some confusion regarding what she was being told by ASAR and SAANYS and what the Plaintiff said happened.

[37]

ASA - 336

239.    In September 2017, Attorney Satter informed the Plaintiff via email that, "I am advised that I am no longer authorized to provide legal services on your behalf". "Thus I respectfully withdraw".

240.    Plaintiff learned from Attorney Satter that SAANYS removed her as counsel stating that Plaintiff was not a unit member, and as such, she was no longer authorized to provide Plaintiff legal services in her union related matters with the Rochester City School District.

241.    Defendant ASAR treated Plaintiff differently than it did other impacted probationary CASE administrators. In example, on August 29, 2017, SAANYS by and through its authorized agent Jennifer Carlson ("Attorney Carlson"), Deputy Counsel, told Johnnayea Edmond ("Edmond"), Human Rights Specialist II regarding a telephone conference held on July 31, 2017 in relevant part that regarding ASAR's representation of the other impacted probationary CASE administrators that, "It even accompanied members upon request to the meetings wherein the salaries and placements in TCOSE positions were discussed, even though they were not entitled to representation".

242.    Attorney Carlson also stated in relevant part that, "As Dr. Cliby pointed out in the conference, ASAR had no say in the RCSD's decision to abolish the CASE positions and create the TCOSE positions within the Rochester Teachers' Association ("RTA"). ASAR's sole involvement in the matter was to ensure that the seniority lists were accurate for layoff and recall purposed and also to work with the RCSD to minimize the damage of the twenty-two (22) impacted members".

243.    ASAR and SAANYS were aware that the seniority list was not accurate for layoff and recall rights. As an example, but not the sole example, the preferred eligibility and recall list was padded, Plaintiff was not number eleven and the defendants knew it. In example, Stacey

ASA - 337

Aliasso ("Aliaaso") was not first on the list in order of seniority for recall. Aliasso resigned and even id he had not, she did not have seniority over Plaintiff.

244.     On October 3, 2017 at 12:20p.m., Plaintiff received an email from Kennedy, Bernice- Thank you for your patience. Please know that there is a total of 38 CASES. You are number 30 of the 38 CASES. There are currently two people ahead of you on the seniority recall list". ASAR Dr. Cliby and Rowe were copied on the email.

245.     The other impacted probationary CASE administrators continued to work in their probationary CASE administrator position.

246.     By June 14, 2017 and again by August 9, 2017, ASAR and SAANYS were aware that twenty-two (22) CASE members were not impacted and those claimed to be impacted probationary CASE members continued and were retained in their employment as probationary CASE administrators with the Rochester City School District and that the ones that resigned was helped by the school district to become gainfully employed in other neighboring school districts.

247.     None of these probationary CASEs except for the Plaintiff was terminated. Defendant RCSD never reached out to Plaintiff on June 14, 2017 and neither June 30, 2017 to let her know that she was no longer impacted and did not remove her name from the list. Defendant lied about trying to contact the Plaintiff on June 30, 2017.

248.     Plaintiff was physically at work on June 30, 2017 and working in her office. Neither Defendant RCSD neither Defendant ASAR contacted the Plaintiff to inform her that she was not longer impacted by the layoff. Instead, Defendant ASAR allowed Defendant RCSD to terminate the Plaintiff. The fake layoff and the fake eligibility/recall was just that fake with the exception that the Plaintiff was the only actual probationary CASE administrator who was laid off.

[39]

ASA-338

249.     The Teacher Coordinators of Special Education ("TCOSE") list was a lie and a fake. None of the probationary CASEs were TCOSEs, but rather continued to be CASEs, including as of June 27, 2017 and/or during Summer Learning or Summer School (July 1, 2017 through August 2017) and/or worked in other higher-level administrative positions including up to Directors and/or Assistant Principals.

250.     Defendant RCSD had a process by which it removed affected probationary CASEs name from the layoff list when they were no longer impacted and no longer had to be eliminated from their probationary CASE positions.

251.     Carlson, May 2, 2017, "Pursuant to Education Law §2510, if the position cut is within a tenure area containing multiple titles, the person who job is eliminated is not necessarily the one laid off, if he/she has seniority over another in the tenure area. Therefore, the most recently hired people in the Bracket should be the ones let go, even if their positions are not the ones that are specifically cut". The more senior administrators, whose positions are cut, are placed within other positions within the Bracket. Those who are ultimately laid off are placed upon a Preferred Eligibility List ("PEL") for a period of seven (7) years. Should any vacancies occur within the tenure area due to attrition or creation of new positions, they will be first offered to the PLE, in order of seniority".

252.     Tenured CASE administrators were not impacted by the layoff. None of them were laid off. Defendant ASAR allowed Defendant RCSD to breach the employment contract and the collective bargaining agreement by removing Plaintiff from eleven (11) on the PEL list to number thirty (30) of thirty-eight (38) CASE administrators. Then, Defendant RCSD placed Plaintiff as eleven (11) on the PEL list in order of seniority in order of length of service as (a) professional educator (s) in the District even though Plaintiff was never number eleven (11) to

[40]

begin with. Defendants were aware and in full knowledge that Plaintiff was next in line for her name to be removed as an impacted probationary CASE administrator as early as June 14, 2017.

253.    Plaintiff was a previous Rochester City School District teacher, part of the Rochester Teachers' Association ("RTA"). Plaintiff did not receive any negative performance evaluations when she previously worked for the school district. Plaintiff was a permanently certificated teacher and administrator with over twenty-six (26) years of educational experience and qualified.

254.    Pursuant to the CBA, Article 18 (1), Acting positions shall not be for a period of more than one (1) year from the date of appointment. Unit members serving in acting positions shall have absolute right of return to their former positions. Defendant RCSD refused to appoint Plaintiff as acting in the position of Director of Alternative Special Education Programs at North Star based on her race and age. Plaintiff was certificated and qualified for the position.

255.    Defendant RCSD handpicked and appointed Kittelberger, female white to the position, Board of Education Resolution No. 2016-2017: 563.

256.    Specifically, pursuant to the CBA, Article 5 (2), unit members in Bracket I and II earn tenure and seniority within the job title. Unit members in Brackets III and IV earn tenure and seniority within the bracket.

257.    Placement on the PEL list Board of Education Meeting dated June 27, 2017 Resolution No. 2016-2017: 893: Placement was from one (1) being the most senior to seventeen (17) being the least senior. Placement was as referenced herein started with: (1) Stacey Aliasso ("Aliasso"), as being the most senior which was not true, and Aliasso did not have seniority over Plaintiff as a probationary CASE administrator, did not have any prior RTA experience with the school district as a professional educator prior to ASAR, signed her employment contract after

[41]



the Plaintiff, and resigned and no longer works for the district, but in a neighboring school district.

258.     As number (2), Rosa Bellone ("Bellone") would have had seniority over Plaintiff, but she was not impacted by the layoff, did not have any prior RTA experience with the school district as a professional educator prior to ASAR, and continued in her position as a probationary CASE administrator beginning July 1, 2017 for the 2017-2018 school year, should not have been placed on the PEL list for recall on August 14, 2017, Board of Education Resolution No. 2017-2018: 119, and was later granted tenure as a CASE administrator.

259.     On June 1, 2017, Defendant RCSD was showed Bellone, Martino, Brody, and Richter were no longer impacted and as tenured administrators.

260.     Placement on PEL list continues... As number (3), Megan Bonacci ("Bonacci") would have had seniority over the Plaintiff, but she was not impacted by the layoff, had prior RTA experience with the school district as a professional educator prior to ASAR and continued in her position as a CASE administrator, beginning July 1, 2017 for the 2017-2018 school year, should not have been placed on the PEL list for recall and was granted tenure as a CASE administrator.

261.     As number (4), Bonnie Ellis ("Ellis") did not have seniority over Plaintiff as a probationary CASE administrator, did not have any prior RTA experience with the school district as a professional educator prior to ASAR, signed her employment contract after the Plaintiff, was not impacted and continued in her position as a probationary CASE administrator, and received promotional favors and freely without application was transferred into an Assistant Principal position beginning July 1, 2017 for the 2017-2018 school year and should not have been placed on the PEL list for recall.

[42]



ASA-341

Placement on PEL list continues... As number (5), Mark Ferraro, did not have seniority over Plaintiff as a probationary CASE administrator, was hired after the Plaintiff into the position, was not impacted, had prior RTA experience with the school district as a professional educator prior to ASAR and continued in his position as a probationary CASE administrator beginning July 1, 2017 for the 2017-2018 school year.

262.     As number (6), Kathleen Foster did not have seniority over Plaintiff as a CASE administrator, was hired after the Plaintiff into the position, was not impacted, had prior RTA experience with the school district as a professional educator prior to ASAR and continued in her position as a probationary CASE administrator beginning July 1, 2017 for the 2017-2018 school year and should not have been placed on the PEL list for recall.

263.     Placement on PEL list continues... as number (7), Faith Hart did not have seniority over Plaintiff as a probationary CASE administrator, was hired after the Plaintiff into the position, was not impacted, did not have any prior RTA experience with the school district as a professional educator prior to ASAR and received promotional favors and freely without application was transferred into an Assistant Principal, tenure area Bracket III position beginning July 1, 2017 for the 2017-2018 school year and should not have been placed on the PEL list for recall.

264.     As number (8), Jason George ("George") did not have seniority over Plaintiff as a probationary CASE administrator, was hired after the Plaintiff into the position, was not impacted, had prior RTA experience with the school district as a professional educator prior to ASAR and continued to work as a probationary CASE administrator and received promotional favors and freely transferred without application into the acting Director of Alternative Special Education Program at North Star, tenure area, Bracket II position beginning August 14, 2017.

ASA- 342

265. Placement on PEL list continues…as number (9), Kristina Henry ("Henry") would have had seniority over Plaintiff, but she was not impacted by the layoff, did not have any prior RTA experience with the school district as a professional educator prior to ASAR and continued to work as a probationary CASE administrator, beginning July 1, 2017 for the 2017-2018 school year, resigned in August 2017, came back to the district and should not have been placed on the PEL list for recall and was granted tenure.

266. As number (10), Melinda Hyde ("Hyde"), would have had seniority over Plaintiff, but was not impacted, did not have any prior RTA experience with the school district as a professional educator prior to ASAR and continued to work as a probationary CASE administrator beginning July 1, 2017 for the 2017-2018 school year and should not have been placed on the PEL list for recall and was later granted tenure.

267. Placement on PEL list continues… as alleged by defendants as number (11), Plaintiff, Curry-Malcolm had seniority over probationary CASE administrator unit members Aliasso, Ellis, Ferraro, Foster, George, Hart, Nicholson, Radley, Yajaira Walker ("Walker", now "Nguyen") and Wilson. Bellone, Bonacci, Davina McLean-Randall ("McLean-Randall"), Kristal Shambo, now Haines, Melinda Hyde and Kristina Henry were no longer impacted by layoff as of early June 2017.

268. Due to adjustments in the 2017-2018 budgetary process and due to attrition or creation of new positions and/or favorable promotions or transfers to other administrative positions, Plaintiff was also no longer impacted by the 2017-2018 budgetary process, but was terminated any way, placed on a PEL list and moved from number eleven (11) to number thirty (30), had prior RTA experience with the school district as a professional educator prior to ASAR, was not allowed or permitted to continue to work as a probationary CASE administrator

[44]

ASA- 343

during the summer like the other probationary CASE administrators, did not receive any promotional opportunities, was not freely transferred into any higher-level positions or acting positions even though she was certificated and qualified, was not recalled to any vacant administrative or newly created administrative positions in which she was certificated and qualified, recalled after being bumped down to number thirty (30) on a recall list that did not contain thirty (30) probationary CASE administrators projected for layoff and was terminated again.

269.     Placement on PEL list continues... as number (12), Davina McLean-Randall ("McLean-Randall"), would have had seniority over the Plaintiff, but was not impacted, did not have any prior RTA experience with the school district as a professional educator prior to ASAR and continued to work as a probationary CASE administrator beginning July 1, 2017 for the 2017-2018 school year, and should not have been placed on the PEL list for recall and was later granted tenure.

270.     As number (13), Marissa Nicholson ("Nicholson"), did not have seniority over Plaintiff as a probationary CASE administrator, was hired after the Plaintiff into the position, was not impacted, did not have any prior RTA experience with the school district as a professional educator prior to ASAR, and continued to work as a probationary CASE administrator beginning July 1, 2017 for the 2017-2018 school year, resigned, came back to the school district and continued to work as a probationary CASE administrator and should not have been placed on the PEL list for recall.

271.     Placement on PEL list continues... as number (14), Diana Radley ("Radley") did not have seniority over Plaintiff as a CASE administrator, was hired after the Plaintiff into the position, was not impacted, had prior RTA experience with the school district as a professional

[45]



educator prior to ASAR and continued to work as a CASE administrator beginning July 1, 2017 for the 2017-2018 school year.

272.   As number (14), Kristal Shambo ("Shambo", now "Haines"), would have had seniority over the Plaintiff, but was not impacted, did not have any prior RTA experience with the school district as a professional educator prior to ASAR and continued to work as a probationary CASE administrator beginning July 1, 2017 for the 2017-2018 school year, resigned and came back to the district and continued to work as a probationary CASE administrator, and was later granted tenure.

273.   Placement on PEL list continues... as number (16), Yajaira Nguyen ("Nguyen"), did not have seniority over Plaintiff as a CASE administrator, was hired after the Plaintiff into the position, was not impacted, had prior RTA experience with the school district as a professional educator prior to ASAR and continued to work as a probationary CASE administrator beginning July 1, 2017 for the 2017-2018 school year and should not have been placed on the PEL list for recall.

274.   As number (17), Lakisha Wilson ("Wilson"), did not have seniority over Plaintiff as a probationary CASE administrator, was hired and signed her contract after the Plaintiff into the position, was not impacted, had prior RTA experience with the school district as a professional educator prior to ASAR and continued to work as a probationary CASE administrator beginning July 1, 2017 for the 2017-2018 school year and received promotional favors and was freely transferred into a promotional Assistant Principal, tenured area Bracket III position and should not have been placed on the PEL list for recall.

275.   Defendant ASAR and Defendant RCSD manipulated the CBA, Education Law

ASA - 345

and the PEL list by placing less senior CASE administrators or those that were not impacted on the PEL list for recall prior to Plaintiff and freely transferred and/or promoted those probationary CASE administrators that they favored. The entire fake elimination of probationary CASE administrators was a ruse to get rid of the Plaintiff.

276.    The other six (6) probationary CASE administrators in question were also not impacted by the layoff. Samantha Brody ("Brody") was not impacted, and her name was not on the list because Defendant RCSD showed as of June 1, 2017 that she was already a tenured CASE administrator and removed her name prior to the layoff list, and she continued to work as a CASE administrator. Multer's name was removed from the layoff list and she continued to work as a probationary CASE administrator and was granted tenure. Richter name was removed from the layoff list and she continued to work as a probationary CASE administrator and was granted tenure.

277.    Amy Mastowski ("Mastowski") resigned and upon information and belief, continues to work for Monroe One BOCES.

278.    Emily Lathers ("Lathers"), did not have seniority over Plaintiff as a CASE administrator, was hired after the Plaintiff into the position and resigned.

279.    Brandin Jones ("Jones") did not have seniority over Plaintiff as a CASE administrator, was hired after the Plaintiff into the position and resigned.

280.    Carlson claim to the Division via her letter dated August 9, 2017 that, "Further, contrary to Malcom's assertion in her March 30, 2017 Charge, the Developing rating was not a bar to receiving tenure. Pursuant to Education Law §3012, there are minimum rating requirements for teachers and principals appointed after July 1, 2015 in order to qualify for

ASA-346

tenure. As Malcom's position as a CASE did not fall under either of those categories, she could be granted tenure as the RCSD's discretion even with the developing rating".

281.    Attorney Carlson knew that she was misrepresenting before the Division. Attorney Carlson and Defendant ASAR was aware and in knowledge that Defendant RCSD use the same e-performance evaluation tool for all administrators, including CASEs. When making an administrative tenure area appointment, Defendant RCSD Board of Education in relevant part states, "Resolved, that upon the recommendation of the Superintendent, the person (s) certified as listed below, is (are) appointed to the administrative tenure area and the assignment shown, with effective date, probationary period and salary stated, and that such person (s) shall be eligible for tenure upon completion of the probationary period subject to the Board of Education's unfettered right to deny tenure and, to the extent required by Education Law Section 3012, the requirement that such person (s) receive at least three (3) Effective APPR ratings within the four (4) years prior to consideration for tenure and do not receive an ineffective rating in the final probationary period".

282.    The same is true for the appointment of teachers or professional educator tenure area under the RTA CBA.

283.    To ensure that the Plaintiff was terminated, Defendant RCSD terminated her and placed her on a preferred eligibility list.

284.    Attorney Carlson went on to say in relevant part, "Unfortunately, Ms. Malcom is the only remaining CASE without employment".

285.    SAANYS provided no representation regarding Plaintiff's wrongful termination of employment of April 23, 2018 and failed and refused to progress the matter to arbitration.

286.    Plaintiff did not receive any notification that her employment would be

[48]

ASA-347

terminated at the March 20, 2018 Board Meeting and neither did she receive any notification to the reason why.

287.    In November 2018, Defendant RCSD submitted documents to the Division that Plaintiff was terminated because of unsatisfactory performance.

288.    During the 2017-2018 school year and by affirmation of Rebecca Kannan ("Attorney Kannan'), Assistant General Counsel for the New York State Teachers' Retirement System dated August 19, 2020, stated in relevant part that, "NYSTRS was advised by the RCSD that during the 2017-2018 school year, petitioner took a paid administrative leave of absence from December 8, 2017 through April 23, 2018, and did not return to her position with the RCSD after the leave of absence".

289.    In her affirmation, Attorney Kannan states that Defendant RCSD advised her that plaintiff was on administrative leave of absence for the period of December 8, 2017 through April 23, 2018 and was terminated on April 23, 2018. Attorney Kannan continues, "As Petitioner did not return to her position within Rochester City Schools following her administrative leave and there was no intention for her to return as it was intended to be a separation from employment, any service credit or salary related to this timeframe is not pensionable".

290.    Neither did SAANYS renew and/or contact Attorney Satter to authorize her to resume representing Plaintiff in her union related matters with the Rochester City School District.

**Whether I am Represented by Counsel**

291.    I am not represented by counsel and is a self-represent *pro se* litigant in these matters before the Court.

292.    I am not a well-versed sophisticated veteran attorney. I was and still am at an



enormous disadvantage as any common and/or layperson *pro se* would be who has never had to defend a lawsuit before a court.

293.     I am not versed in law and I have spent countless of hours and time over years of having to try to make sense of the law and to try to defend myself by trying to figure it out on my own.

294.     I never wanted to defend myself and still do not. I would have much rather had an attorney. I have been left with no choice in the matter but to defend myself. So here I am.

295.     I retained New York attorneys in the past, including up to Van Henri White, Attorney at Law, Brown and Hutchinson LLC, Attorneys at Law, and Christina A. Agola, PLLC, Counselors at Law.

296.     These attorneys in my honest and good faith opinion just left me high and dry and/or sold me out to the school districts for their own self-interests.

297.     I also tried to retained Attorney Ryan Woodworth, but he was not interested.

298.     I even made request years ago that this Court provide me assistance of counsel after Agola withdrew. That did not go anywhere either.

299.     I have and have had no desire to be my own *pro se* unrepresented counsel and/or to represent self. Having to represent self has taken away years of good quality time that I could have been spending with my family and countless hours of sleep. In this matter along, its is now more than three years and counting.

300.     I tried to mediate the matters. I even signed to consent to a Magistrate Judge in federal actions 17-cv-6878 and 17-cv-6873 on or about January 12, 2018 and submitted it to this Court. However, I was told by this Court that the Rochester City School District and ASAR

ASA-349

would not consent to mediate and would not consent to a Magistrate Judge, so the case progressed in its nature course of progression.

301.    Honestly, I never intended to have to file a lawsuit. I wanted the discrimination to stop because I detest discrimination and its likes, and I do not feel that an employee should have to be subjected to a work environment that is riddle with discrimination.

**Whether I have Caused Needless Expense to Other Parties**

302.    No, in good faith and honesty believing that I was discriminated against, I have not caused needless expense to other parties.

303.    The Court got it wrong and so did various agencies. Discrimination is real and takes time to prove and especially when the intent and evidence of the discrimination is in the exclusive possession of the wrongdoers as is here.

304.    In my case, it has taken years for me to discover that these school districts continued in their pattern and practice of discrimination and retaliation against me long after I was no longer employed.

**Whether I Have Posed an Unnecessary Burden on the Courts and Their Personnel**

305.    In good faith and honesty believing that I was discriminated against, No, I have not posed an unnecessary burden on the Courts or their personnel.

306.    In good faith and honest belief, it has been the Defendants actions and conduct that caused me to file discrimination charges and complaints against them because of their continued pattern and practice of discrimination against me.

307.    I cannot predict the time it takes in the progression of commencing a case from start to finish.

308.    I did not willfully commence a lawsuit to burden the Court and/or its personnel. I

[51]


ASA-350

do not know how to answer the question because is it not the Court and its personnel's responsibility and duty to carry out the functions of the Court?

309.    I have not been abusive and/or disrespectful to the Court, staff, and/or its personnel. That was a lie.

310.    I have not been abusive and/or disrespectful to the Court, staff, and/or its personnel whether through in-person contact and/or via telephonic communications.

311.    Mostly, since 2008, I have only dealt with John, Barbara Keenan, and James Bock. We all are pretty familiar with each other because they are usually at the counter to accept the filings and as far as I can recall, we all have only treated each other with dignity and respect. Other than that, I have not had many interactions with that many Court employees or staff members in-person or telephonic.

312.    It has never been my intention to pose any unnecessary burden on the Courts and/or their personnel.

313.    In good faith and honesty, I have only followed the process that is afforded to everyone, including up to every American citizen of the United States regarding complaints of discrimination.

**Whether Other Sanctions Would Be Adequate to Protect The Courts And Other Parties**

314.    I believe in good faith and honesty that I was improperly sanctioned and should have never been sanctioned in the first place.

315.    I have not willfully abused the judicial process, and neither was that my intention. I have only sought justice through the venues that are afforded me under state and federal laws. I had no idea that was considered wrong.

316.    I was not given an opportunity to be heard prior to the Court's leave-to-file

[52]

ASA-351

sanction resulting in the dismissal of my complaints with prejudice, and neither was I given the opportunity to amend my complaints.

317.    I believe in good faith and honest had I been given the opportunity to be heard and the opportunity to amend my complaints that outcome would have been different, and neither would I have been sanctioned.

318.    In good faith, I believe that the Court's sanctions were improper and that the Court did not give me a fair opportunity to be heard prior to the prefiling sanctions in 17-cv-6878 against my union (ASAR) and the Rochester City School District.

319.    In good faith, I believe I should not have been sanctioned in the first place and that the sanction in 17-cv-6878 was improper and based on the Court's preconceived notion regarding the Honeoye Falls-Lima Central School District in which the Court sanctioned me and dismissed my lawsuits with prejudice without providing me the opportunity to be heard on the leave-to-file sanction (s) prior to doing so.

320.    In good faith, I believe that the bias and prejudice of my cases against the Honeoye Falls-Lima Central School District caused me to be sanctioned in this matter even though I did not deserve being sanctioned.

321.    I declare in good faith that Rochester City School District, its officers, employees, supervisors and/or agents have shown unconscionable and shocking to the senses depraved indifference to my civil and constitutional rights and have purposefully, intentionally with willful, wanton, and malicious intent have discriminated and retaliated against me for complaining of and opposing discrimination.

322.    I declare as a *pro se*, that I do not know the difference of duplicate actions

ASA- 352

because I do not see them as being duplicate because I experienced and was subjected to the acts of discrimination and retaliation over different days, weeks, months, and/or years and at different times.

323.     All I know is that I was being discriminated against and that it did not feel good. I declare that my lawsuits against the Rochester City School District, its officers, employees, supervisors and/or agents were brought in good faith and not to harass.

324.     I am only a common layperson *pro se*. I simply did not know how to tell the Court and still do not for the most part about the discrimination and retaliation I am experiencing by my former employers.

325.     I equally did not and do not really understand how to defend myself in an arena that I still am trying to research, learn, and figure out to this day. I meant no disrespect to the Court.

326.     I am just doing the best that I can do under the circumstances of being at a disadvantage of being a *pro se*. Yes, sometimes my feelings are evident but that is only because I am passionate about trying to express the discrimination that I have encountered and experienced.

327.     The Court is a legal arena. Education is my field of expertise, being an attorney is not.

328.     When I began working for the Rochester City School District in August 2015, I knew imagined that I would have to file a discrimination lawsuit against the district.

329.     I was doing what I loved and that was helping students with disabilities get the best quality education that they could get. I was doing well and in good standing with the school district until I began to oppose discrimination.

ASA-353

330.    I had only commenced one lawsuit against the Rochester City School District; 17-cv-6873, Complaint dismissed with prejudice prior to the Court's improper leave-to-file sanction against me.

331.    I never filed a lawsuit against the Rochester City School District before 17-cv-6873, Complaint dismissed with prejudice.

332.    I only filed one lawsuit against my local labor union, the Association of Supervisors and Administrators of Rochester (ASAR), 17-cv-6878 where the Court imposed a leave-to-file sanction against me.

333.    The only other local labor union I brought suit against was the HFLEA which was in 2008 in which this court imposed a leave-to-file sanction after one suit against my union as well.

334.    In June 2018, I filed 18-cv-6450 because the Rochester City School District continued in its pattern and practice of discrimination against me. The complaint was dismissed with prejudice.

335.    When I filed 20-cv-6537, I did not have to seek leave of court to file because the matters were pending on appeal and this Court stated in its opinion that if a matter was in relationship to that I did not have to seek leave of court. So, I was told that I had to and so I did.

336.    I have only brought my lawsuits in good faith and honesty believing that I was being discriminated against for opposing discrimination and for engaging in a protected activity. I have not caused needless expense to the Rochester City School District or any other parties.

337.    Rochester City School District is using free taxpayers' dollars to defend the lawsuits, including my own taxpayers' dollars. In my good faith belief and opinion, not one of the parties have personally been out of one nickel to have to retain a personal attorney.

[55]

ASA-354

338.    I have had to use my own money to defend my lawsuits and that has not been cheap.

339.    In the past, I have tried to let my union attorneys help me. I feel in good faith and honesty they were only interested in self. As one once told me when they learned of their representatives' involvement that I should have known better that there was a conflict of interest, and another told me that it was the school district's show.

340.    In the past I retained Van Henri White ("Attorney White") and that was not cheap. I retained Agola and that was not cheap and, on her way, out to withdraw as counsel she discredited me.

341.    I retained Brown and Hutchinson LLC, Attorneys at Law. The Law Firm did less than about one month worth of work and I was out of about $21,000.00. I am still dealing with the aftermath of the Honeoye Falls-Lima Central School District's discrimination and retaliation against me, including in retaliation in 2019 up to causing me service credit, wages and pension benefits.

342.    The School Administrators Association of New York State ("SAANYS") assigned attorney Mimi Satter ("Attorney Satter") to assist with matters regarding the Rochester City School District only to advise her that she could no longer help me because I was no longer an active member according to them.

343.    I also tried to retain attorney Ryan Woodworth (" Attorney Woodworth"), but he was not interested. I also tried to retain other attorneys, including from Buffalo, New York, but he was very nasty and rude to me and told me something that I care to repeat.

344.    So, here I am proceeding *pro se* and unrepresented not because I want to but because I was left with no other option if I wanted to protect my rights.

[56]


ASA- 355

345.    I have not posed an unnecessary burden on the courts and their personnel.

346.    I did was not at any time abusive and disrespectful to the Court's employees and/or staff.

347.    Neither have I been abusive and/or disrespectful to the court, its employees and/or staff via telephonic communication and/or other means.

348.    In good faith and honesty, I believe that I am the one who needs to be protected. I have received some pretty harsh personal attacks from the Court, including up to the latest falsely accusing me of being abusive and/or disrespectful to the court, its employees, and staff. That is just simply not true.

349.    As far as the Rochester City School District and ASAR as parties, I feel in good faith and honesty that I am the one that need to be protected from them and others whom they have enlisted in their discriminatory and retaliatory actions against me.

350.    I feel in good faith and honesty that they have never had to defend themselves and whatever they say is considered truth when it is not. In these matters, they have not been held accountable for discriminating and retaliating against me.

351.    I feel in good faith and honesty that the sanctions against me were never appropriate in the first place and with the Court recently false claims against me does not help matters. Such false claims only signals to the Rochester City School District that their discriminatory behavior is acceptable and sends the wrong message.

352.    All the dismissal of my lawsuits with prejudice and the unwarranted sanctions have done is to cause more harm against me than good and created a coalition charged hostile work environment that would not have occurred if the school district would have been held accountable.

[57]


ASA-356

353.      I feel in good faith that the school district continues to sue the improper sanction as acceptance to its continued pattern and practice of discrimination, including up to providing false information to the New York State Teachers' Retirement System regarding my service credit, wages, and pension benefits.

354.      I feel in good faith and honesty and based on my experience with the Rochester City School District has not stopped in its discrimination and retaliation against me.

**Decision and Order dated April 6, 2021 (DGL)**

355.      This Court reinstatement of a leave-to-file sanction against me was inappropriate and an abuse of discretion and inherent power.

356.      The Court did not allow me an opportunity to be heard prior to improperly reinstated a leave-to-file sanction against me for trying to comply with the Court's Decision and Order dated December 30, 2020.

357.      I thought that I complied with the Court's December 30, 2020 Decision and Order(DGL).

358.      In good faith and honesty, I genuinely believe that Honorable David G. Larimer should recuse himself.

359.      I genuinely thought that I was able to mend my complaint and/or to include new developments and/or to add other individuals to the caption if necessary and to file a single amended complaint combining 17-cv-6878 and 18-cv-6450, including up to clarifying my claims.

360.      Apparently, there is an honest mistake in my interpretation of what I was being asked to do. I thought I was complying. I did what I thought the Court instructed me to do.

361.      I am not a well-versed sophisticated lawyer and as *pro se* I do the best that I can

ASA-357

to try to understand.

362.     The reinstatement was unjust, unfair, prejudice and bias, and there was no good or just cause for it.

363.     Further, this Court said that I did not provide an affidavit, but at the same time used my verified affidavit dated March 30, 2021 against me to impose an inappropriate and improper sanction against me.

364.     In good faith and in all honesty, again, Honorable David G. Larimer should have by now recused himself and/or he should be removed in matters concerning me to avoid a manifest injustice.

365.     In good faith and honesty, I feel that I have made supported and evidentiary claims that Honorable David G. Larimer has not only become deeply personal in his rulings against me, but is not impartial and as is here, he has once again by his quick to judgment imposition improperly imposed a leave-to-file sanction against me for trying to comply with the Court's Decision and Order dated December 30, 2020, and without providing me with any opportunity to be heard even though he full well knows that he should have.

366.     In good faith and honesty, it appears to me that the Court's April 6, 2020 reinsertion of a leave-to-file action seemingly keeps moving the goal post now seemly covering other parties and entities in its reinstated leave-to-file sanction against me.

367.     I do not know who these other parties and/or entities are and/or who the Court is now seemingly extending protection to and/or what impact such a broad and overreaching leave-to-file sanction would have and/or whether the Court is now overreaching into the state court's jurisdiction and/or other agencies' jurisdiction.

ASA-358

**WHEREFORE,** I pray that this Court recognize that it unfairly and wrongfully imposed a leave-to-file sanction against me for merely trying to exercise a fundamental protected right afforded to me by the Constitution. My intentions were not willful, and neither were they to harass. I experienced and encountered a level of discrimination as outlined in my verified combined complaint and as spoken of throughout this my verified affidavit.

I, pray that the Court hold the Rochester City School District and Association of Supervisors and Administrators accountable for their willfully, knowingly, and intentionally discriminatory acts against me and fired me in retaliation for expressing concerns and opposing discrimination, and continued in its pattern and practice of discrimination and retaliation post-employment.

I, pray that the Court takes off its personal, prejudice and bias lens against me as a *pro se* unrepresented litigant and recognize that it was wrong to have sanctioned me for exercising a civil and fundamental right and recognize that the basis for the improperly imposed prefiling sanctions were unfounded and unwarranted.

Further, the reinstatement of a prefiling sanction against me was without merit and premature, and the Decision and Order (Honorable David G. Larimer) dated April 6, 2021 was simply another miscarriage of justice and done without the opportunity to be heard which again denied me of a most basic and equal fundamental protected right under the Constitution and has once again unfairly and unjustly resulted in the wrongful denial and dismissal of my complaint that never should have been dismissed, i.e., Plaintiff's first combined verified amended complaint dated March 30, 2021.

[60]

ASA-359

I, pray that this Court grant me the prayer of relief stated in my second combined amended verified complaint, together with any other such relief that this Court deem to be just and proper.

Dated:     April 26, 2021
           West Henrietta, New York
           Monroe County

## VERIFICATION

**STATE OF NEW YORK**     )

**COUNTY OF MONROE**     ) ss:

**BERNICE CURRY-MALCOLM**, maiden name Bernice Curry, being duly sworn, and says that I am the *pro se* Plaintiff in the above entitled captioned action and under penalty of perjury, I declare that I have read the foregoing Verified Affidavit and that the facts stated in it are true, except as to matters therein stated to be alleged on information and belief and as to those matters, I believe to be true.

*Mrs. Bernice Curry-Malcolm*
Bernice Curry-Malcolm - Plaintiff, *Pro se*
6 Gingerwood Way
West Henrietta, New York 14586-9448

**STATE OF NEW YORK**     )

**COUNTY OF MONROE**     ) ss:

This 26th day of April 2021, before me, the subscriber, personally appeared **Bernice Curry-Malcolm** to me known and known to me to be the same person described in and who executed the within instrument, and she duly acknowledged to me that she executed the same.

_____
Notary Public

REBECCA B. WIESNER
NOTARY PUBLIC, State of New York
Monroe County, No. 01WI6268250
Commission Expires 8/04/2024

[61]

ASA-360

SUPERINTENDENT OF SCHOOLS and Individually,
SANDRA SIMPSON, CHIEF OF SPECIALIZED
SERVICES AND FORMER INTERIM EXECUTIVE
DIRECTOR OF SPECIALIZED SERVICES and Individually,
MARY PAULY, EXECUTIVE DIRECTOR OF SPECIALIZED
SERVICES and Individually, TERESA ROOT, ZONE DIRECTOR
OF SPECIALIZED SERVICES and Individually,

      Defendants.

## CERTIFICATE OF SERVICE

 I, Mrs. Bernice Curry-Malcolm, hereby certify under the penalty of perjury that on the

26th day of April 2021, that I handed-delivered the Original and a copy of the Second Combined

Verified Amended Complaint, dated April 26, 2021 together with Plaintiff, Bernice Curry-

Malcolm Verified Affidavit dated April 26, 2021 upon the Office of the Clerk, United States

District Court, Western District of New York located at United States District Court, 2120 U.S.,

Courthouse, 100 State Street, Rochester, New York 14614 and that I served the same by postal

mail upon the Defendants. The United States Postal Service worker is over the age of 18 years

and is not a party to these proceedings and that I served by United States Postal Service Priority

COPY TO:

[62]

ASA-361

*Via United States Postal Service Priority Mail*

Rochester City School District, Superintendent of Schools
Board of Education
Attorney for Defendants-Respondents' Rochester City School District, et al., Alison K. L.
Moyer, Esq.
Email: alison.moyer@rcsdk12.org
Telephone: (585) 262-8550
131 West Broad Street
Rochester, New York 14614
Telephone (585) 262-8100

School Administrators Association of New York State ("SAANYS")
For Defendants Association of Supervisors and Administrators of Rochester (ASAR), et al.
Attorney for Defendants-Respondents' Association of Supervisors and Administrators of
Rochester ("ASAR"), Arthur Scheuermann, Esq., and Jennifer L. Carlson, Esq., Deputy Counsel
Email: ascheuermann@saanys.org
Email: JCarlson@saanys.org
8 Airport Park Boulevard
Latham, New York 12110
Telephone: (518) 782-0600


Dated: April 26, 2021
West Henrietta, New York
Monroe County, New York

Bernice Curry-Malcolm, *Pro se Plaintiff*
6 Gingerwood Way
West Henrietta, New York 14586

[63]

ASA-362

ASA-363

 **ORIGINAL**

## Nos. 21-2683 and 21-2700
## CONSOLIDATED CIVIL APPEALS

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| BERNICE CURRY-MALCOLM | ) | On Appeal from the United States District Court for the Western District of New York (ROCHESTER) |
| Plaintiff-Appellant, | ) | |
| v. | ) | WDNY Civil Docket No.: 18-cv-6450 (*Malcolm III*) Honorable David G. Larimer, J. |
| ROCHESTER CITY SCHOOL DISTRICT, BARBARA DEANE-WILLIAMS, Superintendent of Schools and Individually and Collectively, | ) | |
| Defendants-Appellees. | ) | U.S.C.A. Civil Docket No.: 21-2683, Lead Docket Number |

| | | |
|---|---|---|
| BERNICE C MALCOLM | ) | On Appeal from the United States District Court for the Western District of New York (ROCHESTER) |
| Plaintiff-Appellant, | ) | |
| | ) | WDNY Civil Docket No.: 17-cv-6878 (*Malcolm I*) Honorable David G. Larimer, J. |
| ASSOCIATION OF SUPERVISORS AND ADMINISTRATORS OF ROCHESTER ("ASAR"), TIMOTHY CLIBY, President and Individually, and John Rowe, Vice President and Individually, ROCHESTER CITY SCHOOL DISTRICT, BARBARA DEANE-WILLIAMS, Superintendent of Schools and Individually and Collectively, | ) | |
| Defendants-Appellees. | ) | U.S.C.A. Civil Docket No. 21-2700, Consolidated Member |

## CERTIFICATE OF SERVICE

I, Mrs. Bernice Curry-Malcolm, hereby certify under the penalty of perjury that on the 29th day of May 2022, that I served by United States Postal Express Overnight mail and United States Priority Mail the Plaintiff-Appellant Brief w/Special Appendix and Appellant Separate Appendix on the following as follows:

68

(via U.S. Postal Service Overnight Priority Express Mail)
United States Court of Appeals
For the Second Circuit
Thurgood Marshall U.S. Court House
40 Foley Square
New York, New York 10007

(via U.S. Postal Priority Mail)

Rochester City School District Department of Law
Attention: Alison Moyer, Counsel for the Defendants-Appellees Rochester City
School District, Barbara-Deane Williams, Superintendent of Schools, Sandra
Simpson, Chief of Schools, Interim Executive Director of Specialized Services,
Teresa Root, Zone Director of Specialized Services
131 West Broad Street,
Rochester, New York, 14614
Telephone: (585) 262-8550
Email: Alison.moyer@rcsdk12.org

School Administrators Association of New York State ("SAANYS")
Counsel for the Association of Supervisors and Administrators of Rochester
("ASAR"
Attention: Jennifer Carlson, SAANYS; Deputy Counsel
8 Airport Park Blvd.
Latham, New York 12110
Telephone (518) 782-0600
Email: jcarlson@saanys.org

Bernice Curry-Malcolm, *pro se*
6 Gingerwood Way
West Henrietta, New York 14586

*Pro se Plaintiff-Appellant*

69

MAY 24 22
1007     10007
**$131.25**
R2305M145915-07



**UNITED STATES POSTAL SERVICE** ® | **PRIORITY MAIL EXPRESS** ®

EI 208 435 848 US

### CUSTOMER USE ONLY

FROM: (PLEASE PRINT)     PHONE ( )

Mrs. Bernica Curry-Malcolm
6 Gingerwood Way
West Henrietta, NY 14586

Signature Required 2022

### PAYMENT BY ACCOUNT (if applicable)
USPS Corporate Acct. No.     Federal Agency Acct. No. or Postal Service™ Acct. No.

### DELIVERY OPTIONS (Customer Use Only)
☒ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

### ORIGIN (POSTAL SERVICE USE ONLY)
☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
| 14467 | 5/25/2022 | $131.25 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 5/24/22 | ☐ 12:00 PM ☐ 3:00 PM | $ | |

| Time Accepted | | Return Receipt Fee | Live Animal Transportation Fee |
| 3:09 | ☐ AM ☒ PM | 2022 | |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
| $ | $ | $131.25 |

| Weight | ☐ Flat Rate | Acceptance Employee Initials |
| 25 lbs. 9 oz. | | JB |

### TO: (PLEASE PRINT)     PHONE ( )
Office of the Clerk
United State Court of Appeals 2nd Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
ZIP + 4® (U.S. ADDRESSES ONLY) New York 10007
1 0 0 0 7 -

### DELIVERY (POSTAL SERVICE USE ONLY)
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

☒ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
☒ $100.00 insurance included.

LABEL 11-B, MAY 2021     PSN 7690-02-000-9996

⬛ **PEEL FROM THIS CORNER**

s Court of Appeals
Circuit
hall, U.S. Courthouse
quare
ork 10007

ILGER7P6BH2.6

**ROC -> FX     XE LGA**

WGT: 026     TOTAL: 00043
AR: LGA AT 07:32   ORG: ROC 21
LV: ROC AT 21:00   05/24/22

**LGA**
ILGER7P6BH
E

May 2014

pping Supplies &